# EXHIBIT A

052 3130

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION

COMMISSIONERS:   Deborah Platt Majoras, Chairman
                 Pamela Jones Harbour
                 Jon Leibowitz
                 William E. Kovacic
                 J. Thomas Rosch

| | |
|---|---|
| In the Matter of<br><br>ZANGO, INC. f/k/a 180SOLUTIONS, INC.,<br>    a corporation,<br><br>KEITH SMITH,<br>    individually and<br>    as an officer of the corporation, and<br><br>DANIEL TODD,<br>    individually and<br>    as an officer of the corporation. | DOCKET NO. C-4186 |

## DECISION AND ORDER

      The Federal Trade Commission having initiated an investigation of certain acts and practices of the Respondents named in the caption hereof, and the Respondents having been furnished thereafter with a copy of a draft of complaint which the Bureau of Consumer Protection proposed to present to the Commission for its consideration and which, if issued by the Commission, would charge the Respondents with violation of the Federal Trade Commission Act; and

      The Respondents, their attorneys, and counsel for the Commission having thereafter executed an agreement containing a consent order, an admission by the Respondents of all the jurisdictional facts set forth in the aforesaid draft complaint, a statement that the signing of the agreement is for settlement purposes only and does not constitute an admission by the Respondents that the law has been violated as alleged in such complaint, or that any of the facts as alleged in such complaint, other than jurisdictional facts, are true, and waivers and other provisions as required by the Commission's Rules; and

      The Commission having thereafter considered the matter and having determined that it had reason to believe that the Respondents have violated the Act, and that complaint should issue

stating its charges in that respect, and having thereupon accepted the executed consent agreement and placed such agreement on the public record for a period of thirty (30) days for the receipt and consideration of public comments, and having duly considered the comments received from interested persons pursuant to section 2.34 of its Rules, now in further conformity with the procedure prescribed in § 2.34 of its Rules, the Commission hereby issues its complaint, makes the following jurisdictional findings, and enters the following order:

1. Respondent Zango, Inc. f/k/a 180solutions Inc. is a Washington corporation with its principal place of business located at 3600 136th Place SE, Bellevue, Washington 98006.

2. Respondent Keith Smith is a founder and officer of the corporate Respondent. Individually or in concert with others, he formulates, directs, controls, or participates in the policies, acts, or practices of the corporation, including the acts and practices alleged in the draft complaint. His principal office or place of business is the same as that of Zango, Inc. f/k/a 180solutions, Inc.

3. Respondent Daniel Todd is a founder and officer of the corporate Respondent. Individually or in concert with others, he formulates, directs, controls, or participates in the policies, acts, or practices of the corporation, including the acts and practices alleged in the draft complaint. His principal office or place of business is the same as that of Zango, Inc. f/k/a 180solutions, Inc.

4. The Federal Trade Commission has jurisdiction of the subject matter of this proceeding and of the Respondents, and the proceeding is in the public interest.

## **ORDER**

### **DEFINITIONS**

For purposes of this order, the following definitions shall apply:

1. Unless otherwise specified, "Respondents" means Zango, Inc. f/k/a 180solutions, Inc., its successors and assigns, and their officers; Keith Smith, individually and as an officer of the corporation; and Daniel Todd, individually and as an officer of the corporation; and each of the above's agents, representatives, and employees.

2. "Affiliate program" means any program whereby any person or entity agrees to disseminate, distribute, or download any software program or application onto consumers' computers, on behalf of Respondents.

3. "Affiliate" means any person or entity who participates in an affiliate program.

4.      "Assist others" means knowingly providing any of the following services to any person or entity:  (a) developing, supplying, distributing, or publishing any software program, product, or service; or (b) formulating, developing, or providing, or arranging for the formulation, development, or provision of, any Internet advertising or marketing content for any person or entity; or (c) performing advertising or marketing services of any kind for any person or entity.

