# EXHIBIT B

Dockets.Justia.com

Zango - Wikipedia, the free encyclopedia
Page 1 of 6
Case 2:07-cv-00807-JCC    Document 15-3    Filed 06/04/2007    Page 2 of 23

# Zango

From Wikipedia, the free encyclopedia

**Zango** is the brand name for **180Solutions** following 180Solutions' merger with **Hotbar**. Zango manufactures adware and spyware typically downloaded in the form of games, DRM-protected videos and software for download such as Zango Messenger. Zango's consumer website asserts that the company is "committed to creating a content economy." Warner Bros. and others have been known to provide content. This content ranges from Internet soap operas to video shorts. Zango is listed as "Adware" by Symantec and a "Potentially Unwanted Product" by McAfee.



| 180solutions, Inc. Zango | |
| --- | --- |
| **zango** | |
| **Type** | Private |
| **Founded** | 1999 |
| **Headquarters** | Bellevue, Washington |
| **Key people** | Keith Smith, Co-founder, Chief Executive Officer |
| | Daniel Todd, Co-founder, President |
| | Ken Smith, Co-founder, Chief Technology Officer |
| | Doug Hanhart, Co-founder, Chief Information Officer |
| | York Baur, Executive Vice President |
| **Industry** | Adware Advertising Marketing |
| **Products** | Adware Spyware |
| **Revenue** | ▲ $50 Million (2004) |
| **Employees** | 150 to 250 |
| **Website** | www.zango.com (http://www.zango.com/) |

## Contents

- 1 Malware Controversy
- 2 History
- 3 Government Regulatory Actions
- 4 Litigation
- 5 Mergers and acquisitions
- 6 Hotbar
  - 6.1 Controversy
- 7 Seekmo
- 8 Newgrounds.com Partnership
- 9 References
- 10 See also
- 11 External links

## Malware Controversy

Zango adware and spyware programs cause annoying pop ups and spy on your behavior in order to load additional advertisements on infected computers. Additionally, Zango is criticized for causing computers to run slowly. Zango automatically sets itself to run every time the machine turns on, and this behavior can only be stopped by using the *MSConfig* system tool. Additionally, when Zango's Start menu entry is opened, it shows the Zango program itself, another Zango feature, and *instructions* on how to remove Zango, stating that it should be removed by removing it

Zango Installation Screen known as S3

from the Control Panel's "Add and Remove Programs" option. Be advised that when attempting to use the Add/Remove Panel to remove Zango, it has been known to make computers hang/crash. It results in

having to turn the computer off manually and restarting it. Many times it cannot be removed using that method. Some users reported having to reformat the hard drive to successfully remove the malware.

# History

When founded in 1999, Zango was known as **Epipo**. It was one of the first "pay-to-surf" companies, following in the footsteps of AllAdvantage. This business model paid users a minimal amount to surf the Internet while running an application that showed banner ads. Users could also make money by referring others who would use this application.

After enjoying brief success, the pay-to-surf business model declined with the bursting of the Internet bubble in 2001, and 180 Solutions adjusted their technologies in several ways:

- To show popup ads rather than banner ads.
- To not have any visible GUI.
- To be bundled with other potentially valuable applications.

Epipo changed their name to 180solutions.

From 2002 through 2005, 180Solutions' applications (ncase and 180SA(search assistant)) were distributed via various affiliates. While these affiliates were legally required (by 180Solutions contract and other laws) to obtain the permission of the user prior to software installation, many did not; this resulted in millions of illegal non-consensual installs. Many other affiliates notified users only via the end user license agreement EULA; this resulted in millions more of technically legal but still essentially non-consensual installs.

180Solutions' software shows popup ads while the user is surfing the Internet. This software was often, but not always, bundled with other pieces of free software which the user intentionally installed. Since permission to install the 180Solutions adware was at best hidden in a EULA, most users were unaware of the fact that they were installing adware.

In some cases 180Solutions' software was not bundled with any other software, but installed as a standalone install. Using this method, an ActiveX prompt simply asked the user to install the software so that they could receive "comparison shopping advertisements."

180Solutions contends that the value of the bundled software or the comparison shopping advertisements makes up for the inconvenience of the popup ads. The value of this trade-off is contested by critics of the adware business model.

In 2004 Benjamin Edelman of Harvard University analyzed the network behavior of 180solutions applications and claimed they redirected commissions to themselves that were properly due to affiliates, and additionally caused merchants to pay commissions when affected users clicked on merchant sites directly.[1]

During this time, 180Solutions' applications were often difficult to uninstall, requiring the user to download an additional 'uninstall' application made by 180Solutions or to use a spyware or adware removal tool. In 2005, the software uninstall was standardized to use the Windows 'add/remove programs' feature.

Case 2:07-cv-00807-JCC     Document 15-3     Filed 06/04/2007     Page 4 of 23

In 2005, 180Solutions implemented a number of initiatives that were intended to show that the company was serious about controlling the distribution of its software to eliminate non-consensual installs:

- March: Acquired one of their distribution partners, a Canadian company called CDT (dba LoudCash). This gave them direct visibility into and greater control of many of the formerly "third party" distributors.
- June: Claimed to have re-notified its 20 million user customer base and implemented a program that notifies all users within 72 hours of install and re-notifies all users every 90 days thereafter.
- August: Filed suit against seven individuals alleged to have illegally distributed its software using a botnet.
- November: Announced an ongoing partnership with the FBI in breaking up a botnet ring in the Netherlands.
- December: Ended distribution of the 180SearchAssistant and closed LoudCash (a remnant from the CDT acquisition). They claim that this removes the financial incentive for fraudulent installs, which many critics claim not to be true.

