Honorable John C. Coughenour

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZANGO, INC.,                          )
                                      )
                                      )   No. C-07-0807-JCC
                    Plaintiff,        )
                                      )   DECLARATION OF RAY
        v.                            )   EVERETT-CHURCH IN
                                      )   SUPPORT OF OPPOSITION TO
KASPERSKY LAB, INC.,                  )   PLAINTIFF'S MOTION FOR
                                      )   TEMPORARY RESTRAINING
                    Defendant.        )   ORDER
                                      )
                                      )

I, Ray Everett-Church, declare as follows:

1.      I am currently employed as an independent consultant specializing in Internet-related privacy issues. Attached as Exhibit A is my current Curriculum Vitae detailing more than fifteen years of experience in Internet technology and policy matters. Though my experiences are detailed in full in Exhibit A, a summary of my specific experiences pertinent to this case are as follows:

### EXPERIENCE AND QUALIFICATIONS

2.      Since 1994, my work has focused almost exclusively on legal and policy issues surrounding the Internet and the implications for online marketing and advertising practices. I have advised an array of clients, including America Online, Aventis

DECLARATION OF RAY EVERETT-CHURCH IN
SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION
FOR TRO
(C-07-0807-JCC) — 1

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Pharmaceuticals, Comcast, CommonHealth, Coremetrics, Ericsson, Household HSBC, Intuit, Kimberly-Clark, Microsoft, and Pfizer, on a wide range of Internet advertising, online marketing, privacy and security issues. As a result of these experiences, I have extensive knowledge of current industry practices and business considerations arising from a wide variety of online marketing and advertising activities.

3.     In 1997, the New York Times' online edition profiled me as an influential proponent of ethical Internet commerce regarding my work in helping to establish industry best practices for email marketing and online advertising.[1] In 1999, I was appointed by the Internet advertising firm AllAdvantage.com to become what was widely reported as the world's first corporate Chief Privacy Officer, a position that has since been adopted by hundreds of major corporations worldwide. The next year I was called the "dean of corporate privacy officers" by *Inter@ctiveWeek Magazine*, a leading Internet industry trade journal of the day.[2]

4.     In recent years I have testified before committees of the United States Senate, United States House of Representatives, the Federal Trade Commission, and the California state legislature, on issues relating to consumer privacy, electronic commerce, and online marketing best practices. I am a frequent commentator on radio, television, and in print news outlets, and am a frequent speaker at industry trade shows and conferences on subjects relating to Internet privacy. I am also a co-author of *Internet Privacy for Dummies* (2002) and *Fighting Spam for Dummies* (2004) (both publications from John Wiley Publishing), in which my co-authors and I educate readers regarding online marketing and advertising practices which threaten the privacy of their personal information and/or present the risk of unauthorized collection, use, and abuse, of information about their online activities. A list of my publications in the last 10 years is included in Exhibit A.

---

[1] Jeri Clausing, *Anti-Spam Crusader Sees Work as Mission*, New York Times Online, August 9, 1997.

[2] Louis Trager, *30-Second Interview: Ray Everett-Church*, Inter@activeWeek, March 28, 2000.

DECLARATION OF RAY EVERETT-CHURCH IN
SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION
FOR TRO
(C-07-0807-JCC) — 2

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

5.      I hold a B.A. in International Studies from George Mason University in Fairfax, Virginia, and I received my law degree from The George Washington University in Washington, D.C.  I am currently licensed to practice law in the State of Maryland.

## BACKGROUND AND EXPERTISE IN ADWARE ISSUES

6.      When I was employed at AllAdvantage.com, which was an early competitor of the precursor companies that are now a part of Zango, my primary task was to balance consumer privacy concerns, legislative and regulatory mandates (in the U.S. and internationally) regarding consumer data collection practices, and the desire of the company to maximize revenue through the use of its primary asset: rich data profiles about the online activities of customers. In more recent years, I have also served as an early stage advisor and counselor to a new company, AGLOCO.com, which is engaged in the permission-based delivery of advertising to consumers' desktops. Drawing from my direct experience in the same industry as Zango, I am qualified to offer opinions regarding the public policy considerations arising from Zango's activities.

