1                                                     Honorable John C. Coughenour

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF WASHINGTON
8                                  AT SEATTLE

9                                              )
                                               )
10    ZANGO, INC.,                             )   No. C-07-0807-JCC
                                               )
11                        Plaintiff,           )   DEFENDANT KASPERSKY'S
                                               )   OPPOSITION TO PLAINTIFF'S
12         v.                                  )   MOTION FOR TEMPORARY
                                               )   RESTRAINING ORDER
13    KASPERSKY LAB, INC.,                     )
                                               )
14                        Defendant.           )
                                               )
15    _____     )

16                                    Bruce E. H. Johnson, WSBA # 7667
                                      Sarah Duran (WSBA pending)
17                                    DAVIS WRIGHT TREMAINE LLP
                                      2600 Century Square, 1501 Fourth Ave.
18                                    Seattle, WA 98101-1688
                                      Telephone: (206) 628-7683
19                                    Fax: (206) 628-7699
                                      E-mail: brucejohnson@dwt.com
20

21                                    Erik Paul Belt
                                      Lisa M. Fleming
22                                    BROMBERG & SUNSTEIN LLP
                                      125 Summer Street
23                                    Boston, MA 02110
                                      Tel:  (617) 443-9292
24                                    Fax: (617) 443-0004
                                      E-mail:  ebelt@bromsun.com
25

26                                    *Attorneys for Defendant Kaspersky Lab, Inc.*

27

DEFENDANT KASPERSKY'S OPPOSITION TO                    Davis Wright Tremaine LLP
MOTION FOR TEMPORARY RESTRAINING ORDER                      LAW OFFICES
(C-07-0807-JCC) -- 0                              2600 Century Square · 1501 Fourth Avenue
                                                     Seattle, Washington  98101-1688
                                                    (206) 622-3150 · Fax: (206) 628-7699

**INTRODUCTION**

May a door-to-door salesman seek to enjoin a print shop from selling "No Soliciting" signs?  May a spy sue a security company for installing locks and alarms?  In effect, this case presents a similar kind of question.

Specifically, the plaintiff, Zango, is an Internet version of the door-to-door salesman or spy.  Zango lures computer users to its websites by offering free videos or computer games so that it can install on the users' computers--often without their full consent--so-called "adware" or other malicious software ("malware," for short).  The defendant, Kaspersky Lab, Inc. ("Kaspersky USA"), is a reseller of Internet security systems, particularly anti-virus software that detects malware and allows users to block it from their computers.  Continuing the analogy, Kaspersky USA sells "No Soliciting" signs or installs locks and alarms that allow computer users to prevent intrusions.  The alarm company should not be punished just because the homeowner does not want to let the salesman or spy through the door.

The First Amendment and federal law protect Kaspersky USA'a sale and installation of such Internet security systems.  Indeed, federal policy favors such endeavors.

In its TRO motion, Zango asks for mandatory relief--*i.e.*, that Kaspersky USA remove Zango from its list of suspicious websites and otherwise modify the anti-virus and other security software.  The problem, however, is that Kaspersky USA has no ability to do so.  The security software is designed, developed, and maintained by a Russian company, Kaspersky Lab ZAO ("Kaspersky Moscow").  Kaspersky USA is merely a non-exclusive distributor of Kaspersky Moscow's products, is not an agent or subsidiary, and has no control over or ability to modify the software.  Zango has sued the wrong company.

For these and other reasons discussed below, Kaspersky USA respectfully asks the Court to deny the TRO motion.[1]

---

[1]  Kaspersky USA will file, as soon as possible, a motion to dismiss the case because, *inter alia*, Zango has failed to state a proper claim for relief and cannot establish personal jurisdiction over Kaspersky USA in Washington.  Kaspersky USA reserves all affirmative defenses and, by this opposition brief, does not mean to waive any defenses under Rule 12(b)(6) or otherwise.

