# EXHIBIT B

Dockets.Justia.com

NON-EXCLUSIVE
DISTRIBUTION AGREEMENT

THIS NON-EXCLUSIVE DISTRIBUTION AGREEMENT (this "Agreement") is made as of 4/1/05 (the "Effective Date") by and between Kaspersky Lab ZAO, a Russian company with its principal address at 10 Geroyev Panfilovtsev Str., Moscow 125363, Russian Federation ("Licensor") and Kaspersky Lab, Inc., a Massachusetts corporation with its principal address at 300 Unicorn Park Drive, Woburn, MA 01801 ("Distributor").

In consideration of the promises and covenants set forth below, the parties agree as follows:

1. DEFINITIONS

1.1. "Documentation" means in relation to an item of Software, the user documentation which is supplied by Licensor.

1.2. "End User" means any third party or entity which purchases any Product for its own internal business use.

1.3. "Product" means a copy of the Software together with the Documentation.

1.4. "Reporting period" means one calendar quarter.

1.5. "Revenue" means gross proceeds received from distribution of the Products, from providing of antivirus protection services, other actions on distribution of the Products with deduction of indirect taxes, stipulated by the laws of United States of America.

1.6. "Software" means all of the software products of Licensor available during the Term of this Agreement.

1.7. "Term of this Agreement" means the period defined in Section 6.1.

1.8. "Territory" means the United States of America and Canada and each of their territories and possessions.

1.9. "Trademarks" means the registered and unregistered trade marks and brand names owned by or licensed to Licensor from time to time, including without limitation KASPERSKY, KASPERSKY LAB, KASPERSKY ANTI-VIRUS, KASPERSKY ANTI-SPAM, KASPERSKY BUSINESS OPTIMAL, ANTIVIRAL TOOLKIT PRO and AVP. Subsequent trademarks will be notified by Licensor to Distributor as they are acquired and released for use.

2. GRANT OF NON-EXCLUSIVE MARKETING RIGHTS

2.1. Grant of Rights. Licensor hereby grants to Distributor the non-exclusive license during the Term of this Agreement (a) to use, reproduce, demonstrate, market and distribute copies of the Products, in object code form, for the purpose of marketing and selling such Products to End Users, directly to End Users and through one or multiple tiers of distribution partners; (b) to make derivative works of the Products for use in the Territory; and (c) to sublicense any of the foregoing rights. Licensor further hereby grants to Distributor the non-exclusive license during the Term of this Agreement to use the Trademarks within the Territory.

2.2. End User License Agreement. Distributor shall only provide the Products to end users pursuant to a written End User License Agreement. Such End User License Agreement shall prohibit the end user from: copying the Product, except for archival purposes consistent with the end user's archive procedures; and modifying, decompiling, disassembling, reverse engineering or otherwise attempting to derive the source code of the Product.

3. LICENSE FEES AND PAYMENT

3.1. License Fees and Payment. Distributor shall pay Licensor License Fee in the amount set forth on Exhibit A. All payments shall be made in United States dollars by bank transfer. All payments shall be subject to applicable tax withholding.

3.2.  Late Payments. Amounts not paid when due will bear a finance charge at a rate equal to the lesser of one-and-one-half percent (1.5%) per month or the highest rate permitted by law, calculated from thirty (30) days following the due date.

3.3.  Records and Audit. During and for at least three (3) years following the Term of this Agreement, Distributor shall maintain full and complete records of the amounts payable to Licensor under this Agreement. Licensor shall, at any time during the period when Distributor is obliged to maintain such books and records, be entitled to audit such books and records upon thirty (30) days written notice in order to confirm the accuracy of the amounts paid to it, provided that no more than one (1) such audit may be conducted in any twelve (12) month period. Distributor shall promptly pay Licensor any discovered underpayment plus applicable late fees. In the event the underpayment exceeds 5% of the amounts that should have been paid for the audited period, Distributor shall also pay to Licensor its documented reasonable costs and expenses incurred in connection with carrying out such an audit.

4.  LICENSOR'S OBLIGATIONS

4.1.  Availability of the Product. Immediately upon execution of this Agreement, Licensor shall deliver to Distributor or make available on Licensor's World Wide Web Site one copy of the current version of each type of Software, in object code form, and of the Documentation offered by Licensor. Licensor will provide Distributor with (a) Product specification information in mutually agreeable computer readable form, (b) Product Documentation in a computer readable form mutually agreeable to the parties and (c) Licensor press releases and announcements in a computer readable form mutually agreeable to the parties.

4.2.  New Releases. Licensor shall provide Distributor with copies, in object code and source code form, of all new releases, updates, upgrades or revisions of the Software and Documentation immediately upon each such release. Licensor will notify Distributor of its plans for each new release, update, upgrade or revision of the Software or Documentation within a reasonable period of time prior to such release, but in no event less than ninety (90) days prior to release.

