Honorable John C. Coughenour

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZANGO, INC.,

    Plaintiff,

v.

KASPERSKY LAB, INC.,

    Defendant.

No. C-07-0807-JCC

DEFENDANT KASPERSKY'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Bruce E. H. Johnson, WSBA # 7667
DAVIS WRIGHT TREMAINE LLP
2600 Century Square, 1501 Fourth Ave.
Seattle, WA 98101-1688
Telephone: (206) 628-7683
Fax: (206) 628-7699
E-mail: brucejohnson@dwt.com

Erik Paul Belt
Lisa M. Fleming
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 443-9292
Fax: (617) 443-0004
E-mail: ebelt@bromsun.com

*Attorneys for Defendant Kaspersky Lab, Inc*.

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 0

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

**INTRODUCTION**

May a door-to-door salesman seek to enjoin a print shop from selling "No Soliciting" signs? May a spy sue a security company for installing locks and alarms? In effect, this case presents a similar kind of question.

Specifically, the plaintiff, Zango, is an Internet version of the door-to-door salesman or spy. Zango lures computer users to its websites by offering free videos or computer games so that it can install on the users' computers--often without their full consent--so-called "adware" or other malicious software ("malware," for short). The defendant, Kaspersky Lab, Inc. ("Kaspersky USA"), is a reseller of Internet security systems, particularly anti-virus software that detects malware and allows users to block it from their computers. Continuing the analogy, Kaspersky USA sells "No Soliciting" signs or installs locks and alarms that allow computer users to prevent intrusions. The alarm company should not be punished just because the homeowner does not want to let the salesman or spy through the door.

The First Amendment and federal law protect Kaspersky USA's sale and installation of such Internet security systems. Indeed, federal policy favors such endeavors.

In its TRO motion, Zango asks for mandatory relief--*i.e.*, that Kaspersky USA remove Zango from its list of suspicious websites and otherwise modify the anti-virus and other security software. The problem, however, is that Kaspersky USA has no ability to do so. The security software is designed, developed, and maintained by a Russian company, Kaspersky Lab ZAO ("Kaspersky Moscow"). Kaspersky USA is merely a non-exclusive distributor of Kaspersky Moscow's products, is not an agent or subsidiary, and has no control over or ability to modify the software. Zango has sued the wrong company.

For these and other reasons discussed below, Kaspersky USA respectfully asks the Court to deny the TRO motion.[1]

---

[1] Kaspersky USA will file, as soon as possible, a motion to dismiss the case because, *inter alia*, Zango has failed to state a proper claim for relief and cannot establish personal jurisdiction over Kaspersky USA in Washington. Kaspersky USA reserves all affirmative defenses and, by this opposition brief, does not mean to waive any defenses under Rule 12(b)(6) or otherwise.

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 1

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington  98101-1688
(206) 622-3150 · Fax: (206) 628-7699

**BACKGROUND FACTS**

According to Kaspersky USA's Chief Financial Office, Angelo Gentile, Kaspersky USA is based in Woburn, Massachusetts. Kaspersky USA resells Internet security software (*e.g.*, anti-virus software, spam filters, etc.) developed by Kaspersky Moscow. The two companies are separate: one does not own or control, in whole or in part, the other. They merely share a name, which Kaspersky USA uses under a trademark license from Kaspersky Moscow. *See* Declaration of Angelo Gentile ("Gentile Decl.") at ¶¶ 1-4, 7.

Kaspersky USA is merely a non-exclusive distributor. Other companies, such as original equipment manufacturers ("OEMs"), also distribute the Kaspersky security systems without any involvement of Kaspersky USA. Kaspersky USA also has no control over these OEMs. Nor does Kaspersky USA have any control over the development and maintenance of the software and thus no way to compel the modifications Zango demands. *Id*. at ¶¶ 5-13. Indeed, Kaspersky USA's "Non-Exclusive Distribution Agreement" provides that it "<u>shall have no authority to bind Licensor [Kaspersky Moscow] in any respect.</u>" *Id*. at ¶ 9 and Exhibit B attached thereto (emphasis added).

