The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ZANGO, INC.,<br>Plaintiff,<br>v.<br>KASPERSKY LAB, INC.,<br>Defendant. | NO. 07-CV-0807 JCC<br>ZANGO'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER |

## I. INTRODUCTION

Because a picture (or a parable) is sometimes worth a thousand words, Zango must take issue with Kaspersky's metaphors at the beginning of its brief. Surely, print shops are free to sell "no soliciting" signs. This is not, however, such a case. What happens here is more akin to the following. After the Zango door-to-door salesman has visited a potential customer, Kaspersky steals the customer's order to Zango from the mail, without the customer or Zango ever knowing that it happened. Kaspersky is directly interfering in the consensual relationship between Zango and its customers.

As to Kaspersky's claim that Zango sued the wrong company, Kaspersky does not dispute that it distributes the offending KIS software (also known as KAV, Kaspersky Anti-

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

Virus). Hence, with a minor change to the scope of temporary restraining order, this court can enjoin Kaspersky Lab, Inc. from disseminating the software. If granted, this TRO likely would cause changes in how Kaspersky's Russian affiliate identifies Zango in its database. If it failed to make such changes, Zango would amend the complaint to add the Russian company. The American affiliate's lack of control over the actual creation of the software (if such lack of control actually exists)[1], is a basis for tailoring the TRO, rather than denying it.

## II. FACTS

### A. Zango Is Not Malware

Kaspersky alleges that "Zango is a purveyor of malware." Kaspersky Opp. at 2:19. No evidence is presented to support such a statement. In support of its opposition, Kaspersky submits the Declaration of Shane Coursen, but the most Mr. Coursen states – without any testing, screenshots or other evidence – is that "I believe that Zango *exposes* computer users to malware." Coursen Dec. at ¶ 2. Given KAV's killer effect on Zango, this is a tepid characterization. However, even it is rebutted by the facts.

#### 1. The Declaration of Richard Purcell

In the declarations he has presented in support of the motion, Mr. Purcell states:

> Zango products are not infections, viruses, malware or spyware.
> Zango products also do not prevent an elevated security risk.

Purcell Declaration ¶ 13. Kaspersky presents no specific evidence to contravene that opinion.

---

[1] Mr. Gentile's declaration, in which he claims neither company is an affiliate of the other, is contradicted by Kaspersky's own web site. http://usa.kaspersky.com/about.us/. "Kaspersky Lab is headquartered in Moscow, Russia and has regional offices in the UK, France, Germany . . . and the United States."

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**2. The FTC Order and Continuing Oversight Ensure That Zango Is Not a Purveyor of Malware**

In the declaration he submitted in the companion case, *Zango v. PC Tools*, Kevin Osborne, Zango's Associate General Counsel and Manager of its day-to-day compliance efforts, submitted a declaration establishing that Zango's services and software are regularly reviewed by the Federal Trade Commission and are in compliance with all components of the FTC order. Indeed, Zango's continued existence depends on transparency and compliance—being "purer than Caesar's wife." The key elements of the FTC Order include:

- Post-January 1, 2006 Installation Not at Issue. Zango demonstrated to the FTC that installations of its software occurring on computers on or after January 1, 2006 presented no issues relative to the substantive areas addressed by the FTC in the consent agreement – namely, that consumers must give express consent for the installation of the software following clear and conspicuous notice; that ads served by the software are labeled as such; that channels are provided to enable customer feedback and complaints (and that adequate responses to those communications are timely made), and that customers have access to simple and standard uninstallation tools to remove the software from their computers if they so desire.

- Continuing FTC Authority. The FTC consent agreement requires Zango to demonstrate that it is in compliance with the agreement. Mr. Purcell's written report, attached to his previously filed declaration, complied with this requirement. Furthermore, Zango hosted two Washington, D.C.-based FTC lawyers at its offices in Bellevue on May 10, 2007, for a day of meetings and discussions about the company, its business model, current software distribution practices, and related subjects. One of those lawyers had been closely involved in the CID process. FTC representatives gave no indication during (or after) these meetings that the FTC thought Zango to be out of compliance with the consent agreement.