5.      "Clear(ly) and prominent(ly)" shall mean that, in an electronic medium, the disclosure shall be:  (a) unavoidable; (b) of a size and shade, and shall appear on the screen for a duration, sufficient for an ordinary consumer to read and comprehend it; (c) in understandable language and syntax; and (d) additionally, in connection with each advertisement or promotion for the download or installation of any software program or application, shall be presented on the principal screen or landing page of each advertisement or promotion, and prior to the consumer downloading or installing such software program or application.  Nothing contrary to, inconsistent with, or in mitigation of the disclosure shall be used in any advertisement or promotion.

6.      "Commerce" means as defined in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44.

7.      "Express consent" shall mean that, prior to downloading or installing any software program or  application to consumers' computers:  (a) Respondents clearly and prominently disclose the material terms of such software program or application prior to the display of, and separate from, any final End User License Agreement; and (b) consumers indicate assent to download or install such software program or application by clicking on a button that is labeled to convey that it will activate the download or installation, or by taking a substantially similar action.

8.      A "security vulnerability" is a weakness, flaw, or bug in a software program or application that can be used to increase access privileges to a computer system, compromise data stored on it, or control its operation.

9.      "Legacy program" shall mean any software program that:  (a) is owned or controlled by Respondents; and (b) was installed on a consumer's computer prior to January 1, 2006.

10.     The "World Wide Web" or the "Web" is a system used on the Internet for cross-referencing and retrieving information.  Documents ("webpages" or "websites") on the World Wide Web are most frequently formatted in a language called HTML or HyperText Markup Language, that supports links to other documents on the World Wide Web.

11.     A "website" is a set of electronic files or documents, usually a home page and subordinate pages, readily viewable on a computer by anyone with access to the Web and standard Internet browser software.

12. A "web browser" is a software application used to view, download, upload, surf, or otherwise access documents ("webpage(s)" or "website(s)") on the World Wide Web. Web browsers read coded documents that reside on servers, and interpret the coding into what users see rendered as a webpage or website. A user may retrieve and view a webpage or website by entering the Uniform Resource Locator ("URL") or domain name of the webpage in the address bar of the web browser.

**I.**

IT IS ORDERED that Respondents, directly or through any person, corporation, subsidiary, division, affiliate, or other device, shall not use any legacy program to display any advertisement to, or otherwise communicate with, a consumer's computer. The provisions of Part I do not apply to any software program or application that was owned or controlled by Hotbar, Inc.

**II.**

IT IS FURTHER ORDERED that Respondents, directly or through any person, corporation, subsidiary, division, affiliate, or other device, shall not publish, disseminate, or distribute or assist others in publishing, disseminating, or distributing, on or through the Internet, the World Wide Web, any bulletin board system, File Transfer Protocol ("FTP"), electronic-mail, instant message, webpage, or website in or affecting commerce, any software script, code, or other content in order to exploit a security vulnerability of any computer operating system, web browser, or other application to download or install onto any computer any software code, program, or content.

**III.**

IT IS FURTHER ORDERED that Respondents, directly or through any person, corporation, subsidiary, division, affiliate, or other device, in connection with the advertising, promotion, marketing, offering for sale, sale, or provision of any goods or services on or through the Internet, the World Wide Web, or any webpage or website in or affecting commerce, shall not install or download, or assist others in installing or downloading, any software program or application without express consent.

**IV.**

IT IS FURTHER ORDERED that Respondents, directly or through any person, corporation, subsidiary, division, affiliate, or other device, in connection with the advertising, promotion, marketing, offering for sale, sale, or provision of any goods or services on or through the Internet, the World Wide Web, or any webpage or website in or affecting commerce, shall: (1) establish, implement, and maintain a functioning email address or other Internet-based mechanism for consumers to report complaints regarding Respondents' practices;

(2) conspicuously disclose the existence of such reporting mechanism on Respondents' websites; (3) use best efforts to associate each such complaint correctly with the software, application, website, or good or service that is the subject of the complaint; and (4) receive and respond to such complaints, whether received directly or indirectly, in a timely manner via email or other Internet-based mechanism.