Despite the initiatives of 2005, 180 Solutions admitted that it is possible for malicious users to hack their install routines and thus cause fraudulent installs.[2] They claim that the percentage of fraudulent installs has dropped from over 10% to under 1%. Critics claim that the business model is untenable because fraud against 180 Solutions (which therefore harms unknowing users via non-consensual installs) can never be completely removed.[3]

## Government Regulatory Actions

On January 23, 2006, a public advocacy group filed two official complaints with the Federal Trade Commission. The Center for Democracy and Technology complaints charge 180 Solutions with engaging in unfair and deceptive business practices, deliberately duping Internet users into downloading intrusive advertising software.[4]

In 2006, the Federal Trade Commission charged Zango with "Deceptive Failure to Disclose Adware", "Unfair Installation of Adware", and "Unfair Uninstall Practices" in violation of the Federal Trade Commission Act.[5] Since the FTC ruling, security researchers continue to find Zango involved in problematic installs (http://www.vitalsecurity.org/2006/11/presenting-zangozones.html).

In November 2006, Zango settled this complaint via a consent decree with the FTC, without formally admitting guilt. In the words of the Federal Trade Commission press release, "Zango, Inc., formerly known as 180solutions, Inc., one of the world's largest distributors of adware, and two principals have agreed to settle Federal Trade Commission charges that they used unfair and deceptive methods to download adware and obstruct consumers from removing it, in violation of federal law. The settlement bars future downloads of Zango's adware without consumers' consent, requires Zango to provide a way for consumers to remove the adware, and requires them to give up $3 million in ill-gotten gains."[6] These restrictions remain in force for twenty years. The agreement also requires respondents Keith Smith and Daniel Todd to notify the FTC of the discontinuance of their current business or employment, or of their affiliation with any new business or employment, for ten years.[7]

## Litigation

In the summer of 2005, attorney Shawn Collins of The Collins Law Firm along with Varga Berger Ledsky Hayes & Casey filed a class action lawsuit on the behalf of three plaintiffs. The claim was that the company puts spyware on personal computers. The case was dismissed with prejudice on grounds that 180solutions claims clients invited their program onto their computers. Collins hoped the suit could be termed a class action with the potential of collecting damages for thousands of computer users who have unsolicited spyware on their computers. Collins dropped the case but will continue to go after companies who load spyware onto people's computers.[8]

In May 2007, Zango filed a lawsuit against anti-spyware company PC Tools alleging that PC Tools removes the Zango spyware and adware without alerting customers that it is doing so.[9]

# Mergers and acquisitions

180solutions acquired Hotbar for an undisclosed amount of money, [10][11] and the two were renamed after 180solutions's consumer brand, Zango. About 20 people have been laid off from Hotbar's Israeli and New York offices, but 180solutions will retain 83. According to the Zango VP, York Baur; the combined companies will offer 100,000 pieces of free content, the combined user base will be greater than 30,000,000 users, and around 150,000 people are signing up for their services and applications every day.

According to the 180solutions press release, Hotbar and 180solutions merged and the combined company is called **Zango**.[12]

# Hotbar

**Hotbar** (also known as **HbTools**) is a program which was produced by Hotbar.com, Inc, until 180Solutions merged with Hotbar. It is a plugin for Microsoft programs Internet Explorer, Microsoft Office Outlook and Outlook Express, which adds a toolbar and the option of extra skins. It also allows the user to add emoticons to emails created in Outlook or Outlook Express or check the weather report. Once installed, Hotbar may also show an advertising banner in Windows Live Messenger (formerly MSN Messenger), offering free emoticons; this banner redirects to the Hotbar main page. In addition, a weather forecast application is installed. Its major revenue and criticism come from the excessive use of popups which are displayed according to a user's behavior and current URL. The application can show over 15 popups a day, depending on how much Internet browsing has occurred.

### Controversy

Hotbar is an example of adware due to its banner advertising and use of popup windows, and also an example of spyware as it monitors the webpages the user visits. Hotbar does disclose these aspects of its behavior in its Terms of Use. The user's browsing habits are sent to the Hotbar servers (adopt.hotbar.com, tooltips.hotbar.com and dynamic.hotbar.com) with a unique user ID which allows a user's browsing habits to be tracked over an extended period of time.



Classified as "Caution -

Hotbar can be detected and removed by several anti-spyware and anti-virus programs, including Windows Defender, Spybot - Search & Destroy, and Norton

Case 2:07-cv-00807-JCC     Document 15-3     Filed 06/04/2007     Page 6 of 23

AntiVirus. However, some utilities do not remove
Hotbar completely and leave keys behind in the
Windows Registry. Hotbar does have an
Add/Remove Control Panel entry for itself.

> objectionable
> behavior but
> clearly informs
> users" (http://www.stopbadware.org/home/reports)
> by Stopbadware

## Seekmo

**Seekmo** is an adware program by Zango that also claims to be a free tool that provides content such as
mp3s, screen savers, and videos files. Seekmo can pop up advertisements even if you have a popup
blocker on your computer, and can monitor your computer usage to generate ads that you are more
likely to respond to, and in the process can consume processing power and network bandwidth, thus
slowing down your computer and interrupting workflow. Upon downloading a Seekmo-containing file,
the program with which you are attempting to access the file with will commence the process of license
acquisition in which the program (Windows Media Player, for example) will display a window telling
you about the content and what Seekmo is. Upon clicking "Accept", it will automatically send a file for
download called "Setup.exe". After downloading this file you must install the Seekmo Toolbar which
will display advertisements relevant to the websites you visit. The company states that "It's kind of like
TV - you get to watch your favorite TV shows for free because they show ads.".