7.      Particular to the topics at issue in this case, in 2004 I was engaged by a group of twelve plaintiffs to testify as an expert witness with respect to marketing and public policy issues arising in the course of litigation against Claria Corporation, a major player in the adware and spyware industry. In the course of research and preparation of my expert report and deposition for that case, I became very familiar with the practices of the adware and spyware industries generally, including Hotbar and 180 Solutions, which are now part of the Zango company via a merger. At that time, I also became very familiar with the results of several surveys and studies which analyzed consumer's reactions to the installation and operation of adware and spyware on their computers.

8.      In April 2004, my expertise in the field was recognized by the Federal Trade Commission when they asked me to be a presenter at their "Spyware Workshop" event, which was "a one-day public workshop to explore the issues associated with the distribution and

DECLARATION OF RAY EVERETT-CHURCH IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR TRO (C-07-0807-JCC) — 3

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

effects of software that aids in gathering information about a person or organization without their knowledge and which may send such information to another entity without the consumer's consent, or asserts control over a computer without the consumer's knowledge."[3]

9.      As a result of the experiences detailed above, I am familiar with and well-informed regarding current industry-wide policies and practices, and the public policy considerations arising from the distribution of adware generally, such as that produced and distributed by Zango. In addition I am familiar with and well-informed regarding current industry-wide policies and practices, and the public policy considerations that are underlying and informing the development and implementation of software designed to combat the problems created by adware, such as that software produced and distributed by Kaspersky Labs.

10.     This affidavit is based on my experience in the fields of Internet privacy and online advertising and the review of several documents filed by the parties with the Court. The matters about which I testify here concern commonly understood and accepted principles and practices in the fields of Internet privacy and online advertising, and are generally applicable to all software, Web sites, and other activities engaged in by companies operating within those fields. My preparatory work (apart from preparing this affidavit) has consisted of reviewing the Zango website and the installation materials for several of its software offerings, reviewing public documents filed by the parties with the Court, and consulting publicly-available research.

## ADWARE AND CONSUMER ANNOYANCE

11.     Zango is in the business of selling Internet advertising. Zango's business model for delivering the marketing messages of its advertising clients is based on wide-scale distribution of its ad delivery software to millions of consumers. Zango achieves that market

---

[3] U.S. Federal Trade Commission, "Spyware Workshop" Home page, April 19, 2004, at http://www.ftc.gov/bcp/workshops/spyware/ (Visited June 3, 2007)

DECLARATION OF RAY EVERETT-CHURCH IN
SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION
FOR TRO
(C-07-0807-JCC) — 4

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

penetration by packaging its ad delivery software with several "free" pieces of software. These software packages are presented to consumers as providing useful functions or entertaining content – such as screensavers, games, music, and humorous videos. The Zango advertising software is distributed through a variety of distribution methods. In addition to making the software available directly from its own Web site, as well as Web sites operated separately which promote the download of the software, Zango also encourages developers to incorporate the Zango software into their content in exchange for a share of the advertising revenue.

12.    Once the Zango software has been downloaded and installed on a user's computer, the software monitors what Web pages the user visits and occasionally generates a pop-up advertising window, which displays an advertisement in a window that appears in a browser window appearing on top of the content of the original Web site being viewed by the user. According to Zango's website, it uses the information gathered about a user's Web "surfing" activities to present advertising content that is intended to be relevant to the subject matter of the content being viewed by the user.

13.    It is well-established across the Internet advertising industry that consumers hate pop-up advertisements.[4] According to a *New York Times* article in 2004, consumers install anti-virus and other kinds of pop-up blocking software in an attempt to be rid of this proliferating annoyance.[5] Indeed, pop-ups are so reviled that companies targeted by unauthorized pop-ups have taken steps to distance themselves from pop-ups generated by companies like Zango.[6] Moreover, advertisers themselves have distanced themselves from the

---

[4] See, e.g., Denise Garcia, *Unpopular Pop-Ups Won't Stop*, Gartner G2 (December 2002); *Darn Those Pop-Up Ads! They're Maddening, But Do They Work?* Wharton School of Business, University of Pennsylvania, August 2003 at http://www.inc.com/partners/businessinsights/articles/popup.html (visited June 2, 2007)