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 1

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1

**BACKGROUND FACTS**

2    According to Kaspersky USA's Chief Financial Office, Angelo Gentile, Kaspersky

3    USA in based in Woburn, Massachusetts.  Kaspersky USA resells Internet security software

4    (*e.g*., anti-virus software, spam filters, etc.) developed by Kaspersky Moscow.  The two

5    companies are separate:  one does not own or control, in whole or in part, the other.  They

6    merely share a name, which Kaspersky USA uses under a trademark license from Kaspersky

7    Moscow.  *See* Declaration of Angelo Gentile ("Gentile Decl.") at ¶¶ 1-4, 7.

8    Kaspersky USA is merely a non-exclusive distributor.  Other companies, such as

9    original equipment manufacturers ("OEMs"), also distribute the Kaspersky security systems

10    without any involvement of Kaspersky USA.  Kaspersky USA also has no control over these

11    OEMs. Nor does Kaspersky USA have any control over the development and maintenance of

12    the software and thus no way to compel the modifications Zango demands.  *Id*. at ¶¶  5-13.

13    Indeed, Kaspersky USA's "Non-Exclusive Distribution Agreement" provides that it "<u>shall</u>

14    <u>have no authority to bind Licensor [Kaspersky Moscow] in any respect.</u>"  *Id*. at ¶ 9 and

15    Exhibit B attached thereto (emphasis added).

16    Kaspersky USA employs a Senior Technical Consultant, Shane Coursen, who keeps

17    tabs on malware circulating through the Internet.  Malware includes, for example, computer

18    viruses, worms, spyware, and adware, among other harmful programs.  *See* Declaration of

19    Shane Coursen ("Coursen Decl.") at ¶¶ 1-5.  Zango is a purveyor of malware.

20    More specifically, Zango sells advertising by luring viewers to its website on the

21    promise of free games and videos.  A visitor to the Zango website downloads the video or

22    game but, in the process, also downloads the Zango adware, which comes bundled with the

23    video or game.  The user often does not realize or fully appreciate that he or she is

24    downloading adware along with the free video or game.  The adware, in turn, opens links to

25    websites that may contain pornography or that are known sources of computer viruses and the

26    like.  Furthermore, apart from causing annoying pop-up ads and opening links to adult content

27

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 2

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1    websites, the adware itself is often harmful to a computer system, clogging computer memory

2    and slowing processing time.  *See* Coursen Decl. at ¶¶ 9-14,

3         Mr. Coursen explains the workings of the Kaspersky anti-virus software and other

4    security software.  For example, the Kaspersky software does not single out or discriminate

5    against Zango.  <u>Kaspersky has no intent to disrupt Zango's business</u>.  Kaspersky's only

6    motivation is to provide its customers with the means to protect their computers malware and

7    other unwanted content.   The software merely detects potentially unwanted or harmful

8    malware.  It is then up to the computer user to decide whether or not to accept or reject the

9    download--the Kaspersky software does not make that decision for the user. Indeed, the

10   Kaspersky security software always allows the user to install the Zango adware itself, should

11   the user choose to do so.  The software can also be configured to allow access to certain

12   websites that may be introduced by the Zango adware.  *See* Coursen Decl. at ¶¶ 15-18.

13        According to Mr. Coursen, Kaspersky Moscow dealt reasonably with Zango and did

14   undertake to remove or reduce certain threat detection from the Kaspersky software. Mr.

15   Coursen warns, however, that it would be irresponsible to remove all threat detection relating

16   to Zango and its clients (*i.e*., the companies that advertise through Zango's adware).    The

17   problem is that while the Zango adware may open links to harmless websites, it also opens

18   links to websites that contain unwanted content (such as pornography or that are known

19   sources of viruses and other malware.  *Id*. at ¶¶ 10, 19.

20        Zango's witness, Mr. Berretta, claims that Kaspersky admitted that its software

21   damages Zango websites.  That is untrue.  Certainly Mr. Coursen never admitted that and,

22   indeed, it would be physically impossible.  The Kaspersky software does not touch a website

23   or in any way damage it.  The Kaspersky security software merely acts a lock on a door--it

24   bars malware or links to unwanted websites from entering a user's computer.  The Kaspersky

25   software is purely defensive, not offensive.  *Id*. at ¶¶ 8, 16. 20.  Mr. Beretta did not say how

26   the Kaspersky software damages the Zango websites--probably because getting into specifics

27

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 3

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1    would show that, in fact, the Kaspersky software merely blocks the sites from a user's

2    computer and does not actually damage the site itself.