4.3.  Support and Training. Licensor shall provide Distributor with all support and training with respect to the Products as Distributor shall reasonably request.

4.4.  Report. Within 20 (twenty) calendar days after the end of each Reporting period, Distributor shall submit to Licensor a Sales report in a form mutually agreed by the Parties, which shall be certified by an authorized representative of Distributor.

5.  OBLIGATIONS OF DISTRIBUTOR

5.1.  Distribution. Distributor shall use all its efforts to promote the distribution of the Products within the Territory and shall maintain a suitably qualified sales and marketing force to accomplish this objective.

5.2.  Support and Training. Distributor shall provide end users and/or distribution partners with such support and training with respect to the Products as Distributor shall determine is commercially reasonable.

5.3.  No Deceptive Trade Practices. Distributor shall not by itself or with others participate in any illegal, deceptive, misleading or unethical practices including, but not limited to, disparagement of the Products or Licensor, devising, transmitting or making available to others computer viruses or other practices which may be detrimental to the Products, Licensor or the public interest.

5.4.  Distributor shall not sell any other products apart from the Licensor's products.

6.  TERM AND TERMINATION

6.1.  Term. The initial term of this Agreement shall commence upon the Effective Date and shall continue until December 31, 2008, whereupon this Agreement shall automatically renew for consecutive one (1) year terms unless either party provides written notice of non-renewal at least thirty (30) days prior to the expiration of the then-current term.

6.2. <u>Termination</u>. Either party may terminate this Agreement upon written notice if:

(a) the other party materially breaches any term of this Agreement and fails to cure such breach within ninety (90) days after receipt of written notice of such breach;

(b) the other party sells, assigns, parts with or ceases to carry on its business or that part of its business relating to the sale and/or distribution of the Products, or threatens to do any of the foregoing;

(c) the other party makes any assignment for the benefit of its creditors or makes any compositions with its creditors; any actions or proceedings under any bankruptcy or insolvency law are taken by or against such party; passes a resolution for its voluntary or compulsory liquidation; or suffers execution to be levied against any of its goods, chattels or other assets.

(d) Either party may terminate this Agreement at any time without cause upon ninety (90) days written notice to the other party.

6.3. <u>Actions Upon and Effect of Termination</u>.

(a) Upon expiration of this Agreement or termination of this Agreement by Licensor, Distributor shall immediately discontinue production, marketing and distribution of the Product.

(b) N/A

(c) Upon expiration of this Agreement or termination of this Agreement for any reason, each party shall return to the other the Confidential Information provided to it by the other party in connection with this Agreement or shall destroy the same and certify to the other party that it has done so.

(d) Termination of this Agreement shall be without prejudice to the rights of any End User under any end user license agreement entered into by it and without prejudice to any sublicense entered into between Distributor and its sublicensees, each of which shall continue in accordance with its terms.

(e) All provisions of this Agreement which are expressed to survive its termination or from their nature or context it is contemplated that they are to survive such termination, shall remain in full force and effect notwithstanding such termination, including but not limited to Sections 7, 8, 9, 10 and 11.

(f) All rights and licenses granted under or pursuant to this Agreement by Licensor to Distributor (including without limitation the license granted in Section 2.1 (the "<u>License</u>")) are, and shall otherwise be deemed to be, for purposes of Section 365(n) of the United States Bankruptcy Code (the "<u>Code</u>"), licenses to rights in "intellectual property," as defined under the Code. The parties hereto further agree that, in the event of the commencement of bankruptcy proceedings by or against Licensor, Distributor shall be entitled, at its option, to retain all of its rights under this Agreement (including the License) pursuant to Code Section 365(n).

7. PROTECTION OF INTELLECTUAL PROPERTY

7.1. <u>Acknowledgement</u>. Distributor acknowledges that (a) as between Licensor and Distributor, all right, title and interest in and to the Products (including any and all patents, copyrights, trade secret rights, trademarks, trade names and other proprietary rights embodied therein or associated therewith) are owned by Licensor and its licensors (if any), (b) this Agreement in no way conveys any right or interest in the Products other than the limited right and license granted in Section 2.1, (c) the Products are protected by the copyright laws of the United States and other countries and international treaties, and (d) Licensor asserts that the Products embody valuable confidential and secret information of Licensor or its licensors (if any), the development of which required the expenditure of considerable time and money.

7.2. <u>Intellectual Property Notices</u>. Distributor shall include such proprietary rights legends as it deems appropriate to protect Distributor's and Licensee's interest in and to the Products on all copies of Products (including without limitation Documentation) in the manner deemed commercially reasonable by Distributor.