Kaspersky USA employs a Senior Technical Consultant, Shane Coursen, who keeps tabs on malware circulating through the Internet. Malware includes, for example, computer viruses, worms, spyware, and adware, among other harmful programs. *See* Declaration of Shane Coursen ("Coursen Decl.") at ¶¶ 1-5. Zango is a purveyor of malware.

More specifically, Zango sells advertising by luring viewers to its website on the promise of free games and videos. A visitor to the Zango website downloads the video or game but, in the process, also downloads the Zango adware, which comes bundled with the video or game. The user often does not realize or fully appreciate that he or she is downloading adware along with the free video or game. The adware, in turn, opens links to websites that may contain pornography or that are known sources of computer viruses and the like. Furthermore, apart from causing annoying pop-up ads and opening links to adult content

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 2

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1  websites, the adware itself is often harmful to a computer system, clogging computer memory
2  and slowing processing time. *See* Coursen Decl. at ¶¶ 9-14,

3  Mr. Coursen explains the workings of the Kaspersky anti-virus software and other
4  security software. For example, the Kaspersky software does not single out or discriminate
5  against Zango. <u>Kaspersky has no intent to disrupt Zango's business</u>. Kaspersky's only
6  motivation is to provide its customers with the means to protect their computers from
7  malware and other unwanted content. The software merely detects potentially unwanted or
8  harmful malware. It is then up to the computer user to decide whether or not to accept or
9  reject the download--the Kaspersky software does not make that decision for the user. Indeed,
10 the Kaspersky security software always allows the user to install the Zango adware itself,
11 should the user choose to do so. The software can also be configured to allow access to
12 certain websites that may be introduced by the Zango adware. *See* Coursen Decl. at ¶¶ 15-18.

13 According to Mr. Coursen, Kaspersky Moscow dealt reasonably with Zango and did
14 undertake to remove or reduce certain threat detection from the Kaspersky software. Mr.
15 Coursen warns, however, that it would be irresponsible to remove all threat detection relating
16 to Zango and its clients (*i.e.*, the companies that advertise through Zango's adware). The
17 problem is that while the Zango adware may open links to harmless websites, it also opens
18 links to websites that contain unwanted content (such as pornography or that are known
19 sources of viruses and other malware). *Id*. at ¶¶ 10, 19.

20 Zango's witness, Mr. Berretta, claims that Kaspersky admitted that its software
21 damages Zango websites. That is untrue. Certainly Mr. Coursen never admitted that and,
22 indeed, it would be physically impossible. The Kaspersky software does not touch a website
23 or in any way damage it. The Kaspersky security software merely acts as a lock on a door--it
24 bars malware or links to unwanted websites from entering a user's computer. The Kaspersky
25 software is purely defensive, not offensive. *Id*. at ¶¶ 8, 16. 20. Mr. Beretta did not say how
26 the Kaspersky software damages the Zango websites--probably because getting into specifics
27

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 3

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1  would show that, in fact, the Kaspersky software merely blocks the sites from a user's
2  computer and does not actually damage the site itself.

3  Zango portrays itself as an innocent on-line advertising business. But Internet security
4  experts know otherwise. As Mr. Coursen states, Zango is well known in the industry as a
5  purveyor of malware, including spyware. Many Internet security analysts actively follow
6  Zango's exploits and post articles and blogs warning about the dangers posed by Zango.
7  Indeed, Zango's activities (such as downloading adware and spyware onto unsuspecting
8  user's computers) became so damaging that the Federal Trade Commission took action
9  against Zango and fined it $3,000,000 for its unfair and deceptive practices. *See* Coursen
10 Decl. at 11-13. No wonder that Kaspersky and other Internet security system providers have
11 listed Zango and its affiliated websites as security threats.

12 Ray Everett-Church is a noted Internet privacy expert. Mr. Everett-Church explains
13 two particular concerns about Zango and why it is not the victim here. First, Zango is a
14 source of pop-up ads, which consumers universally hate. The adware also consumes
15 computer system resources and can often cause computer system crashes and can often clog
16 Internet connections. Computer users should have the choice to filter or remove adware--such
17 as Zango's adware--to stop these unwanted effects. Declaration of Ray Everett-Church
18 ("Everett-Church Decl.") at ¶¶ 11-14. Second, computer users often install the Zango adware
19 without full consent and without fully realizing the implications. Zango takes advantage of
20 the "Trojan Horse" model of deception. It offers free entertainment (videos and games)
21 hoping that unsuspecting users will install the adware that comes bundled with it. Such
22 method of doing business is predatory *Id*. at ¶¶ 15-21.