- Future Potential Penalties. The potential substantial monetary penalties for a violation of the consent agreement could result in Zango being unable to continue its business operations, meaning the end of a company started in 1999 and presently employing approximately 230 employees in six offices spread over four countries. The company and its employees understand that remaining in compliance is not a goal, but a mandate.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Osborn Decl. ¶6.[2]

**B. Kaspersky Does Not Deny That Zango Works Only Upon User Consent**

Neither Kaspersky nor Mr. Coursen deny that users gain access to Zango's services only upon giving their consent. Indeed, Mr. Coursen's declaration specifically identifies the text of the required consent. Coursen Declaration ¶ 14. He opines, however, that message is "not displayed prominently" and that "users typically do not notice or pay attention to the terms of the download." Zango has three responses.

First, the FTC apparently disagrees with Mr. Coursen's opinion about the prominence of the opt-in. As set forth in Mr. Osborn's declaration, ¶ 10, two FTC lawyers visited Zango just three weeks ago and gave no indication during or after those meetings that the FTC thought Zango to be out of compliance with the consent order or was doing anything otherwise inappropriate. Second, Mr. Coursen has no foundation for his rank speculation that "users typically do not notice or pay attention to the terms of the download." Third, even if that statement were true, it says nothing about the propriety of Zango's business or operations. Many home buyers choose not to read the terms of their loan agreement when they sign the papers at closing, yet the bank is not viewed as having done anything inappropriate.

**C. Zango Suffers Irreparable Harm**

Kaspersky asserts that its software "merely detects potentially unwanted or harmful malware [and] the computer user decide[s] whether or not to accept or reject the download." This is inaccurate as it applies to Zango. As set forth in the Second Declaration of Greg Berretta, a person who has Kaspersky's software running cannot access Zango. Second Berretta

---

[2] The Osborn Declaration is resubmitted herein as an attachment to the Declaration of Michael Rosenberger.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Declaration ¶ 4. No opt-in option is provided to this consumer; the consumer simply cannot get Zango no matter their desire to do so.

When an existing Zango customer downloads KAV, this has two effects. First, it destroys the Zango toolbar that previously existed on the user's Internet browser. The Zango toolbar provides links to content relevant to the user's Internet usage, and is a source of significant revenue for Zango. *Id.* The destruction of the Zango toolbar occurs <u>without any notice to the user</u>. Second, any time the Zango user is browsing the Internet, KAV repeatedly (i.e., several times *per minute*) sends the user a message advising that a file "contains adware . . . and cannot be disinfected." Even if the user is willing to see the ad and hits "skip," a similar notification occurs moments later and continues to occur, thus effectively forcing the user to uninstall Zango. Even if the user clicks on "skip" and "apply to all," thus signifying the user's consent to receive all Zango ads, KAV continues to barrage the consumer with notifications that make it functionally impossible for Zango customers to continue to enjoy Zango.

**D. Zango Does Not Traffic in Unwanted Pornography**

At various points in its brief and the Declaration of Mr. Coursen, Kaspersky mentions pornography, implying that Zango traffics in such adult content. Zango does not send users unwanted links or ads to pornography. Second Berretta Declaration.

**E. Declaration of Mr. Everett-Church Is Irrelevant**

As discussed at page 4 of Kaspersky's opposition, Mr. Everett-Church submits a declaration expressing "concerns" about Zango. First, Kaspersky says Zango is a source of "pop-up ads, which consumers universally hate." This statement, even if true, fails to distinguish between those who receive unwanted ads and Zango customers, who consent to receive such ads as a quid pro quo for receiving content they desire. Second, Mr. Everett-Church alleges that this

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

is a "Trojan horse" deception. Mr. Everett-Church presents no evidence in support of his supposition that people who give their consent are not actually consenting. Moreover, the manifestation of consent is the basis for nearly all consumer transactions in the United States. As discussed above, a person taking a mortgage is not excused from the terms of the loan simply because he or she chooses not to read those terms.