## V.

IT IS FURTHER ORDERED that Respondents, directly or through any person, corporation, subsidiary, division, affiliate, or other device, in connection with the advertising, promotion, marketing, offering for sale, sale, or provision of any goods or services on or through the Internet, the World Wide Web, or any webpage or website in or affecting commerce, shall establish, implement, and thereafter maintain, a comprehensive program that is reasonably designed to ensure that affiliates obtain express consent before installing Respondents' software program or application onto consumers' computers. Such measures shall include, at a minimum and without limitation, the following:

    A.    Obtain contact information from any prospective participant in any affiliate program. In the case of a natural person, Respondents shall obtain the prospective participant's first and last name, physical address, country, telephone number, email address, and complete bank account information as to where payments are to be made. In the case of corporations, partnerships, proprietorships, limited liability companies, organizations, associations, cooperatives, agencies, or other legal entities, Respondents shall obtain the first and last name, physical address, country, telephone number, and email address for the natural person who owns, manages, or controls the prospective participant, and complete bank account information as to where payments are to be made;

    B.    Prior to any such prospective participant's acceptance into any affiliate program, (1) provide each such person a copy of this order; (2) obtain from each such person a signed and dated statement acknowledging receipt of this order and expressly agreeing to comply with this order; and (3) provide written notice that engaging in acts or practices prohibited by this order will result in immediate termination of any affiliate program account and forfeiture of all monies earned or owed. Any electronic signature that Respondents obtain pursuant to this Part must comply with the signature requirements of the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), 15 U.S.C. § 7001 *et seq.*;

    C.    Require each affiliate to: (1) provide identifying information to Respondents, including the same types of information as required by Subpart A of this Part, concerning that affiliate's sub-affiliates, employees, agents, or sub-contractors who download or install any software program or application onto consumers' computers on Respondents' behalf; (2) provide each such person with a copy of

        this order; and (3) obtain from each such person a signed and dated statement acknowledging receipt of this order and expressly agreeing to comply with this order. The identifying information referred to herein shall be required prior to that affiliate's participation in Respondents' affiliate program or immediately after any change to that affiliate's sub-affiliates, employees, agents or sub-contractors;

D.     In accord with Part IV above: (1) establish, implement, and maintain a functioning email address or other Internet-based mechanism for consumers to report complaints to Respondents regarding the practices of any affiliate; (2) clearly and prominently disclose the existence of such reporting mechanism on Respondents' websites; (3) use best efforts to associate each such complaint correctly with the affiliate that is the subject of the complaint; and (4) receive and respond to such complaints, whether received directly or indirectly, in a timely manner via email or other Internet-based mechanism; and

E.     Promptly and completely investigate any complaints that the Respondents receive through Subpart D of this Part or any other source to determine whether any such affiliate is engaging in acts or practices prohibited by this order;

F.     Following completion of the investigation required by Part V(E) above: (1) immediately terminate any affiliate that Respondents reasonably conclude has engaged or is engaging, directly or indirectly, in acts or practices prohibited by this order and cease payments to any such affiliate; and thereafter (2) immediately cease the display of any advertisements to, or otherwise using the software program or application to communicate with, any consumer's computer that received Respondents' software program or application through the prohibited acts or practices of such affiliate, except that Respondents may remove or assist consumers in the removal of Respondents' software program or application. Notwithstanding the foregoing, Respondents may send a notice to the affected consumers' computers that clearly and prominently states: (a) that the software program or application may have been installed on their computer without their consent; (b) that they will no longer receive any advertising or communication from Respondents; and (c) how they can remove all vestiges of the software program or application from their computers. The foregoing notice may not be served more than one (1) time to any computer on which a software program or application was installed and must be served within five (5) days after the termination of the affiliate.