## Newgrounds.com Partnership

It has also partnered with the flash site Newgrounds.com as a download portal.

## References

1. ^ The Effect of 180solutions on Affiliate Commissions and Merchants
   (http://www.benedelman.org/spyware/180-affiliates/) Benjamin Edelman October 20, 2004
2. ^ Mea Culpa (http://blog.180solutions.com/PermaLink,guid,b0fc12f9-e1f0-4a7a-998f-0b2f11d1fafd.aspx)
   180Solutions 5:33 PM, Feb 23, 2006
3. ^ Non-consensual 180 Installations Continue, Despite 180's "S3" Screen
   (http://www.benedelman.org/news/022006-1.html)Benjamin Edelman February 24, 2006
4. ^ CDT Files Complaints Against Major Adware Distributor
   (http://www.cdt.org/publications/policyposts/2006/2) January 27, 2006
5. ^ FTC complaint against Zango. (http://ftc.gov/os/caselist/0523130/0523130cmp061103.pdf)
6. ^ Zango, Inc. Settles FTC Charges (http://www.ftc.gov/opa/2006/11/zango.htm) November 3, 2006
7. ^ FTC AGREEMENT CONTAINING CONSENT ORDER In the Matter of ZANGO, INC. f/k/a
   180SOLUTIONS, INC., a corporation, KEITH SMITH, individually and as an officer of the corporation, and
   DANIEL TODD, individually and as an officer of the corporation (PDF, 12pages)
   (http://www.ftc.gov/os/caselist/0523130/0523130agree061103.pdf)
8. ^ Chicago Tribune September 7, 2006
9. ^ Zango sues antispyware vendor PC Tools (http://www.infoworld.com/article/07/05/18/zango-sues-
   antispyware-vendor_1.html). Infoworld (May 18, 2007). Retrieved on 2007-05-19.
10. ^ 180solutions acquires Hotbar.
    (http://seattletimes.nwsource.com/html/businesstechnology/2003044399_zango07.html)
11. ^ http://www.zango.com/Destination/Corporate/ReadArticle.aspx?id=50 ]
12. ^ Hotbar and 180solutions Merge; Combined Company To Be Called Zango
    (http://www.zango.com/Destination/Corporate/ReadArticle.aspx?id=50)

## See also

- Adware
- Spyware
- Computer Virus
- newgrounds

# External links

- Zango (http://www.zango.com/) **(Contains spyware)**
- 180Solutions in 365 days – what Spyware Warrior learned about 180solutions during 2005 (http://www.spywarewarrior.com/elh/180-summ.htm)
- Symantec instructions on how to remove Hotbar (http://sarc.com/avcenter/venc/data/adware.hotbar.html)

Retrieved from "http://en.wikipedia.org/wiki/Zango"

Categories: Cleanup from May 2007 | All pages needing cleanup | Articles lacking sources from May 2007 | All articles lacking sources | Articles with unsourced statements since February 2007 | All articles with unsourced statements | Advertising | Adware | Spyware | Companies based in Washington | Software companies

- This page was last modified 14:03, 30 May 2007.
- All text is available under the terms of the GNU Free Documentation License. (See **Copyrights** for details.) Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a US-registered 501(c)(3) tax-deductible nonprofit charity.

## Bad Practices Continue at Zango, Notwithstanding Proposed FTC Settlement and Zango's Claims

By Ben Edelman and Eric Howes
*November 20, 2006 - Updated, December 8, 2006*

[ home | bio | publications | media coverage | invited presentations ]
[ email ]
[ request project updates ]

*Featured Research*

Howes Timeline of Zango's 2005 Practices

Edelman Analysis of Zango Commission-Stealing

Published Edelman Reports of Nonconsensual Zango Installations

"Spyware": Research, Testing, Legislation, and Suits

Earlier this month, the FTC announced the proposed settlement of its investigation into Zango, makers of advertising software widely installed onto users' computers without their consent or without their informed consent (among other bad practices).

We commend the proposed settlement's core terms. But despite these strong provisions, bad practices continue at Zango -- practices that, in our judgment, put Zango in violation of the key terms and requirements of the FTC settlement. We begin by explaining the proposed settlement's requirements. We then present eight types of violations of the proposed settlement, with specific examples of each. We conclude with recommendations and additional analysis.

Except where otherwise indicated, this document describes only downloads we tested during November 2006 -- current, recent installations and behaviors.

### Zango's Burdens Under the Proposed FTC Settlement

The FTC's proposed settlement with Zango imposes a number of important requirements and burdens on Zango, including Zango's installation and advertising practices. Specifically, the settlement:

- Prohibits Zango from using "any legacy program to display any advertisement to, or otherwise communicate with, a consumer's computer." (settlement I)

- Prohibits Zango from (directly or via third parties) "exploit[ing] a security vulnerability ... to download or install onto any computer any software code, program, or content." (II)

- Prohibits from Zango installing software onto users' computers without "express consent." Obtaining "express consent" requires "clearly and prominently disclos[ing] the material terms of such software program or application prior to the display of, and separate from, any final End User License Agreement." (III) Defines "prominent" disclosure to be, among other requirements, "unavoidable." (definition 5)

- Requires Zango to "provide a reasonable and effective means for consumers to uninstall the software or application," e.g. through a computers' Add/Remove utility. (VII)

- Requires Zango to "clearly and prominently" label each advertisement it displays. (VI)

These are serious burdens and requirements that, were they zealously satisfied by Zango, would do much to protect consumers from the numerous nonconsensual and misleading Zango installations we have observed.