[5] Saul Hansell, *As Consumers Revolt, a Rush to Block Pop-Up Online Ads*, New York Times, January 19, 2003, at http://www.nytimes.com/2004/01/19/technology/19popup.html (visited June 2, 2007)

[6] Stefanie Olsen, *Google distances itself from pop-ups*, News.com, January 29, 2002, at http://news.com.com/2100-1023-825507.html (visited June 2, 2007)

DECLARATION OF RAY EVERETT-CHURCH IN
SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION
FOR TRO
(C-07-0807-JCC) — 5

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1    use of pop-up ads, even going so far as, in the case of America Online, offering their own

2    pop-up blocking software to block the ads they once so heavily relied upon for ad revenue.[7]

3    The well-known negative consumer response to pop-ups is echoed in the results of an

4    extensive survey conducted in 2004 by Dr. Thomas Dupont on consumer attitudes and

5    reactions to adware and pop-up ads.[8]

6         14.    But one need not conduct a comprehensive study to understand the intense

7    hatred of average Internet users to adware and pop-up ads; an Internet search on terms such as

8    "remove pop-up ads" and "remove adware" reveals more than a million web pages devoted to

9    helping consumers detect and remove adware from their computers. Many of those sites

10   include complaints from average Internet users, sometimes laced with profanity and even

11   occasional calls for acts of violence against the creators and distributors of such software.

12        15.    Consumer complaints about adware include the fact that it was installed

13   without their notice or explicit consent; that adware consumes resources on users' computers,

14   resulting in sluggish behavior, clogged Internet connections, and unexplained system crashes;

15   and, concern about what kinds of private and personal information about users are being

16   collected and transferred to unknown parties. In this era of heightened concern about security,

17   including the growing problems of fraud related to identity theft, consumers are deeply

18   concerned by the idea of software that is surreptitiously tracking their online activities,

19   including business and personal financial transactions.

20        16.    In my experience, I have never seen an instance in which consumers

21   specifically sought out software that generated pop-up advertisements or captured their

22   personal information and transferred it to unknown or untrusted third parties. In contrast, there

23

24         [7]   Brian  Morrissey,  *AOL  Pops  Pop-Ups,*  ClickZ.com,  March  12,  2003  at
     http://www.clickz.com/showPage.html?page=2108501 (visited on June 2, 2007)

25

26         [8] Thomas D. Dupont, Ph.D., *Gator Pop-Up Ad Likelihood of Confusion/Consent Survey*, submitted to
     the  Federal  Trade  Commission  "Spyware  Workshop",  March  23,  2004,  at
     http://www.ftc.gov/os/comments/spyware/040323hertzllbeanwithpopupsurvey.pdf (visited on June 2, 2007)

27

DECLARATION OF RAY EVERETT-CHURCH IN
SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION
FOR TRO
(C-07-0807-JCC) — 6

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

is overwhelming evidence that consumers are desperate to be rid of unwanted pop-up ads and risks to their personal privacy. The intense visceral reactions experienced by consumers and in evidence on more than a million Internet pages supports my opinion that companies like Kaspersky Labs, who create software designed to address the anger and frustration of users plagued by unwanted intrusions into their computing experience, are providing a valuable service for consumers desperate to be rid of the problem. Indeed, the vibrant market for adware removal software such as that provided by Kaspersky Labs is proof itself that there is tremendous public benefit in having such software widely available.

## ADWARE PREYS UPON CONSUMER CONFUSION AND INEXPERIENCE

17.     In the course of my research for this affidavit, and building upon similar research regarding adware which I undertook for my book, *Internet Privacy for Dummies,* I am familiar with the installation process employed by Zango for many of its software products. This process includes the display of a dialog page in which users are presented with a lengthy End User License Agreement ("EULA"), links for related legal documents such as a "Privacy Policy," "Best Practices," "Frequently Asked Questions," and other links. In several cases, the single largest interactive features on the dialog box created by Zango are buttons labeled "Go Back" and "Continue."