3        Zango portrays itself as an innocent on-line advertising business. But Internet security

4    experts know otherwise. As Mr. Coursen states, Zango is well known in the industry as a

5    purveyor of malware, including spyware. Many Internet security analysts actively follow

6    Zango's exploits and post articles and blogs warning about the dangers posed by Zango.

7    Indeed, Zango's activities (such as downloading adware and spyware onto unsuspecting

8    user's computers) became so damaging that the Federal Trade Commission took action

9    against Zango and fined it $3,000,000 for its unfair and deceptive practices. *See* Coursen

10   Decl. at 11-13. No wonder that Kaspersky and other Internet security system providers have

11   listed Zango and its affiliated websites as security threats.

12       Ray Everett-Church is a noted Internet privacy expert. Mr. Everett-Church explains

13   two particular concerns about Zango and why it is not the victim here. First, Zango is a

14   source of pop-up ads, which consumers universally hate. The adware also consumes

15   computer system resources and can often cause computer system crashes and can often clog

16   Internet connections. Computer users should have the choice to filter or remove adware--such

17   as Zango's adware--to stop these unwanted effects. Declaration of Ray Everett-Church

18   ("Everett-Church Decl.") at ¶¶ 11-14. Second, computer users often install the Zango adware

19   without full consent and without fully realizing the implications. Zango takes advantage of

20   the "Trojan Horse" model of deception. It offers free entertainment (videos and games)

21   hoping that unsuspecting users will install the adware that comes bundled with it. Such

22   method of doing business is predatory *Id*. at ¶¶ 15-21.

23       As such, the Kaspersky security software serves an important public interest by giving

24   computer users the tools they need to intercept and block Zango's intrusive malware. *Id*. at ¶¶

25   22-23.

26

27

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 4

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1                                    **ARGUMENT**

2          As a preliminary matter, Zango asks the Court to issue a prior restraint against speech.

3   The speech in question is the threat warning that the Kaspersky anti-virus software displays

4   when it detects possible malware or other unwanted content.  Even were such warnings

5   somehow libelous (they is not), under the First Amendment, a court may not restrain them.

6          The Kaspersky security software provides a valuable service, encouraged by public

7   policy.  It detects malware and other unwanted content (such as pornography) and allows

8   users to selectively block it.  This service falls under the safe harbor of 47 U.S.C. § 230(c).

9          Furthermore, Kaspersky USA has no control over the Kaspersky software and thus no

10  way to comply with Zango's demands. Because Kaspersky USA is merely an independent

11  contractor, not an agent of the manufacturer (Kaspersky Moscow), it cannot be held liable.

12         Under the traditional test for temporary restraining orders, Zango is unlikely to

13  succeed on the merits, and the balance of harms favors Kaspersky.  Also, public policy favors

14  Kaspersky USA, the provider of computer security, not Zango, the purveyor of malware.

15

16  **I.      THE REQUESTED TRO IS A CONSTITUTIONALLY FORBIDDEN PRIOR
            RESTRAINT OF SPEECH**

17         In a case also involving Internet security software and facts similar to this case, the

18  Central District of California denied to a provider of "foistware" (another term for spyware or

19  adware) a preliminary injunction against a security software distributor.  *See New.Net, Inc. v.*

20  *Lavasoft*, 356 F. Supp.2d 1071, 1073 (C.D. Cal. 2003).   In *Lavasoft*, the plaintiff, New.net,

21  made a business of downloading foistware over the Internet, often without the user's consent,

22  onto individual computers.  Lavasoft distributes security software that, like the Kaspersky

23  software, detects the presence of potentially unwanted programs and, upon request, removes

24  the programs from the users' computers.  *Id*. at 1072.  New.net alleged that Lavasoft's

25  security software unfairly targeted New.net and unfairly recommended to computer users that

26  the New.net software be removed.  *Id*. at 1073.  (That, in a nutshell, is exactly what Zango

27

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 5

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1    alleges against Kaspersky USA.)  New.net further alleged that Lavasoft's conduct amounted

2    to tortious interference with business relations, trade libel, and unfair competition.  *Id*.

3    (Again, Zango has made the same claims against Kaspersky USA in this case.)