8. INTELLECTUAL PROPERTY INDEMNITY

8.1. <u>Indemnity</u>. Licensor shall, at its own expense, defend, indemnify and hold harmless Distributor and its officers, directors, employees, consultants, advisors and shareholders ("<u>Indemnified Parties</u>") from and against any action brought against any Indemnified Party resulting from any claim or suit alleging that the use or possession of the Products (as contemplated by this Agreement) infringes any intellectual property rights (including without limitation patent, copyright, trade mark and trade secret rights) and agrees to be responsible for any costs (including lawyers' fees) involved and pay any damages finally awarded against Distributor in any such claim. For any claim for which it seeks indemnifications, the Indemnified Parties shall:

(a) promptly notify Licensor in writing of any such claim or suit;

(b) make no admissions or settlements without Licensor's prior written consent;

(c) at Licensor's request and expense, allow Licensor control over any litigation relating to or settlement of such claim or suit, provided that Licensor shall not settle any such claim without the affected Indemnified Parties' prior written consent; and

(d) give Licensor all information and assistance as Licensor may reasonably require at Licensor's cost.

8.2. Licensor shall have no obligation under Section 8.1 to the extent that any alleged infringement arises from modifications to the Product not made or approved by Licensor.

8.3. Without prejudice to Section 8.2, in the event that the use or possession of the Product by Distributor (as contemplated by this Agreement) infringes or, in either party's opinion, may be held to infringe any intellectual property of any party, Licensor may at its expense and at the option of Distributor:

(a) procure for Distributor and its distribution partners the right to continue using the Product free from any liability for such infringement;

(b) modify or replace the Product so as to avoid the infringement, provided such replacement or modification does not materially adversely affect use of the Product by Distributor's or its distribution partners' end users as contemplated hereunder; or

(c) terminate this Agreement immediately on written notice and refund all fees paid under this Agreement in respect of the affected Product.

9. WARRANTY

9.1. LICENSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE PRODUCTS AND HEREBY SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES, BY OPERATION OF LAW OR OTHERWISE, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY, FITNESS FOR ANY PURPOSE, AND NON-INFRINGEMENT.

10. LIMITATION OF LIABILITY

10.1. EXCEPT WITH RESPECT TO LICENSOR'S INDEMNIFICATION OBLIGATIONS HEREUNDER, IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES (INCLUDING BUT NOT LIMITED TO LOST BUSINESS PROFITS AND LOSS, DAMAGE OR DESTRUCTION OF DATA) EVEN IF ADVISED OF THE POSSIBILITY OF THE SAME. No limitation as to damages for death or personal injury is hereby intended. Some jurisdictions do not allow the exclusion or limitation of incidental or consequential damages under certain circumstances and the above exclusion or limitation may not apply.

10.2. Each provision of this Agreement which provides for a limitation of liability, disclaimer of warranties or exclusion of damages, is intended by the parties to be severable and independent of any other such provision and to be enforced as such. If any limited remedy provided herein is determined to have failed of its essential purpose, all limitations of liability and exclusions of damages set forth herein shall nonetheless remain in effect.

Distributor acknowledges that the prices and/or discounts granted to it by Licensor depend in part on this Agreement's provisions limiting liability, warranties and damages.

11. CONFIDENTIALITY

11.1. Confidential Information. "Confidential Information" means any information, technical data, or know-how provided by one party (the "Discloser") to the other party (the "Recipient") which the Discloser designates as confidential (whether orally or in writing), or which, given the totality of the circumstances, the Recipient has reason to believe is proprietary, confidential, or competitively sensitive. Confidential Information does not include information, technical data or know-how which: (a) is in the possession of the Recipient at the time of disclosure as shown by the Recipient's files and records immediately prior to the time of disclosure; (b) prior or after the time of disclosure becomes part of the public knowledge or literature, not as a result of any inaction or action of the Recipient; (c) is approved for release by the Discloser in writing; (d) is shown by written evidence to have been developed by Recipient independently after disclosure without benefit of the Confidential Information; or (e) was received after disclosure from a third party who did not require it to be held in confidence and who did not acquire it directly or indirectly from Discloser. The burden of proving any of the foregoing exceptions rests with the party invoking the same.