23 As such, the Kaspersky security software serves an important public interest by giving
24 computer users the tools they need to intercept and block Zango's intrusive malware. *Id*. at ¶¶
25 22-23.

26
27

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 4

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

# ARGUMENT

As a preliminary matter, Zango asks the Court to issue a prior restraint against speech. The speech in question is the threat warning that the Kaspersky anti-virus software displays when it detects possible malware or other unwanted content. Even were such warnings somehow libelous (they are not), under the First Amendment, a court may not restrain them.

The Kaspersky security software provides a valuable service, encouraged by public policy. It detects malware and other unwanted content (such as pornography) and allows users to selectively block it. This service falls under the safe harbor of 47 U.S.C. § 230(c).

Furthermore, Kaspersky USA has no control over the Kaspersky software and thus no way to comply with Zango's demands. Because Kaspersky USA is merely an independent contractor, not an agent of the manufacturer (Kaspersky Moscow), it cannot be held liable.

Under the traditional test for temporary restraining orders, Zango is unlikely to succeed on the merits, and the balance of harms favors Kaspersky. Also, public policy favors Kaspersky USA, the provider of computer security, not Zango, the purveyor of malware.

## I. THE REQUESTED TRO IS A CONSTITUTIONALLY FORBIDDEN PRIOR RESTRAINT OF SPEECH

In a case also involving Internet security software and facts similar to this case, the Central District of California denied to a provider of "foistware" (another term for spyware or adware) a preliminary injunction against a security software distributor. *See New.Net, Inc. v. Lavasoft*, 356 F. Supp.2d 1071, 1073 (C.D. Cal. 2003). In *Lavasoft*, the plaintiff, New.net, made a business of downloading foistware over the Internet, often without the user's consent, onto individual computers. Lavasoft distributes security software that, like the Kaspersky software, detects the presence of potentially unwanted programs and, upon request, removes the programs from the users' computers. *Id*. at 1072. New.net alleged that Lavasoft's security software unfairly targeted New.net and unfairly recommended to computer users that the New.net software be removed. *Id*. at 1073. (That, in a nutshell, is exactly what Zango

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 5

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

alleges against Kaspersky USA.) New.net further alleged that Lavasoft's conduct amounted to tortious interference with business relations, trade libel, and unfair competition. *Id*. (Again, Zango has made the same claims against Kaspersky USA in this case.)

The *Lavasoft* court summarized the dispute as follows:

> New.net brings this suit, and the present application for a preliminary injunction, to protect its ability to surreptitiously download its New.net software by silencing a company whose computer program, ***at the request of a computer owner***, calls attention to [the New.net foistware's] presence on the user's hard drive. Correctly understood, the contest in this case is between computer users, who acquire software precisely to determine what programs they may have unsuspectingly loaded onto their hard drives, and New.net, which apparently needs the ability to deliver its program to as many unwitting users as possible to further its business plan.

*Id*. at 1073 (emphasis in original).

This summary could also serve to describe the dispute between Zango and Kaspersky USA. In effect, Zango wants to silence the Kaspersky security system from alerting users to the presence of potentially unwanted adware. The software gives the user the option of accepting or rejecting the adware. As such, Zango wants to deny computer users freedom of choice, including the choice to be free from unwanted software or other malware.

The *Lavasoft* court denied New.net's motion for a preliminary injunction. Relying on Supreme Court precedent, the *Lavasoft* court recognized that, under the First Amendment, a court should not restrain speech (such as adware warnings), "even if its content is alleged to be remarkably harmful." *Id*. at 1083. The court then held that whether Lavasoft mischaracterized New.net's program as "spyware" was beside the point. On a motion for preliminary injunctive relief, "the question of the *actual* truth or falsity of Lavasoft's speech is not appropriate." *Id*. at 1084 (emphasis in original).