## III. ARGUMENT

### A. The TRO Does Not Involve an Unconstitutional Prior Restraint of Speech

#### 1. This Motion Presents No First Amendment Issue

Kaspersky's actions raise no First Amendment issue. The subject matter of the TRO is Kaspersky's computer program that enters the computer of another and physically removes Zango software and/or makes it impossible for a Zango customer to remain a customer. Second Berretta Declaration ¶ 4. This is conduct, not speech. In this respect, the case has nothing in common with New.net, Inc. v. Lavasoft, 356 F. Supp. 2d 1071 (C.D. Cal. 2003). Our opponent correctly analyzes the Lavasoft holding:

> Based on these conclusions, the Court held that Lavasoft's classification of new.net's software, and Lavasoft's communication of that classification to computer users, was speech-protected by the First Amendment.

See Defendant's Opp. at 13 (emphasis supplied). We have no quarrel with this characterization of the holding, or with the holding itself. Lavasoft, however, involved a computer program far more modest than that at issue here. Quoting the District Court Judge:

> New.net complains that Lavasoft has: (1) unfairly targeted and has mislabeled new.net's software; (2) inaccurately associated new.net's software with "the worst of the worst" internet downloaders; and (3) recommended to computer users that new.net's program be uninstalled.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

356 F. Supp. 2d 1071 at 1073 (emphasis supplied). Leaving aside the accuracy of Lavasoft's statements—the subject matter of the lawsuit—there is no dispute that this conduct is all speech. Zango has not sought a TRO because we have been inaccurately "targeted," "mislabeled," "associated . . . with," or "recommended [for deletion]." While these actions may, in fact, form the basis for Zango's trade libel cause of action, they are not the primary basis on which this TRO has been sought. Instead, we seek relief from software distributed by Kaspersky that enters the computers of third persons with whom we have an established relationship and—without notice to them—that is, without any speech at all—disables or removes Zango's software (e.g., the Zango toolbar).

The distinction between speech and conduct is as old as the First Amendment itself. The Supreme Court most recently visited this issue in Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547 U.S. 47 (2006), addressing (and affirming the prohibition of) law school conduct banning military recruiters. Some conduct is so inherently expressive that it must, in fact, qualify as speech. See, e.g., Texas v. Johnson, 491 U.S. 397 (1989) (flag burning); and Tinker v. Des Moines Independent Community School District, 390 U.S. 503 (1969) (black armbands worn by students). We trust that Kaspersky does not contend this issue is present in this case. Absent such an announcement, we will ignore any further discussion of the First Amendment.

**B. Kaspersky Is Not Immune From Liability**

Kaspersky alleges that it is immune from liability under 47 U.S.C. § 230(c)(2). This section immunizes an "interactive computer service" from certain actions taken "in good faith to restrict access to restrict availability of material" that the provider deems obscene, excessively

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

violent or otherwise objectionable. This immunity is inapplicable because Kaspersky is not an "interactive computer service."

Kaspersky fails to provide the Court with the definition of "interactive computer service." The statute provides:

> The term "interactive computer service" means any information service, system or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

47 U.S.C. § 230(f)(2) (emphasis added). Kaspersky's KIS software does not "enable computer access by multiple users to a computer server," as would, for example, an Internet Service Provider. KIS is stand-alone software loaded onto an individual's computer; it does not "enable access" to anything. Kaspersky fails to provide any evidence that this component of the statutory definition is satisfied, nor can it.

### C. Zango's Claims Have a Strong Likelihood of Success on the Merits

Zango need only show "a fair chance of success on the merits" given that the balance of hardships tips decidedly in its favor. Kaspersky has provided no evidence that it would suffer any harm if the TRO issues. Kaspersky claims only that a temporary restraining order could expose its customers to viruses and other malware. Kaspersky Opp. at 11:20-21. Even if this were true, and it is not, this alleged injury to third parties does not prove any harm on Kaspersky's part. Moreover, this argument ignores: (1) the unrebutted fact that Zango customers choose to allow ads to be sent to them in exchange for access to games and other content; and (2) Zango requires them to reiterate that consent after 72 hours and 90 days; and

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

(3) Zango is readily uninstalled, through a link present on the user's own computer, if the user no longer desires to access Zango's content.

Even if Zango must show a strong likelihood of success on the merits, Zango's claims readily meet that standard.