*Provided, however,* that this Part does not authorize or require Respondents to take any action that violates any federal, state, or local law.

## VI.

IT IS FURTHER ORDERED that Respondents, directly or through any person, corporation, subsidiary, division, affiliate, or other device, in connection with the service of any advertisement served or caused by Respondents' software program or application installed on consumers' computers in or affecting commerce, shall in each such advertisement clearly and prominently: (1) identify the program causing the display of such advertisement, together with language specifying that the advertisement is served by such program; (2) provide a hyperlink or other similar technology directly linking to a webpage that provides clear and prominent instructions for (a) uninstalling Respondents' software or other application through which consumers received such advertisement; and (b) accessing Respondents' complaint mechanism as required by Part IV above. Such hyperlink shall be clearly named to indicate these functions.

## VII.

IT IS FURTHER ORDERED that Respondents, directly or through any person, corporation, subsidiary, division, affiliate, or other device, shall not install or cause to be installed on consumers' computers any software program or application in connection with the advertising, promotion, marketing, offering for sale, sale, or provision of any goods or services on or through the Internet, the World Wide Web, or any webpage, or website, in or affecting commerce unless Respondents provide a reasonable and effective means for consumers to uninstall the software or application, either through the computers' operating system Add/Remove utility, or other uninstall tool that can be readily located on consumers' computers. Respondents shall not require consumers to: access any website or download or install any additional software program or application; close or deactivate third-party firewalls, operating system firewalls, anti-spyware or anti-adware software, or virus protection software; or provide personally identifiable information in order to complete the uninstall.

## VIII.

IT IS FURTHER ORDERED that, for a period of five (5) years after the date of issuance of this order, Respondents shall maintain, and upon request make available to the Federal Trade Commission for inspection and copying, a print or electronic copy of each document relating to compliance with the terms and provisions of this order, including but not limited to: all plans, reports, studies, reviews, audits, audit trails, policies, training materials, and assessments, whether prepared by or on behalf of Respondents, relating to such compliance; and all documents, whether prepared by or on behalf of Respondents, that contradict, qualify, or call into question Respondents' compliance with this order.

## IX.

IT IS FURTHER ORDERED that Respondents shall pay to the Federal Trade Commission the sum of three million dollars ($3,000,000.00). This payment shall be made in the following manner:

- A. The payment shall be made by wire transfer or certified or cashier's check made payable to the Federal Trade Commission in three installments as follows:

    1. One million dollars ($1,000,000.00) no later than ten (10) days after the date of issuance of this order;

    2. One million dollars ($1,000,000.00) no later than six (6) months after the date of issuance of this order; and

    3. One million dollars ($1,000,000.00) no later than twelve (12) months after the date of issuance of this order.

- B. In the event of any default in payment, which default continues for ten (10) days beyond the due date of payment, the amount due, together with interest, as computed pursuant to 28 U.S.C. § 1961 from the date of default to the date of payment, shall immediately become due and payable to the Commission. Respondents agree that, in such event, the facts as alleged in the complaint shall be taken as true in any subsequent litigation filed by the Commission to enforce its rights pursuant to this order, including but not limited to a nondischargeability complaint in any subsequent bankruptcy proceeding.

- C. All funds paid pursuant to this Part, together with any accrued interest, shall be used by the Commission in its sole discretion to provide such relief as it determines to be reasonably related to Respondents' practices alleged in the complaint, and to pay any attendant costs of administration. Such relief may include, but shall not be limited to, the rescission of contracts, payment of damages, and/or public notification respecting such unfair or deceptive practices. If the Commission determines, in its sole discretion, that such relief is wholly or partially impractical, any funds not so used shall be paid to the United States Treasury. Respondents shall be notified as to how the funds are distributed but shall have no right to contest the manner of distribution chosen by the Commission. No portion of the payment as herein provided shall be deemed a payment of any fine, penalty, or punitive assessment.