### Zango Is Not In Compliance with the Proposed Settlement

Zango has claimed that it "has met or exceeded the key notice and consent standards detailed in the FTC consent order since at least January 1, 2006."

Despite Zango's claim, we continue to find ongoing installations of Zango's software that fall far short of the proposed

settlement's burdens, requirements, and standards. The example installations that we present below establish that Zango's current installation and advertising practices remain in violation of the terms and requirements of the proposed settlement.

- **"Material Terms" Disclosed Only in EULA**
  Zango often announces "material terms" only in its End User License Agreement, not in the more prominent locations required by the proposed settlement. (Examples A, B)

- **"Material Terms" Omitted from Disclosure**
  Zango often omits "material terms" from its prominent installation disclosures -- failing to prominently disclose facts likely to affect consumers' decisions to install Zango's software. (Examples A, B, C)

- **Disclosures Not Clear & Prominent**
  Zango presents disclosures in a manner and format such that these disclosures fail to gain the required "express consent" of users because the disclosures are not "clearly and prominently" displayed. (Examples B, E, F)

- **Disclosures Presented Only After Software Download & Execution**
  Zango presents disclosures only after the installation and execution of Zango's software on the users' computers has already occurred, contrary to the terms of the proposed settlement. (Examples C, F)

- **No Disclosure Provided Whatsoever**
  Some Zango software continues to become installed with no disclosure whatsoever. (Example D)

- **Installation & Servicing of Legacy Programs**
  Older versions of Zango's software -- versions with installation, uninstallation, and/or disclosure inconsistent with the proposed settlement -- continue to become installed and to communicate with Zango servers. (Examples C, D, E, F)

- **Installations Promoted & Performed through Miscellaneous Other Deceptive Means & Circumstances**
  Zango installs are still known to be promoted and performed in or through a variety of miscellaneous practices that can only be characterized as deceptive. (Multiple examples in section G)

- **Unlabeled Advertising**
  Some Zango advertisements lack the labeling required by the proposed settlement. (Multiple examples in section H)

These improper practices remain remarkably easy to find, and we have numerous additional recent examples on file. Moreover, these problems are sufficiently serious that they cast doubt on the efficacy and viability of the FTC's proposed settlement as well as Zango's ability to meet the requirements of the settlement.

*Example A: Zango's Ongoing Misleading Installations On and From Its Own Servers*

The proposed settlement requires "express consent" before software may be "install[ed] or "download[ed]" onto users' PCs (III). The term "prominent" is defined to mean "clear[] and prominent[]" disclosure of "the material terms" of the program to be installed, and most of Zango's recent installation disclosures seem to meet this standard. But we are concerned by what those disclosures *say*. In our view, the disclosures omit the material facts Zango is obliged to disclose.

Although the proposed settlement does not explain what constitute "material" terms, other FTC authority provides a definition. The FTC's Policy Statement on Deception, holds that a material fact is one "likely to affect the consumer's conduct or decision with regard to a product or service."

From our analysis of Zango's software, we think Zango has two material features -- two features particularly likely to affect a reasonable user's decision to install (or not install) Zango software. First, users must know that Zango will give them extra pop-up ads -- not just "advertisements," but pop-ups that appear in separate, freestanding windows. Second, users must know that Zango will transmit detailed information to its servers, including information about what web pages they view, and what they search for.

Unfortunately, many of Zango's installations fail to include these disclosures with the required prominence. Consider the screen shown at right. Here, Zango admits that it shows "advertisements," but Zango fails to disclose that its ads appear in pop-ups. Zango's use of the word "advertisements," with nothing more, suggests that Zango's ads appear in standard advertising formats -- formats users are more inclined to tolerate, like ordinary banner ads within web pages (e.g. the ads at nytimes.com) or within other software programs (e.g. the ads in MSN Messenger). In fact Zango's pop-up ads are quite different, in that they appear in pop-ups known to be particularly annoying and intrusive. But the word "advertisements" does nothing to alert users to this crucial fact.



A Misleading Zango Installer Appearing Within Windows Media Player

Zango also fails to disclose that its servers receive detailed information about users' online behavior. Zango tell users that ads are "based on" users' browsing. But this disclosure is not enough, because it omits a material fact. In particular, the disclosure fails to explain that users' behavior will be *transmitted* to Zango, a fact that would influence reasonable users' decision to install Zango.

In addition, Zango's description of its toolbar omits important, material effects of the toolbar -- namely, that the toolbar will show distracting animated ads. Zango says only that the toolbar "lets [users] search the Internet from any webpage" -- entirely failing to mention the toolbar's advertising,

We're also concerned about the format and circumstances of these installation screens. Zango's installation request appears in a Windows Media "license acquisition" screen -- a system Microsoft provides for bona fide license acquisition, not for the installation of spyware or adware. Zango's installer appears *within* Windows Media Player -- a context where few users will expect to be on the lookout for unwanted advertising software, particularly when users had merely sought to watch a video, not to install any software whatsoever. Furthermore, the button to proceed with installation is misleadingly labeled "Play Now" -- not "I Accept," Install," or any other caption that might alert users to the consequences of pressing the button. The screen's small size further adds to user confusion: At just 485 by 295 pixels, the window doesn't have room to explain the material effects of Zango's software, even with Zango's extra-small font. (In Zango's main disclosure, capital letters are just seven pixels tall.) Furthermore, a user seeking to read Zango's EULA (as embedded in these installation screens) faces a remarkable challenge: The 3,033 word document is shown in a box just five lines tall, therefore requiring fully 53 on-screen pages to view in full. Finally, if a user ultimately presses the "Play Now " button, then the "Open" button on the standard Open/Save box that follows, Zango installs immediately, without any further opportunity for users to learn more or to change their mind. Such a rapid installation is contrary to standard Windows convention of further disclosures within an EXE installer, providing further opportunities for users to learn more and to change their minds. Video capture of this installation sequence.