18.     In my experience, the average user is conditioned to click "Continue" or "Yes" or whatever other indications of agreement are necessary in order to get on with the business of viewing the content they requested. This experience was confirmed when, during the course of interviewing friends and acquaintances in preparation for writing my book, many of those questioned indicated that their past experiences with the benefits of installing such software packages had indeed made them accustomed to reflexively and immediately clicking "Yes" when presented with such dialog boxes.  Thus, my co-authors and I devoted a portion of one chapter in our book to warning users that, while some software installations are

DECLARATION OF RAY EVERETT-CHURCH IN
SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION
FOR TRO
(C-07-0807-JCC) — 7

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

completely innocuous, other software packages act as a "Trojan Horse," disguised as something pleasant but ultimately delivering an unsavory payload.

19.      A comparison between the incredibly popular YouTube video sharing website and Zango's version demonstrates the way in which Zango preys upon user confusion. When visitors to YouTube request to view a video, they are prompted to install the Flash Player software (if it is not already installed on the user's computer) in order to view YouTube's content. Similarly, Zango also asks users to download software in order to view its video content. However, unlike the benign Flash Player, Zango's "free" download delivers unwanted tracking software and generated unwanted pop-up advertising to the viewer's screen.

20.      In my opinion, Zango's business is itself based on a Trojan Horse model, because Zango presents consumers with software represented as a free gift, hoping that consumers do not notice that bundled inside that package is something more which delivers an unwanted surprise in the form of pop-up ads. In my opinion, Zango takes unfair advantage of the many millions of unsuspecting and unsophisticated Internet users who, as a result of past experiences with seeking entertaining Web site content, will uncritically accept such "gift" software downloads without fully understanding or appreciating the consequences of doing so.

21.      Indeed, it is the ease with which adware vendors can prey upon users and engage in unfair and deceptive trade practices that has made the adware industry such a ripe target for investigations, lawsuits, and enforcement actions by consumer protection authorities. The record of Zango itself before the Federal Trade Commission, as well as nearly identical issues of deception and unfair practices arising from other players in the adware industry reinforce my opinion that many adware companies are built upon a tainted foundation.

DECLARATION OF RAY EVERETT-CHURCH IN
SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION
FOR TRO
(C-07-0807-JCC) — 8

22.     For these reasons, it is my opinion that the software provided by Kaspersky Labs serves an important public interest in alerting consumers to what may be unexpected and unwanted behavior of software that users may not have realized was being installed.

**CONCLUSION**

23.     For all of the foregoing reasons, and for additional reasons which will undoubtedly be expounded upon at trial, it is my opinion that the software offered by Kaspersky Labs is serving an important public interest and that interest outweighs any incidental harms claimed by Zango. Therefore it is my opinion that the Court should deny any request to enjoin Kaspersky Labs from continuing to offer services that are in great demand by consumers. Unlike adware vendors who must trick or entice users into downloading and installing their wares, security software such as that created by Kaspersky Labs is specifically sought by consumers to help them cure problems created by adware. To prevent Kaspersky from continuing to offer consumers the assistance they are specifically seeking would be contrary to the public interest of allowing consumers to access the tools and resources necessary to protect their privacy and the integrity of their computers and personal information.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


Executed on June 3, 2007.


By /s/ *Ray Everett-Church*
Ray Everett-Church

DECLARATION OF RAY EVERETT-CHURCH IN
SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION
FOR TRO
(C-07-0807-JCC) — 9

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

<u>CERTIFICATE OF SERVICE</u>

I certify that on  June 4, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

**Attorneys for Plaintiff**
Jeffrey I. Tilden, WSBA No. 12219
Michael Rosenberger, WSBA No. 17730
Gordon Tilden Thomas & Cordell LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154-1051
jtilden@gordontilden.com

In addition, paper copies of the foregoing document will be mailed by United States Postal Service to non CM/ECF participants, if any.

/s/ *Bruce E.H. Johnson*
Bruce E.H. Johnson, WSBA No. 7667
Davis Wright Tremaine LLP
2600 Century Square
1501 Fourth Avenue, Suite 2600
Seattle, WA 98101-1688
Telephone: (206) 628-7683
Fax: (206) 628-7699
E-mail: brucejohnson@dwt.com

03267/00501 678965.1

DECLARATION OF RAY EVERETT-CHURCH IN
SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION
FOR TRO
(C-07-0807-JCC) — 10