4         The *Lavasoft* court summarized the dispute as follows:

5
     New.net brings this suit, and the present application for a preliminary
6    injunction, to protect its ability to surreptitiously download its New.net
     software by silencing a company whose computer program, ***at the request of a***
7    ***computer owner***, calls attention to [the New.net foistware's] presence on the
     user's hard drive.  Correctly understood, the contest in this case is between
8    computer users, who acquire software precisely to determine what programs
     they may have unsuspectingly loaded onto their hard drives, and New.net,
9    which apparently needs the ability to deliver its program to as many unwitting
10   users as possible to further its business plan.

11   *Id*. at 1073 (emphasis in original).

12        This summary could also serve to describe the dispute between Zango and Kaspersky

13   USA.  In effect, Zango wants to silence the Kaspersky security system from alerting users to

14   the presence of potentially unwanted adware.  The software gives the user the option of

15   accepting or rejecting the adware.  As such, Zango wants to deny computer users freedom of

16   choice, including the choice to be free from unwanted software or other malware.

17        The *Lavasoft* court denied New.net's motion for a preliminary injunction.  Relying on

18   Supreme Court precedent, the *Lavasoft* court recognized that, under the First Amendment, a

19   court should not restrain speech (such as adware warnings), "even if its content is alleged to

20   be remarkably harmful."  *Id*. at 1083.  The court then held that whether Lavasoft

21   mischaracterized New.net's program as "spyware" was beside the point.  On a motion for

22   preliminary injunctive relief, "the question of the *actual* truth or falsity of Lavasoft's speech is

23   not appropriate."  *Id*. at 1084 (emphasis in original).

24        Accordingly, it is equally beside the point whether (1) Zango's program is properly

25   characterized as adware, spyware, or something harmless, and (2) Kaspersky unfairly detects

26   and labels Zango's program as something to be removed.  A court should not restrain such

27   speech until there can be a full trial on the merits.

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 6

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1    Finally, the First Amendment doctrine of prior restraint trumps the usual

2 considerations for a preliminary injunction or TRO.  Thus, this Court may deny the requested

3 TRO even without addressing the traditional injunction factors.  *Id*. at 1089. [2]

4 **II.    KASPERSKY USA IS IMMUNE FROM LIABILITY**

5    The safe harbor provision of 47 U.S.C. § 230(c) shields Kaspersky's alleged conduct.

6 Section 230 is entitled "Protection for Private Blocking and Screening of Offensive Material."

7 The Kaspersky security software is directed to just that function: allowing computer users to

8 block and screen offensive material.

9    Section 230 states that it is the policy of the United States --

10    "to encourage the development of technologies which maximize user
control over what information is received by individuals, families, and schools
11 who use the Internet and other interactive computer services;" and

12    "to remove disincentives for the development and utilization of
13 blocking and filtering technologies that empower parents to restrict their
children's access to objectionable or inappropriate online material."
14
47 U.S.C. ¶ 230(b)(3) and (4).
15
   The Kaspersky security system furthers this public policy.  The Kaspersky system is a
16
technology that allows computer users to control what information they receive over the
17
Internet and to filter or block particularly objectionable material, such as malware or links to
18
adult content web sites (*i.e*., pornography).  Importantly, the software gives users the choice
19
whether to accept or reject Zango's adware.  See Coursen Decl. at ¶¶ 9-18.
20

21         [2] Faced with a similar First Amendment/prior restraint argument in its co-pending case against PC
22 Tools Pty, Ltd. (Case No. 07-CV-00797 JCC), Zango argued that the alleged wrongful conduct was not speech.
But Zango cannot deny that it bases its entire case against Kaspersky USA on allegedly false speech and that it
23 seeks to enjoin such speech. For example, Zango alleges that the Kaspersky security system falsely "identifies
Zango products as 'malicious' and as an 'infection.'"  Complaint at ¶ 14.  Zango then advances a cause of action
24 for trade libel in which it alleges*, inter alia*, that "Kaspersky, through its conduct, has made false and disparaging
statements about Zango's products" and "publishes its false and disparaging statements to users of Kaspersky
25 programs."  Complaint at ¶¶ 28-29.  That is an allegation of speech, pure and simple.  Thus, if Zango argues  that
there is no speech here, Zango would necessarily contradict its entire case.
26         Moreover, contrary to Zango's allegation, the Kaspersky software does not touch in any way the
websites of Zango's customers.  Thus, there is no issue of conduct apart from the speech itself.  Rather, the
27 software merely runs on users' computers.  There is no way that the Kaspersky software can damage the Zango
websites, and Zango has not provided even a single declaration from a customer to the contrary.