11.2. Non-Disclosure of Confidential Information. Recipient (a) will not disclose Confidential Information except to its board of directors, employees, attorneys, financial advisors, investors or shareholders, and potential lenders or investors ("Third Party Recipients") who are legally bound by written agreement or otherwise to comply with Recipient's obligations under this Agreement, and will take reasonable steps to ensure that the dissemination is so limited to achieve the purposes contemplated by this Agreement, (b) will not use Confidential Information except for the purposes contemplated by this Agreement, (c) will use at least the same degree of care to safeguard Confidential Information that it uses to protect its own confidential and proprietary information, and in any event not less than a reasonable degree of care under the circumstances, and (d) will make copies of materials containing Confidential Information only as needed for such purpose, all of which shall include any existing markings indicating that they are Confidential Information of the Discloser, or shall have markings supplied by Discloser. Each party shall report to the other any attempt by a third party purporting to exercise governmental authority by subpoena or otherwise, to obtain data or gain access to the other party's Confidential Information. Each party shall notify the other party of any subpoenas issued to it arising out of or relating to this Agreement in a time sufficient to allow the other party to review the subpoena and respond by motion to quash or other applicable motion if necessary. The actions or negligence of the parties, directors, employees, or agents shall be deemed to be the actions or negligence of the respective party, with regard to the Confidential Information of the other party. Should either party breach any of its obligations contained in this Section 11, the other party may be irreparably harmed and entitled to equitable relief, including issuance of a temporary restraining order or preliminary injunction enforcing the terms of this Section 11, and to judgment for damages caused by breach, and to any other remedies available under applicable law.

12. MISCELLANEOUS

12.1. Distributor acknowledges that it is acting for the limited and sole purposes provided in the Agreement. This Agreement does not constitute Distributor as an agent, employee, franchise or sub-franchise of Licensor, and Distributor shall have no authority to bind Licensor in any respect.

12.2. Either party may assign any or all of its rights or obligations under this Agreement upon written notice to the other party.

12.3. Except as otherwise specified herein, all notices, requests, demands or communications required hereunder shall be in writing, delivered personally or sent by first class post to the parties at their respective addresses first set forth in this Agreement (or at such other addresses as shall be given in writing by either of the parties to the other in accordance with this Section 12.3). All notices, requests, demands or communications shall be deemed effective upon personal delivery, or two (2) business days following posting in accordance with this Section 12.3.

12.4.    No waiver of any provision of this Agreement or any rights or obligations hereunder shall be effective, except pursuant to a written instrument signed by the party or parties waiving compliance, and such waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

12.5.    The construction, validity and performance of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts, USA without regard to its choice of laws provisions. Anything to the contrary herein notwithstanding, the 1980 United Nations Convention on Contracts for the International Sale of Goods shall not apply to transactions under this Agreement. The parties hereby submit to the exclusive jurisdiction of the state and federal courts located in Massachusetts, USA.

12.6.    Neither party shall be liable for any delay in performance of this Agreement when the delay is directly or indirectly caused by or arises from any act of God or other occurrence beyond the reasonable control of such party.

12.7.    In the event that any provision hereof is found invalid or unenforceable pursuant to judicial decree or decision, the remaining provisions will remain enforceable in accordance with its terms.

12.8.    Any reference herein to a section shall constitute a reference to all subsections thereof. Titles given to clauses are for reference only and are not part of this Agreement.

12.9.    This Agreement, including the exhibits which are attached hereto and incorporated herein by this reference, constitutes the entire understanding between Distributor and Licensor with respect to the transactions contemplated herein, and supersedes any and all prior or contemporaneous oral or written communication with respect to the subject matter hereof, all of which are merged herein. This Agreement shall not be modified, amended or in any way altered except by an instrument in writing signed by the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized representatives as of the respective dates indicated below.

KASPERSKY LAB, INC.

By: _____
    Authorized Signature

_____ President/Stephan Oub-g
Name (Print or Type)

_____ President
Title

_____ 4/6/05
Date

KASPERSKY LAB ZAO

By: _____
    Authorized Signature

_____
Name (Print or Type)

_____
Title

_____
Date

Exhibit A

License Fees and Payment

1. License Fees

1.1. In consideration for the rights and license provided herein, Distributor shall pay Licensor during the term of this Agreement License Fee for each Reporting period upon invoice issued by Licensor. License Fee paid by Distributor to Licensor for each Reporting period shall be calculated in accordance with the Sales Report provided in accordance with terms of this Agreement, and shall be equal to 40% (forty per cent) from the Revenue received from sales of the Product.

2. Payment

2.1. All payments shall be due to Licensor within 45 (forty five) calendar days after the end of each Reporting Period. Undertaking on the payment of License Fee shall be deemed performed on the day when funds are transferred to the account of Licensor.

2.2. All payments due to Licensor in accordance with this Agreement shall be made to:

Account 40702840738210201035
Savings Bank of the Russian Federation (Krasnopresnenskoye branch 1569)
Moscow, Russia
SWIFT: SABR RU MM
Account name: KASPERSKY LAB ZAO

KASPERSKY LAB, INC.

By: _____
Authorized Signature

Name (Print or Type): Stephen A. Orenberg

Title: President

Date: 4/1/05

KASPERSKY LAB ZAO

By: _____
Authorized Signature

Name (Print or Type): _____

Title: _____

Date: _____