Accordingly, it is equally beside the point whether (1) Zango's program is properly characterized as adware, spyware, or something harmless, and (2) Kaspersky unfairly detects and labels Zango's program as something to be removed. A court should not restrain such speech until there can be a full trial on the merits.

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 6

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Finally, the First Amendment doctrine of prior restraint trumps the usual considerations for a preliminary injunction or TRO. Thus, this Court may deny the requested TRO even without addressing the traditional injunction factors. *Id*. at 1089.[2]

## II.  KASPERSKY USA IS IMMUNE FROM LIABILITY

The safe harbor provision of 47 U.S.C. § 230(c) shields Kaspersky's alleged conduct. Section 230 is entitled "Protection for Private Blocking and Screening of Offensive Material." The Kaspersky security software is directed to just that function: allowing computer users to block and screen offensive material.

Section 230 states that it is the policy of the United States --

> "to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;" and
>
> "to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material."

47 U.S.C. ¶ 230(b)(3) and (4).

The Kaspersky security system furthers this public policy. The Kaspersky system is a technology that allows computer users to control what information they receive over the Internet and to filter or block particularly objectionable material, such as malware or links to adult content web sites (*i.e*., pornography). Importantly, the software gives users the choice whether to accept or reject Zango's adware. See Coursen Decl. at ¶¶ 9-18.

---

[2] Faced with a similar First Amendment/prior restraint argument in its co-pending case against PC Tools Pty, Ltd. (Case No. 07-CV-00797 JCC), Zango argued that the alleged wrongful conduct was not speech. But Zango cannot deny that it bases its entire case against Kaspersky USA on allegedly false speech and that it seeks to enjoin such speech. For example, Zango alleges that the Kaspersky security system falsely "identifies Zango products as 'malicious' and as an 'infection.'" Complaint at ¶ 14. Zango then advances a cause of action for trade libel in which it alleges*, inter alia*, that "Kaspersky, through its conduct, has made false and disparaging statements about Zango's products" and "publishes its false and disparaging statements to users of Kaspersky programs." Complaint at ¶¶ 28-29. That is an allegation of speech, pure and simple. Thus, if Zango argues that there is no speech here, Zango would necessarily contradict its entire case.

Moreover, contrary to Zango's allegation, the Kaspersky software does not touch in any way the websites of Zango's customers. Thus, there is no issue of conduct apart from the speech itself. Rather, the software merely runs on users' computers. There is no way that the Kaspersky software can damage the Zango websites, and Zango has not provided even a single declaration from a customer to the contrary.

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 7

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Subsection (c)(2) sets forth the safe harbor from civil liability:

No provider or user of an interactive computer service shall be held liable on account of --

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c).

The statute defines an "interactive computer service" to include an "access software provider." 47 U.S.C. § 230(f) (2). An "access software provider," in turn, is defined as a provider of software or tools that, *inter alia*, "filter, screen, allow, or disallow content." *Id*. at § 230 (f)(4)(A). The Kaspersky security systems are software tools that enable users to "filter, screen, allow, or disallow content." Indeed, as discussed above, the Kaspersky software allows users to choose whether to accept or deny the Zango software.

Courts consider the scope of immunity under § 230(c) to be "quite robust." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). As such, Kaspersky USA must be regarded as an "access software provider" for purposes of this statutory immunity. Indeed, Kaspersky USA's alleged conduct falls directly within the scope of immunity stated in Subsections A and B. Kaspersky USA distributes "the technical means to restrict access to" material that is "obscene . . . or otherwise objectionable." That is, Kaspersky USA distributes security software that allows users to restrict access to adult content websites or other objectionable material, including Zango's adware itself.[3]

---

[3] This case is analogous to an Anti-SLAPP (strategic lawsuit against public participation) case in which, for example, a real estate developer sues to silence protesters at a construction site. Just as state Anti-SLAPP laws immunize the protesters, the safer harbor of § 230(c) immunizes Kaspersky USA here. In effect, Zango is trying to silence Kaspersky USA's anti-virus software. But that software is serving a public policy goal of allowing computer users to filter the bombardment of unwanted content over the Internet and allowing them to safeguard their computers from infection.