**1. Zango Will Likely Prevail On Its Tortious Interference Claim**

Kaspersky attempts to justify its conduct by citing Zango's history that resulted in the FTC consent order. This order relates to conduct that ceased more than 18 months ago, and is not relevant to Zango's current business. As mentioned in Zango's reply in the PC Tools case, 18 months is a near eternity in the software industry. For example, You Tube was founded in February 2005 and 20 months later was such a social and economic phenomenon that Google purchased it for $1.65 billion.

There is no question that Kaspersky is intentionally interfering with Zango's contractual relationship with its customers. As set forth in the initial Declaration of Gregg Berretta, Zango has been complaining to Kaspersky for months about such interference by Kaspersky's software. Docket No. 5, ¶ 5, 7. The "improper means" element of the claim is established by the confluence of: (1) Kaspersky's technical sophistication that would enable it to conclude that Zango is not malware; (2) Kaspersky's failure to make the changes in its software that would stop treating Zango as malware; and (3) Kaspersky's financial motivation to continue characterizing Zango as malware. Without spyware and malware, or widespread consumer concern about them, Kaspersky would cease to exist. The existence and promulgation of real or perceived threats to computer security is the very basis of Kaspersky's business. The more alleged threats identified by anti-spyware products, the greater perceived value they have. Thus,

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Kaspersky has a direct economic interest in maintaining Zango and as many "infections" as possible in its database.

**2. Zango Will Likely Prevail On Its Consumer Protection Act Claim**

Kaspersky alleges that Zango cannot prove that Kaspersky's software is unfair or deceptive, alleging that the software lets the user choose whether to accept or reject the Zango offers. In large part, there is no such choice. As set forth in the Second Berretta Declaration, ¶ 4, a Zango customer who acquires Kaspersky's software will experience the complete eradication of the Zango toolbar – whether or not the user desires that effect. In addition, such a user is barraged by repeated messages concerning Zango, which require the user to ongoingly either accept or delete Zango. There is no method to accept Zango once and for all. These repeated messages – on the order of several per minute – are a nuisance "and, in effect, forces the user to uninstall Zango." *Id.* Moreover, as to the Kaspersky user who wishes to subscribe to Zango, it is not possible. *Id.* In sum, consumers cannot run Kaspersky's software and remain or become a Zango customer.

**3. Trade Liable**

As set forth in the initial Berretta Declaration, paragraph 9, KIS identifies Zango products as "malicious" and as an "infection." This is false. One of Kaspersky's OEM (Original Equipment Manufacturer) customers has acknowledged that Zango is "not malicious," as did the head of PC Tools' malware research center.[3] Docket 5, ¶ 5.

In fact, a careful reading of the declarations supplied by Kaspersky – those of Messrs. Coursen and Everett-Church – do not supply evidence that Zango is malicious or an infection.

---

[3] Declaration of Gregg Berretta, ¶ 8, in *Zango v. PC Tools PTY Ltd.* (Docket No. 7, ¶ 9, W.D. Wash. CV07-0797).

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Treating Zango's product and services as an "infection," when Kaspersky knows or should know that it is not, is trade liable.

**D. Motion to Strike**

Finally, pursuant to LR 8(g), Zango moves to strike in its entirety Exhibit B of the Coursen Declaration, a compilation postings from the Internet. In our view, much of it is false. We lack the time in the 8 hours permitted for this response to separate the wheat from the chaff, they are unnecessary to Kaspersky's position, in any event, and they are classic hearsay, much of it second-level hearsay, out-of-court statements within out-of-court statements.

DATED this 4th day of June, 2007.

**GORDON TILDEN THOMAS & CORDELL LLP**

Jeffrey I. Tilden, WSBA #12219
Michael Rosenberger, WSBA #17730
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: 206-467-6477
Facsimile: 206-467-6292
jtilden@gordontilden.com
mrosenberger@gordontilden.com
Attorneys for Plaintiff Zango, Inc.

ZANGO'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER - 11
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Bruce EH Johnson
brucejohnson@dwt.com

Erik Paul Belt
ebelt@bromsun.com,

Lisa M Fleming
lfleming@bromsun.com

Michael Rosenberger, WSBA #17730
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: 206-467-6477
Facsimile: 206-467-6292
jtilden@gordontilden.com
mrosenberger@gordontilden.com
Attorneys for Plaintiff Zango, Inc.

ZANGO'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER - 12
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292