D.      Respondents shall make no claim to or demand for the return of the funds, directly or indirectly, through counsel or otherwise; and in the event of Respondents' bankruptcy, Respondents acknowledge that the funds are not part of the debtor's estate, nor does the estate have any claim or interest therein.

## X.

IT IS FURTHER ORDERED that Respondents shall, in connection with this action or any subsequent investigations related to or associated with the transactions or occurrences that are the subject of the Complaint, cooperate in good faith with the Commission and appear, or cause their officers, employees, representatives, or agents to appear, at such places and times as the Commission shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the Commission. If requested in writing by the Commission, Respondents shall appear, or cause their officers, employees, representatives, or agents to appear, and provide truthful testimony in any trial, deposition, or other proceeding related to or associated with the transactions or occurrences that are the subject of the Complaint, without the service of a subpoena.

## XI.

IT IS FURTHER ORDERED that Respondent Zango, Inc. f/k/a 180solutions, Inc., its successors and assigns, and Respondents Keith Smith, and Daniel Todd shall delivery a copy of this order to all current and future principals, officers, directors, and managers, and to all current and future employees, agents, and representatives having responsibilities with respect to the subject matter of this order. Respondents shall deliver this order to current personnel within thirty (30) days after the date of service of the order, and to future personnel within thirty (30) days after the person assumes such position or responsibilities.

## XII.

IT IS FURTHER ORDERED that Respondent Zango, Inc. f/k/a 180solutions, Inc., its successors and assigns, shall notify the Commission at least thirty (30) days prior to any change in the corporation that may affect compliance obligations arising under this order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this order; the proposed filing of a bankruptcy petition; or a change in the corporate name or address. *Provided, however*, that with respect to any proposed change in the corporation about which Respondent learns less than thirty (30) days prior to the date such action is to take place, Respondent shall notify the Commission as soon as is practicable after obtaining such knowledge. All notices required by this Part shall

be sent by certified mail to the Associate Director, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Ave., N.W., Washington, D.C. 20580.

### XIII.

IT IS FURTHER ORDERED that Respondents Keith Smith and Daniel Todd, for a period of ten (10) years after the date of issuance of this order, each shall notify the Commission of the discontinuance of his current business or employment, or of his affiliation with any new business or employment. The notice shall include Respondent's new business address and telephone number and a description of the nature of the business or employment and his duties and responsibilities. All notices required by this Part shall be sent by certified mail to the Associate Director, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Ave., N.W., Washington, D.C. 20580.

### XIV.

IT IS FURTHER ORDERED that Respondent Zango, Inc. f/k/a 180solutions, Inc., its successors and assigns, and Respondents Keith Smith and Daniel Todd shall, within sixty (60) days after service of this order, and at such other times as the Federal Trade Commission may require, file with the Commission a report, in writing, setting forth the manner and form in which they have complied with this order.

### XV.

This order will terminate on March 7, 2027, or twenty (20) years from the most recent date that the United States or the Federal Trade Commission files a complaint (with or without an accompanying consent decree) in federal court alleging any violation of the order, whichever comes later; *provided, however*, that the filing of such a complaint will not affect the duration of:

A.   Any Part in this order that terminates in less than twenty (20) years;

B.   This order's application to any Respondent that is not named as a defendant in such complaint; and

C.   This order if such complaint is filed after the order has terminated pursuant to this Part.

*Provided, further,* that if such complaint is dismissed or a federal court rules that the Respondent did not violate any provision of the order, and the dismissal or ruling is either not appealed or upheld on appeal, then the order will terminate according to this Part as though the complaint had

never been filed, except that this order will not terminate between the date such complaint is filed and the later of the deadline for appealing such dismissal or ruling and the date such dismissal or ruling is upheld on appeal.

    By the Commission.

                              Donald S. Clark
                              Secretary

SEAL:
ISSUED: March 7, 2007