All in all, we think typical users would be confused by this screen -- unable to figure out who it comes from, what it seeks to do, or what exactly will occur if they press the Play Now button. A more appropriate installation sequence would use a standard format users better understand (e.g. a web page requesting permission to install), would tell users far more about the software they're receiving, and would label its buttons far more clearly.

These installations are under Zango's direct control: They are loaded directly from Zango's servers. Were Zango so inclined, it could immediately terminate this installation sequence, or it could rework these installations, without any cooperation with (or even requests to) its distributors.

*Example B: Zango's Ongoing Misleading Hotbar Installations On and From Its Own Servers*

The "express consent" required under the proposed settlement applies not just to software branded as "Zango," but also to all other software installed or downloaded by Zango. (See "any software" in section III.) The "express consent" requirement therefore applies to Hotbar-branded software owned by Zango as a result of Zango's recent merger with Hotbar. But Hotbar installations fail to include unavoidable disclosures of material effects, despite the requirements in the proposed settlement.

Consider the Hotbar installation shown in this video and in the screenshots at right. The installation sequence begins with an ad offering "free new emotion icons" (first screenshot at right) -- certainly no disclosure of the resulting advertising software, the kinds of ads to be shown, or the significant privacy effects. If a user clicks that ad, the user receives the second screenshot at right -- a bare ActiveX screen, again lacking a substantive statement of material effects of installing. If the user presses Yes in the ActiveX screen, the user receives the third screen at right -- disclosing some features of Hotbar (e.g. weather, wallpapers, screensavers), and vaguely admitting that Hotbar is "ad supported," but saying nothing whatsoever about the specific types of ads (e.g. intrusive in-browser toolbar animations) nor the privacy consequences. Furthermore, this third screen lacks any button by which users can decline or cancel installation. (Note the absence of any "cancel" button, or even an "x" in the upper-right corner.)

This installation sequence is substantially unchanged from what Edelman reported in May 2005.

This installation lacks the unavoidable material disclosures required under the proposed settlement. We see no way to reconcile this installation sequence with the requirements of the proposed settlement.



Hotbar's Initial Installation Solicitation - Silent as to Hotbar's Effects



Hotbar's ActiveX Installer - Without Disclosure of Material Effects



Final Step in Hotbar Installation - No Cancel Button, No Disclosure of Material Effects

*Example C: Incomplete, Nonsensical, and Inconsistent Disclosures Shown by Aaascreensavers Installing Zango Software*

We also remain concerned about third parties installing Zango's software without

the required user consent. Zango's past features a remarkable serious of bad-actor distributors, from exploit-based installers to botnets to faked consent. Even today, some distributors continue to install Zango without providing the required "clear and prominent" notice of "material" effects.

Consider an installation of Zango from Aaascreensavers.com. Aaascreensavers provides a generic "n-Case" installation disclosure that says nothing about the specifics of Zango's practices -- omitting even the word "advertisements," not to mention "pop-ups" or privacy consequences. (See first screenshot at right.) Furthermore, Aaascreensavers fails to show or even reference a EULA for Zango's software. Nonetheless, Aaascreensavers continues to place Zango software onto users' PCs through these installers.



Aaascreensavers' Initial Zango Prompt - Omitting Key Material Information

Particularly striking is the nonsensical screen that appears shortly after Aaascreensavers installs Zango. (See second screenshot at right.) Beneath a caption labeled "Setup," the screen states "the content on this site is free, thanks to 180search Assistant" -- although the user has just installed a *program* (and is not browsing a site), and the program the user (arguably) just agreed to install was called "n-Case" not "180search Assistant." At least as paradoxically, the "Setup" screen asks users to choose between "Uninstall[ing] 180search Assistant" and "Keep[ing]" the software. Since "180search Assistant" is software reasonable users will not even know they have, this choice is particularly



Zango's Subsequent Screen -- with deficiencies set out in the text at left

likely to puzzle typical users. After all, it is nonsense to speak of a user making an informed decision to "keep" software he didn't know he had.

Crucially, both installation prompts omit the material information Zango must disclose under its settlement obligations: Neither prompt mentions that ads will be shown in pop-ups, nor do they mention the important privacy effects of installing Zango software.

Video capture of this installation sequence.

*Example D: Msnemotions Installing Zango with No Disclosure At All*

Msnemotions continues to install Zango software *with no disclosure whatsoever*. In particular, Msnemotions never shows any license agreement, nor does it mention or reference Zango in any other on-screen text, even if users fully scroll through all listings presented to them. Video proof.

This installation is a clear violation of section III of the proposed FTC settlement. That section prohibits Zango "directly,

or through any person [from] install[ing] or download[ing] ... any software program or application without express consent." Here, no such consent was obtained, yet Zango software downloaded and installed anyway.

In our tests, this Zango installation did not show any ads (although it did contact a Zango server and download a 20MB file). Nonetheless, the violation of section III occurs as soon as the Zango software is downloaded onto the user's computer, for lack of the requisite disclosure and consent.

*Example E: Emomagic Installing Zango with an Off-Screen Disclosure*

Emomagic continues to install Zango software *with a disclosure buried five pages within* its lengthy (23 on-screen-page) license agreement. That is, unless a user happened to scroll to at least the fifth page of the Emomagic license, the user would not learn that installing Emomagic installs Zango too. Video proof.