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 7

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1   Subsection (c)(2) sets forth the safe harbor from civil liability:

2   No provider or user of an interactive computer service shall be held liable on
3   account of --

4      (A)   any action voluntarily taken in good faith to restrict access to or
       availability of material that the provider or user considers to be obscene,
5      lewd, lascivious, filthy, excessively violent, harassing, or otherwise
       objectionable, whether or not such material is constitutionally protected; or
6

7      (B) any action taken to enable or make available to information content
       providers or others the technical means to restrict access to material
8      described in paragraph (1).

9   47 U.S.C. § 230(c).

10       The statute defines an "interactive computer service" to include an "access software

11   provider."  47 U.S.C. § 230(f) (2).  An "access software provider," in turn, is defined as a

12   provider of software or tools that, *inter alia*, "filter, screen, allow, or disallow content."  *Id*. at

13   § 230 (f)(4)(A).  The Kaspersky security systems are software tools that enable users to

14   "filter, screen, allow, or disallow content."   Indeed, as discussed above, the Kaspersky

15   software allows users to choose whether to accept or deny the Zango software.

16       Courts consider the scope of immunity under § 230(c) to be "quite robust."  *Carafano*

17   *v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).  As such, Kaspersky USA

18   must be regarded as an "access software provider" for purposes of this statutory immunity.

19   Indeed, Kaspersky USA's alleged conduct falls directly within the scope of immunity stated

20   in Subsections A and B.  Kaspersky USA distributes "the technical means to restrict access

21   to" material that is "obscene . . . or otherwise objectionable."   That is, Kaspersky USA

22   distributes security software that allows users to restrict access to adult content websites or

23   other objectionable material, including Zango's adware itself.[3]

24

25       [3]   This case is analogous to an Anti-SLAPP (strategic lawsuit against public participation) case in
     which, for example, a real estate developer sues to silence protesters at a construction site.   Just as state Anti-
26   SLAPP laws immunize the protesters, the safer harbor of § 230(c) immunizes Kaspersky USA here.  In effect,
     Zango is trying to silence Kaspersky USA's anti-virus software.  But that software is serving a public policy goal
27   of allowing computer users to filter the bombardment of unwanted content over the Internet and allowing them
     to safeguard their computers from infection.

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 8

1  **III.    KASPERSKY USA IS NOT LIABLE FOR ANY PRODUCT DEFECTS**

2        Kaspersky USA is not an agent of Kaspersky Moscow.  At most, Kaspersky USA is

3  an independent contractor.  Indeed, the Non-Exclusive Distribution Agreement provides that

4  Kaspersky USA is not Kaspersky Moscow's agent and "shall have no authority to bind

5  Licensor in any respect."   Gentile Decl. at ¶ 9.   Kaspersky USA neither maintains the

6  software nor exercises any control over the licensor, Kaspersky Moscow.  *Id.* at ¶¶ 5-11.  As

7  such, Kaspersky USA may not be held liable for any damage allegedly caused by the software

8  or by the actions of Kaspersky Moscow.  *See, e.g., Nelson v. Serwold*, 687 F.2d 278, 282 (9th

9  Cir. 1982) (applying Washington law and holding that defendant was not liable as agent of

10  third parties given that they did not characterize their relationship as one of agency); *see also,*

11  *e.g., Arnold v. Fremin*, 538 So.2d 624, 625 (La. Ct. App. 1988) (non-exclusive distributor not

12  liable for injury caused by product it imported);

13  **IV.    ZANGO FAILS TO MEET THE STANDARD FOR A TRO**

14        As argued above, the prior restraint doctrine prohibits the granting of preliminary

15  injunctive relief here.  As such, this Court need not even consider the traditional four-factor

16  test for granting a TRO.  But even were the Court to weigh the four factors, it would find that