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 8

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

### III. KASPERSKY USA IS NOT LIABLE FOR ANY PRODUCT DEFECTS

Kaspersky USA is not an agent of Kaspersky Moscow. At most, Kaspersky USA is an independent contractor. Indeed, the Non-Exclusive Distribution Agreement provides that Kaspersky USA is not Kaspersky Moscow's agent and "shall have no authority to bind Licensor in any respect." Gentile Decl. at ¶ 9. Kaspersky USA neither maintains the software nor exercises any control over the licensor, Kaspersky Moscow. *Id.* at ¶¶ 5-11. As such, Kaspersky USA may not be held liable for any damage allegedly caused by the software or by the actions of Kaspersky Moscow. *See, e.g., Nelson v. Serwold*, 687 F.2d 278, 282 (9th Cir. 1982) (applying Washington law and holding that defendant was not liable as agent of third parties given that they did not characterize their relationship as one of agency); *see also, e.g., Arnold v. Fremin*, 538 So.2d 624, 625 (La. Ct. App. 1988) (non-exclusive distributor not liable for injury caused by product it imported);

### IV. ZANGO FAILS TO MEET THE STANDARD FOR A TRO

As argued above, the prior restraint doctrine prohibits the granting of preliminary injunctive relief here. As such, this Court need not even consider the traditional four-factor test for granting a TRO. But even were the Court to weigh the four factors, it would find that Zango fails to meet the standard for granting the TRO.[4]

#### A. Zango Cannot Show a Strong Likelihood of Success

Zango alleges claims for tortious interference with business relations, violation of the Washington Consumer Protection Act, and trade libel. Zango will not prevail.

##### 1. Zango Will Not Prevail On Its Claim for Tortious Interference

"Intentional interference requires an improper objective or the use of wrongful means that in fact cause injury to the person's contractual relationship." *Leingang v. Pierce County Medical Bureau, Inc.*, 131 Wash.2d 133, 157, 930 P.2d 288, 300 (1997) (defendant

---

[4] The traditional criteria for an injunction include (1) a strong likelihood of success on the merits, (2) irreparable harm, (3) a balance of hardships, and (4) an injunction will advance the public interest. *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 9

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

did not tortiously interfere with business relations because, *inter alia*, it had no improper purpose and acted in good faith). Here, Kaspersky USA cannot be held liable for tortious interference. Kaspersky USA merely distributes software and has no improper purpose--unless safeguarding people's computers from unwanted pop-up ads, viruses, and other malware is somehow improper. Kaspersky does not target Zango. Nor has Kaspersky admitted that it damages Zango or its affiliated websites. *See* Coursen Decl. at ¶¶ 16, 19-20. Furthermore, the Kaspersky software provides a valuable service--filtering or blocking objectionable content, including obscene material, computer viruses, and the like--that is immune for the public policy reasons stated in 47 U.S.C. § 230.

### 2. Zango Cannot Prevail On its Consumer Protection Act Claim

The elements of a claim under the Washington Consumer Protection Act are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 780, 719 P.2d 531 (1986).

Here, there is no evidence that Kaspersky's software is unfair or deceptive. For one, the software lets the user choose whether to accept or reject the Zango adware. That adware is harmful in and of itself, even if it never exposes a computer owner to viruses. For example, the adware clogs computer systems, causes system crashes, and evokes annoying pop-up ads. Nor is there an adverse impact on public interest. In fact, public policy favors the development of anti-virus and blocking and filtering software. *See generally* Everett-Church Decl. at ¶¶ 11-23; 47 U.S.C. § 230. There is nothing unfair or deceptive about providing anti-virus software products for the purpose of protecting computers from malware.

### 3. Kaspersky USA Has Not Committed Trade Libel

Aside from the First Amendment principles discussed above, and assuming *arguendo* that Washington would recognize a claim for trade libel, Zango would have to prove that Kaspersky USA (1) published a knowingly false statement harmful to the interests of another,

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 10

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

and (2) intended such publication to harm the plaintiff's pecuniary interests. That burden is high. *Auvil v. CBS "60 Minutes,"* 67 F.3d 816, 820 (9th Cir. 1995).