This installation is a clear violation of the proposed FTC settlement, because the hidden disclosure of Zango software is not "unavoidable." In contrast, the proposed Settlement's provision III and definition 5 define "prominent" disclosures to be those that are unavoidable, among other requirements.

We have additional examples on file where the first mention of Zango comes as far as 64 pages into a EULA presented in a scroll box. See also example F, below, where Zango appears 44 pages into a EULA, after the GPL.

Emomagic First Mentions Zango 5 Pages Down In Its EULA

*Example F: Warez P2P Speedup Pro Installing Zango with an Off-Screen Disclosure*

Warez P2P Speedup Pro continues to install Zango software *with a disclosure buried 44 pages within* its lengthy license agreement. Video proof. Users are unlikely to see mention of Zango in part because Zango's first mention comes so far down within the EULA.

Users are *particularly* unlikely to find Zango's EULA because the first 43 pages of the EULA scroll box show the General Public License (GPL). (Screenshot of the first page, giving no suggestion that anything but the GPL appears within the scroll box.) Sophisticated users may already be familiar with this license, which is known for the many rights it grants to users and independent developers. Recognizing this pro-consumer license, even sophisticated users are discouraged from reviewing the scroll box's contents in full -- making it all the less likely that they will find the Zango license further down.

After installation, Warez P2P Speedup Pro proceeds to the second screen shown in Example C, above. The video confirms the special deceptiveness of this screen: If a user chooses the "uninstall" button -- exercising his option (however deceptively mislabeled) to refuse Zango's software -- the user then receives a further screen attempting to get the user to change his mind and accept installation after all. The substance of this screen is especially deceptive -- asking the user whether he wants to "cancel," when in fact he had never elected even to *start* the Zango installation sequence in the first place. Finally, if the user presses the "Exit Setup" button on that final screen, the user is told he must restart his computer -- a particularly galling and unnecessary interruption.

*Section G: Zango Installations
Predicated on Consumer Deception or
on Use of Other Vendors' Spyware*



Warez P2P First Mentions Zango at Page 44 of its EULA, Below the GPL

We have also observed Zango installs
occurring subsequent to consumer
deception or other vendors sending
spyware-delivered traffic to Zango.

*Fullcontext spyware promoting Zango.* We
have observed Fullcontext spyware (itself
widely installed without consent) injecting
Zango ads into third parties' web sites.
Through this process, Zango ads appear
without the permission of the sites in which
they are shown, and without payment to
those sites. These ads even appear in
places in which no banner ads are not
available for purchase at any price. See e.g.
the screenshot at right, showing a Zango
banner ad injected to appear *above*
Google's search results.



A Zango Ad Injected into Google by FullContext

*Typosquatters promoting Zango.*
Separately, Websense and Chris Boyd
recently documented Zango installs
commencing at "Yootube". "Yootube" is a clear typosquat on the well-known "Youtube" site -- hoping to reach users
who mistype the address of the more popular site. If users reach the misspelled site, they will be encouraged to install
Zango. Such Zango installations are predicated on a typosquat, e.g. on users reaching a site other than what they
intended -- a particularly clear example of deception serving a key role in the Zango installation process.

*Spyware bundlers promoting Zango.* In our testing of summer and fall 2006, we repeatedly observed Zango "S3"
installer programs downloaded onto users' computers by spyware-bundlers themselves operating without user consent
(e.g. DollarRevenue and TopInstalls). Users received these Zango installation prompts among an assault of literally
dozens of other programs. Any consent obtained through this method is predicated on an improper, nonconsensual
arrival onto users' PCs -- a circumstance in which we think users cannot grant informed consent. Furthermore. the
proposed settlement requires "express consent" before "installing *or downloading*" (emphasis added) "any software"
onto users' PCs (section III). Zango's S3 installer is a "software program" within the meaning of the proposed
settlement, yet DollarRevenue and TopInstalls downloaded this program onto users' computers without consent. So
these downloads violate the plain language of the proposed settlement, even where users ultimately refuse to install
Zango software.

*Update (December 8)*: We have uncovered still other Zango installations predicated on deception, including phishing at MySpace. We discuss these improper practices in our follow-up comment to the FTC. Our bottom line: These Zango installs are disturbing not because they put zango in violation of hte terms of hte proposed settlement, but precisely because they do not -- because tehse isntallations, disturbing though they may be, do not clearly violate any of the settlement's requirements. These installations raise the alarming prospect that this settlement could allow Zango to continue to pay distributors to create malicious and/or deceptive software and web pages.

*Section H: Unlabeled Ads*

Today CDT filed a further comment about the FTC's proposed settlement, focusing in part on Zango's recent display of unlabeled ads, again specifically contrary to Zango's obligations under the proposed settlement (section VI). CDT has proof of 39 unlabeled ads -- 10% of their recent partially-automated tests -- in which Zango's pop-up ads lacked the labeling required under the proposed settlement. CDT explains that the ads "provide[d] absolutely no information that would allow consumers to correlate the advertisements' origins to Zango's software."

We share CDT's concern, because we too have repeatedly seen these problems. For example, this video shows a Zango ad served on November 19, 2006 -- with labeling that disappears after less than four seconds on screen (from 0:02 to 0:06 in the video). Furthermore, Edelman first reported this same problem in *July 2004*: That when ads include redirects (as many do), Zango's labeling often disappears. Compliance with the proposed settlement requires that Zango's labeling appear *on each and every ad*, not just on some of the ads or even on most of the ads. So, here too, Zango is in breach of the proposed settlement.