17  Zango fails to meet the standard for granting the TRO.[4]

18           **A.    Zango Cannot Show a Strong Likelihood of Success**

19        Zango alleges claims for tortious interference with business relations, violation of the

20  Washington Consumer Protection Act, and trade libel.  Zango will not prevail.

21              **1.    Zango Will Not Prevail On Its Claim for Tortious Interference**

22         "Intentional interference requires an improper objective or the use of wrongful

23  means that in fact cause injury to the person's contractual relationship."  *Leingang v. Pierce*

24  *County Medical Bureau, Inc.*, 131 Wash.2d 133, 157, 930 P.2d 288, 300 (1997) (defendant

25

26        ──────────────
           [4]   The traditional criteria for an injunction include (1) a strong likelihood of success on the merits,
27  (2) irreparable harm, (3) a balance of hardships, and (4) an injunction will advance the public interest.  *Los*
    *Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 9

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1    did not tortiously interfere with business relations because, *inter alia*, it had no improper

2    purpose and acted in good faith).  Here, Kaspersky USA cannot be held liable for tortious

3    interference. Kaspersky USA merely distributes software and has no improper purpose--

4    unless safeguarding people's computers from unwanted pop-up ads, viruses, and other

5    malware is somehow improper.  Kaspersky does not target Zango. Nor has Kaspersky

6    admitted that it damages Zango or its affiliated websites.  *See* Coursen Decl. at ¶¶ 16, 19-20.

7    Furthermore, the Kaspersky software provides a valuable service--filtering or blocking

8    objectionable content, including obscene material, computer viruses, and the like--that is

9    immune for the public policy reasons stated in 47 U.S.C. § 230.

10    **2.    Zango Cannot Prevail On its Consumer Protection Act Claim**

11    The elements of a claim under the Washington Consumer Protection Act are (1) an

12    unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

13    impact; (4) injury to plaintiff in his or her business or property; (5) causation.  *Hangman*

14    *Ridge Training Stables v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 780, 719 P.2d 531 (1986).

15    Here, there is no evidence that Kaspersky's software is unfair or deceptive. For one,

16    the software lets the user <u>choose</u> whether to accept or reject the Zango adware.  That adware

17    is harmful in and of itself, even if it never exposes a computer owner to viruses.  For example,

18    the adware clogs computer systems, causes system crashes, and evokes annoying pop-up ads.

19    Nor is there an adverse impact on public interest. In fact, public policy favors the

20    development of anti-virus and blocking and filtering software. *See generally* Everett-Church

21    Decl. at ¶¶ 11-23; 47 U.S.C. § 230.  There is nothing unfair or deceptive about providing anti-

22    virus software products for the purpose of protecting computers from malware.

23    **3.    Kaspersky USA Has Not Committed Trade Libel**

24    Aside from the First Amendment principles discussed above, and assuming *arguendo*

25    that Washington would recognize a claim for trade libel, Zango would have to prove that

26    Kaspersky USA (1) published a knowingly false statement harmful to the interests of another,

27

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 10

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1    and(2)  intended such publication to harm the plaintiff's pecuniary interests.   That burden is

2    high.  *Auvil v. CBS "60 Minutes,"* 67 F.3d 816, 820 (9th Cir. 1995).

3          Zango cannot prove that Kaspersky's warnings to users of the Kaspersky's anti-virus

4    software are knowingly false.   If anything, Kaspersky and many other security software

5    providers understand that Zango's software poses some threat to users' computers.  Zango has

6    a history of foisting on unsuspecting users intrusive and unwanted adware.   That history

7    culminated in a hefty fine and a March 2007 consent agreement with the Federal Trade

8    Commission.  According to Mr. Coursen, it would be highly irresponsible to allow Zango's

9    malware to go unchecked.  Coursen Decl. at ¶ 19.