Zango cannot prove that Kaspersky's warnings to users of the Kaspersky's anti-virus software are knowingly false. If anything, Kaspersky and many other security software providers understand that Zango's software poses some threat to users' computers. Zango has a history of foisting on unsuspecting users intrusive and unwanted adware. That history culminated in a hefty fine and a March 2007 consent agreement with the Federal Trade Commission. According to Mr. Coursen, it would be highly irresponsible to allow Zango's malware to go unchecked. Coursen Decl. at ¶ 19.

Here, the alleged false statements appear when Kaspersky's anti-virus software detects the installation of Zango's software on unwitting users' computers. Based on its knowledge of Zango products, Kaspersky has determined that Zango's adware contains some level of threat to the users' computers and advises those users accordingly. Indeed, under the common interest doctrine, Kaspersky's warnings are conditionally privileged. Kaspersky and its customers have a common interest in ensuring the security of their computers. *See, e.g*, Restatement (First) of Torts, § 596.

### B.    The Balance of Harms Favors Kaspersky

Kaspersky provides a valuable service. The requested relief, however, would harm Kaspersky's customers. Indeed, it would be irresponsible to deactivate the threat warnings from the Kaspersky software. Doing so could expose Kaspersky's customers to viruses and other malware. Moreover, Kaspersky USA cannot compel Kaspersky Moscow to modify the software. Accordingly, enjoining Kaspersky USA will place on it an undue burden because it cannot control Kaspersky Moscow.[5]

---

[5] Zango requests mandatory relief, an affirmative act to change or modify the Kaspersky software. Zango is not seeking to merely preserve the status quo, which is the purpose of a TRO. For that reason alone, the TRO should be denied. *See Tanner Motor Livery, Ltd. v. Avis, Inc.* 316 F.2d 804, 808 -809 (9th Cir. 1963).

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 11

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

### C. A TRO Hinders the Public Interest

The public has a right to choose to be free of adware and other unwanted content. The public interest, as expressed in 47 U.S.C. § 230 and as understood by Internet privacy experts like Mr. Everett-Church, favors the provision of anti-virus software that allows users to screen, block, and remove malware.

A cat burglar should not be allowed to sue the lock company for preventing the burglar from plying his dishonest trade. Likewise, Kaspersky USA should not be punished for giving computer users the locks and alarms they need (and desire) for safeguarding their computers and the viewing habits of their children.

### CONCLUSION

For the reasons stated above, Kaspersky Lab, Inc., respectfully asks this Court to deny Zango's motion for a temporary restraining order.

DATED this 4th day of June, 2007.    Defendant Kaspersky Lab, Inc.

By /s/  Bruce E. H. Johnson
   Bruce E. H. Johnson, WSBA # 7667
   DAVIS WRIGHT TREMAINE LLP
   2600 Century Square, 1501 Fourth Ave.
   Seattle, WA 98101-1688
   Telephone: (206) 628-7683
   Fax: (206) 628-7699
   E-mail: brucejohnson@dwt.com

   Erik Paul Belt
   Lisa M. Fleming
   BROMBERG & SUNSTEIN LLP
   125 Summer Street
   Boston, MA 02110
   Tel: (617) 443-9292
   Fax: (617) 443-0004
   E-mail: ebelt@bromsun.com

03267/00501 677968.1

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 12

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

CERTIFICATE OF SERVICE

I certify that on June 4, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

**Attorneys for Plaintiff**
Jeffrey I. Tilden, WSBA No. 12219
Michael Rosenberger, WSBA No. 17730
Gordon Tilden Thomas & Cordell LLP
1001 Fourth Avenue
Suite 4000
Seattle, WA 98154-1051

In addition, paper copies of the foregoing document will be mailed by United States Postal Service to non CM/ECF participants, if any.

/s/ *Bruce E.H. Johnson*
Bruce E.H. Johnson, WSBA No. 7667
Davis Wright Tremaine LLP
2600 Century Square
1501 Fourth Avenue
Seattle, WA 98101-1688
Telephone: (206) 628-7683
Fax: (206) 628-7699
E-mail: brucejohnson@dwt.com

DEFENDANT KASPERSKY'S OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
(C-07-0807-JCC) -- 13

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699