Furthermore, the proposed settlement's labeling requirement applies to "any advertisement" Zango serves -- not just to Zango's pop-ups, but to other ads too. Zango's toolbars show many ads, as depicted in the screenshots below. Yet these toolbars lack the labeling and hyperlinks required by the proposed settlement. These unlabeled toolbars therefore constitute an additional violation of Zango's duties under the proposed settlement.



Zango and Zango/Hotbar Toolbars Without the Labeling Required under the Proposed Settlement

*The Size of Zango's Payment to the FTC*

We are puzzled by the size of the cash payment to be made by Zango. We understand that the FTC's authority is limited to reclaiming ill-gotten profits, not to extracting penalties. But we think Zango's profits to date far exceed the $3 million payment specified in the proposed settlement.

Available evidence suggests Zango's company-to-date profits are substantial, probably beyond $3 million. As a threshold matter, Zango's business is large: Zango claims to have 20 million active users at present (albeit with some "churn" as users manage to uninstall Zango's software). Furthermore, Zango's revenues are large: Zango recently told a reporter of daily revenues of $100,000 (i.e. $36 million per year), a slight increase from a 2003 report of $75,000 per day. With annual revenues on the order of $20 to $40 million, and with three years of operation to date, we find it inconceivable that Zango has made only $3 million of profit.

Zango's prior statements and other companies' records also both indicate that Zango's profits exceed $3 million. A 2005 Forbes article confirms high profits at Zango, reporting "double-digit percentage growth in profits" -- though without stating the baseline level of profits. But financial records from competing "adware" vendor Direct Revenue indicate a remarkable 75%+ profit margin: In 2004, DR earned $30 million of pre-tax profit on $38 million of revenue. Because Zango's business is in many respects similar to DR, Zango's profit margin is also likely to be substantial,

albeit reduced from the 2004-era "adware" peak. Even if Zango's profit margin were an order of magnitude lower, i.e. 7%, Zango would still have earned far more than $3 million profits over the past several years.

If Zango's profits substantially exceed $3 million, as we think they do, the settlement's payment is only a slap on the wrist. A tougher fine -- such as *full* disgorgement of *all* company-to-date profits worldwide -- would better send the message that Zango's practices are and have been unacceptable.


### Zango's Statements and the Need for Enforcement

In its November 3 press release, Zango claims its reforms are already in place. "Every consumer downloading Zango's desktop advertising software sees a fully and conspicuously disclosed, plain-language notice and consent process," Zango's press release proclaims. This claim is exactly contrary to the numerous examples we present above. Zango further claims that it "has met or exceeded the key notice and consent standards detailed in the FTC consent order since at least January 1, 2006" -- again contrary to our findings that nonconsensual and deceptive installations *remain ongoing*.

From the FTC's press release and from recent statements of FTC commissioners and staff, it appears the FTC intends to send a tough message to makers of advertising software. We commend the FTC's goal. The proposed settlement, if appropriately enforced, might send such a message. But we worry the FTC will send exactly the opposite message if it allows Zango to claim compliance without actually doing what the proposed settlement requires.

As a first step, we endorse CDT's suggestion that the FTC require Zango to retract its claim of compliance with the proposed settlement. Zango's statement is false, and the FTC should not stand by while Zango mischaracterizes its behavior vis-a-vis the proposed settlement.

More broadly, we believe intensive ongoing monitoring will be required to assure that Zango actually *complies* with the settlement. We have spent 3+ years following Zango's repeated promises of "reform," and we have first-hand experience with the wide variety of techniques Zango and its partners have used to place software onto users' PCs. Testing these methods requires more than black-letter contracts and agreements; it requires hands-on testing of actual infected PCs and the scores of diverse infection mechanisms Zango's partners devise. To assure that Zango actually complies with the agreement, we think the FTC will need to allocate its investigatory resources accordingly. We've spent approximately 10 hours on the investigations leading to the results above, and we've uncovered these examples as well as various others. With dozens or hundreds of hours, we think we could find many more surviving Zango installations in violation of the proposed settlement's requirements. We think the FTC ought to find these installations, or require that Zango do so, and then ought to see that the associated files are entirely removed from the web.

*Update (December 8)*: Our follow-up comment to the FTC discusses additional concerns, further ongoing bad practices at Zango, and the special difficulty of enforcement in light of practices seemingly not prohibited by the proposed settlement.





**Home** » **News** » **Latest news** » Zango still in spyware game

current user: none (**login** | **register**)

# Zango still in spyware game

*Dodgy tactics continue despite ruling.*

Several researchers have complained that adware-fuelled media company *Zango* continues to use deceptive practices, despite the recent case brought against it by the FTC, in which it was fined $3 million and ordered to cease such activities.

During the case, *Zango* insisted that it had already cleaned up its act, and that none of the devious installation techniques it were accused of had been in use by the company since January this year. However, two separate groups of researchers have presented evidence that the practices continue, even after the legal settlement.

Spyware watchers Ben Edelman and Eric Howes have released a thorough study of *Zango* installation routines, clearly showing the lack of clear disclosure during installation and the absence of source data from pop-up ads. The study includes screenshots and video demonstrations of deceptions in action.

Elsewhere, the *Center for Democracy and Technology* (CDT) has sent a formal complaint to the FTC, including more evidence that the terms of the settlement continue to be broken and urging the FTC to insist *Zango* apologises for its earlier statement, and to monitor the company closely in future to ensure compliance. The complaint is available from the CDT website (PDF format), here.

21 November 2006

# News

**latest news**

**virus news**

**spam news**

**vb news**

**news feeds**

**malware prevalence**

**events calendar**


[Subscribe now!]


[VB2007 registration now open!]