10          Here, the alleged false statements appear when Kaspersky's anti-virus software detects

11    the installation of Zango's software on unwitting users' computers.  Based on its knowledge

12    of Zango products, Kaspersky has determined that Zango's adware contains some level of

13    threat to the users' computers and advises those users accordingly.    Indeed, under the

14    common interest doctrine, Kaspersky's warnings are conditionally privileged.  Kaspersky and

15    its customers have a common interest in ensuring the security of their computers.  *See, e.g*,

16    Restatement (First) of Torts, § 596.

17         **B.**      **The Balance of Harms Favors Kaspersky**

18          Kaspersky provides a valuable service.  The requested relief, however, would harm

19    Kaspersky's customers.  Indeed, it would be irresponsible to deactivate the threat warnings

20    from the Kaspersky software. Doing so could expose Kaspersky's customers to viruses and

21    other malware.  Moreover, Kaspersky USA cannot compel Kaspersky Moscow to modify the

22    software.  Accordingly, enjoining Kaspersky USA will place on it an undue burden because it

23    cannot control Kaspersky Moscow.[5]

24

25

26           [5]   Zango requests mandatory relief, and affirmative act to change or modify the Kaspersky software.
Zango is not seeking to merely preserve the status quo, which is the purpose of a TRO.  For that reason alone,
27    the TRO should be denied.  *See Tanner Motor Livery, Ltd. v. Avis, Inc.*  316 F.2d 804, 808 -809 (9th Cir. 1963).

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 11

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1        **C.      A TRO Hinders the Public Interest**

2        The public has a right to choose to be free of adware and other unwanted content.  The

3 public interest, as expressed in 47 U.S.C. § 230 and as understood by Internet privacy experts

4 like Mr. Everett-Church, favors the provision of anti-virus software that allows users to

5 screen, block, and remove malware.

6        A cat burglar should not be allowed to sue the lock company for preventing the

7 burglar from plying his dishonest trade.  Likewise, Kaspersky USA should not be punished

8 for giving computer users the locks and alarms they need (and desire) for safeguarding their

9 computers and the viewing habits of their children.

10                         **CONCLUSION**

11        For the reasons stated above, Kaspersky Lab, Inc., respectfully asks this Court to deny

12 Zango's motion for a temporary restraining order.

13

14   DATED this 4th day of June, 2007.         Defendant Kaspersky Lab, Inc.

15

16

                                      By _____

17                                            Bruce E. H. Johnson, WSBA # 7667
                                           Sarah Duran

18                                            DAVIS WRIGHT TREMAINE LLP
                                         2600 Century Square, 1501 Fourth Ave.

19                                            Seattle, WA 98101-1688
                                         Telephone: (206) 628-7683

20                                            Fax: (206) 628-7699

21                                          E-mail: brucejohnson@dwt.com

22                                         Erik Paul Belt
                                         Lisa M. Fleming

23                                         BROMBERG & SUNSTEIN LLP

24                                         125 Summer Street
                                         Boston, MA 02110

25                                         Tel:  (617) 443-9292
                                        Fax:  (617) 443-0004

26                                         E-mail:  ebelt@bromsun.com

27   03267/00501 677968.1

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 12

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1

CERTIFICATE OF SERVICE

2

3      I certify that on  June 4, 2007, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system, which will send notification of such

4

filing to the following counsel of record:

5

6      **Attorneys for Plaintiff**
Jeffrey I. Tilden, WSBA No. 12219

7      Michael Rosenberger, WSBA No. 17730
Gordon Tilden Thomas & Cordell LLP

8      1001 Fourth Avenue
Suite 4000

9      Seattle, WA  98154-1051

10

11     In addition, paper copies of the foregoing document will be mailed by United

12     States Postal Service to non CM/ECF participants, if any.

13

14

15                                            /s/ *Bruce E.H. Johnson*

                                              Bruce E.H. Johnson, WSBA No. 7667
16                                            Davis Wright Tremaine LLP
                                              2600 Century Square
17                                            1501 Fourth Avenue
                                              Seattle, WA 98101-1688
18                                            Telephone: (206) 628-7683
                                              Fax: (206) 628-7699
19                                            E-mail: brucejohnson@dwt.com

20

21

22

23

24

25

26

27

DEFENDANT KASPERSKY'S OPPOSITION TO                    Davis Wright Tremaine LLP
MOTION FOR TEMPORARY RESTRAINING ORDER                 LAW OFFICES
(C-07-0807-JCC) -- 13                                  2600 Century Square · 1501 Fourth Avenue
                                                       Seattle, Washington  98101-1688
                                                       (206) 622-3150 · Fax: (206) 628-7699