Ads by Google

**Top 5 Spyware
Removers**
Compare and Download
the 5 Top Spyware Virus
Removers for Free.
SpywareRemoversReviewed.com

**2007 Top Virus
Protection**
Read reviews and
compare the top virus
protection software for
2007.
6starreviews-protect.guideq.com

**Free Spyware-Remover
Scan**
Find & Remove all
Spyware & Adware 5 star
Rated - 100% Free
Download!
www.SpywareRemover.com

**Spyware-Free Download**
Kill Adware and Spyware
in Minutes! Satisfaction
Guaranteed
www.spywarebot.com

**Free- Malware Removers**
Download Free Malware
Removers & Protect Your
PC. Facts & Info.
www.RemovalMalware.info

Rate this content

- ● good
- ○ above average
- ○ average
- ○ below average
- ○ poor

```
comments...



```

Submit

News Archive

# Virus News

**2007**

**2006**

**2005**

**2004**

**2003**

**2002**

## Spam News

**2007**

**2006**

**2005**

**2004**

**2003**

## VB News

**2007**

**2006**

**2005**

**2004**

**2003**

**2002**

Related Links

- News links

Copyright © 2007 Virus Bulletin Ltd  -  Privacy statement | Terms and conditions

Techdirt: Zango Affiliate Admits To Targeting Kids; What Will Zango Do?                          Page 1 of 3



| | |
|---|---|
| Home    The Techdirt Insight Community    **The Techdirt Blog**    Corporate Intelligence    About Techdirt    Contact Us | |

Main    Submit a Story    Advertise With Us    Send Us Feedback    Subscribe To Newsletter    Polls    Techdirt Wireless    Your Preferences

**From the Techdirt Blog...**

<< **Insurance Companies Insist 'Unbreakable' System Means You Stole Your Own Car**   |   **You Have An Obituary From Your Frie Accept/Deny Funeral Arrangements?** >>



**Scams**
by **Mike Masnick**
Mon, Jul 31st 2006
4:24pm

**Share This**

**Permalink.**

# Zango Affiliate Admits To Targeting Kids; What Will Zango Do?

*from the questions,-questions dept*

We've been covering security researcher Chris Boyd's continuing saga of highlighting Zango' **questionable** and **dishonest** behavior in dealing with affiliates pushing adware-infested videos on MySpace. While the company continues to insist it's stopping "rogue" affiliates, evidence suggests **they let them live on**. Boyd now has a new post up, detailing how one of the Zango affiliates who has actively targeted MySpace admits that he **targets teenagers between the ages of 13 to 18**, which is younger than Zango claims they allow. So, Boyd is asking, if Zango is so serious about stopping these rogue affiliates, will they turn off this one who so clearly admits to breaking their rules?

**6 Comments** | **Leave a Comment..**



**AMD-Based Computers**
Compare Systems Side-By-Side - Find The Right AMD-Based System Now
shop.amd.com
Ads by Google

**Reader Comments**

(**Flattened** / **Threaded**)

1.   **Fine them!** by Mark Kitchen on Jul 31st, 2006 @ 5:02pm

    Fine them for each affected end user.

    (**reply to this comment**) (**link to this comment**)

2.   **of course not** by **Techguy83** on Jul 31st, 2006 @ 5:28pm

    Oh, yes, they will indeed 'appear' to, but in the end it will still be going, just in a sneakier way.

    (**reply to this comment**) (**link to this comment**)

3.   by **techdirtaddict** on Jul 31st, 2006 @ 7:42pm

i wish users were savvy enough to block al these useless crap

(**reply to this comment**) (**link to this comment**)

4.   by **Anonymous Coward** on Jul 31st, 2006 @ 7:46pm

Some user are savvy enough to block this crap. The sad reality is that there will always be users who are not savvy enough. That's why we will always need a regulating body to protect the people natural selection should have eliminate

(**reply to this comment**) (**link to this comment**)

5.   **Its a big shell game** by **thecaptain** on Aug 1st, 2006 @ 6:00am

So what? They'll "come down hard" on this "affiliate" which will then declare bankruptcy or dissolve itself and otherwise disappear.

The people running it will be back with a whole new sanitized "affiliate" and go back to doing exactly the same thing before the smoke clears.

This whole corporate veil thing is starting to piss me off. I say get rid of that legal conceit that a corporation is a legal entity on its own...sue the directors, CEOs, VP, and whatever...so they can FINALLY get some consequences of their dealings instead of just finding another corporate fascade to duck under while they try and rape people.

(**reply to this comment**) (**link to this comment**)

6.   **Re: Its a big shell game** by **zango affiliate** on Feb 6th, 2007 @ 2:07pm

Well if you guys go on zango.com you will see that their his now new warning and permission disclaimers before anything his installed on peoples systems, so !if people are willing to see the pop-ups i don't see anything wrong with it.

zango will really do good because of their new clean ways.

im making serious money with these guys and i do it CLEAN, so please dont put everyone in the same basket and also we are alot of webmasters that do a clean job promoting zango, and even more so with that fcc settlement.

peace

(**reply to this comment**) (**link to this comment**)

## Add Your Comment

| Name | |
| Email | |
| URL | |
| Subject | |
| Comment | |

Techdirt: Zango Affiliate Admits To Targeting Kids, What Will Zango Do?    Page 3 of 3

Options    ● Plain Text    ○ HTML    ☐ Save me a cookie

[Submit]    [Preview]

- **Plain Text:** A CRLF will be replaced by break <br> tag, all other allowable HTML is intact
- **HTML:** No formatting of any kind is done without explicitly being written in
- **Allowed HTML Tags:** <b> <i> <p> <a> <em> <br> <strong> <blockquote> <hr> <tt>

**Contact Us**