The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ZANGO, INC.,

            Plaintiff,

    v.

KASPERSKY LAB, INC.,

            Defendant.

NO. 07 CV 0807 JCC

SECOND DECLARATION OF
GREGG BERRETTA

I, GREGG BERRETTA, declare as follows:

1.     I am Director of Industry Affairs for Zango. I make this declaration based on personal knowledge.

**KIS Defeats Access to Zango Without Consumer Choice**

2.     On March 8, I discovered that Kaspersky's software "Kaspersky Internet Security" (KIS), a consumer targeted anti-virus technology, was defacing one of the Zango websites: www.seekmo.com. KIS damaged the Zango web site for any customer running Kasperky's KIS by removing the Seekmo software download link from the webpage, thus making it impossible for potential Zango customers to download our Seekmo software. Kaspersky customers were not warned that the link would be removed. There was no obvious

SECOND DECLARATION OF GREGG BERRETTA - 1
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.com

way to determine that anything was missing from the site or that the KIS had taken this action. The results of our tests are attached as Exhibit 1.

3.    Mr. Coursen (at page 4, point 8) claims that the Kaspersky software does not "touch, deface, or otherwise have any contact with the untrustworthy websites it detects." This is patently false. There is a potential semantic issue here that Kaspersky is trying to exploit. The Zango web site is damaged to one who is running KIS—the damage is that the download link is eliminated for all KIS users. The site will still function for one who is not running KIS, and presumably that is the basis of Mr. Coursen's statement. However, the lack of effect upon people not running KIS is irrelevant.

4.    Kaspersky's software has slightly different effects on Zango, depending on which software the consumer has adopted first.

If Zango is installed first: First, KIS removes the Zango Toolbar without the user's knowledge or consent. The toolbar is a critical component of the Zango software that makes up a portion of Zango's value to its customers. This bar, positioned at the top of the user's Internet browser page, provides tiny, relevant links to users searching for data on a specific subject. For instance, someone looking for a loan may want fast access to car loans, mortgage rates, credit reports, etc. The Toolbar ads provide that quick access. KIS provides no warning or choice to the user that the Toolbar will be deleted. Second, every time the Zango software attempts to access the Internet, which could happen as many as three or four times per minute, Kaspersky will display a dialog box requiring the user to delete or "skip" repeatedly. Kaspersky does purport to provide an "Apply to All" checkbox which presumably is intended to stop the repeated warning (and the repeated need to "Skip"). The "Apply to All" checkbox does not

SECOND DECLARATION OF GREGG BERRETTA - 2
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

work. Zango made Kaspersky aware of this, but the "Apply to All" check box still does not

work as of June 4, 2007. This creates a miserable user experience and, in effect, forces the user

to uninstall Zango—the incessant need to hit "Skip" ultimately is intolerable.

If KIS is installed and a consumer wishes to sign up for Zango: Kaspersky will not allow

Zango to be installed while Kaspersky is running. In fact, a "Web Anti-Virus Warning" appears

advising the user to block the Zango download requested by the user. After the user chooses to

"Allow," a new "File Anti-Virus Warning" appears, stating that the Zango software cannot be

disinfected and that "write access is denied." By choosing to "Skip" this "File Anti-Virus

Warning," the user receives a third warning – this one stating that the Zango download file is still

infected and providing no choice as to what action to take. Immediately thereafter, Kaspersky

generates a warning that advises the user that a "Malicious HTTP object" is being downloaded.

However, the installation of the Zango software never completes. The user is given no choice

whatsoever in whether to allow or deny the installation of the Zango software. Kaspersky, when

first installed on a user machine, does not allow Zango to be installed thereafter. Attached as

Exhibit 2 are true and accurate copies of screen shots showing Kaspersky thwarting installation

of Zango.

5.    On May 8, Zango received complaints from a customer who was also a customer

of the KIS product. The customer informed us that the Kaspersky software gave the impression

that a user had the ability to choose whether or not to allow the Zango software to run on that

user's PC. The reality was that no matter how many times this user chose "Allow," the KIS

software would raise yet another warning, forcing even the most determined users to choose the

"Allow" option over and over until, eventually, they would give up and the Zango software

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

would be blocked. I informed Kaspersky of this behavior, expressed concerns that one of our

primary competitors was not treated similarly, and never received a response. Clearly, the effect

of this behavior unique to Zango software is to prevent potential customers from running the

Zango software without extreme difficulty. As of June 4, there is no indication that this behavior

has been modified.

6.    On March 28, 2007, I sent email correspondence to Shane Coursen expressing

concern about KIS damage to our download link on www.seekmo.com from a Kaspersky OEM

customer, CheckPoint, via their software product, ZoneAlarm 6. I received no word from

Kaspersky on the matter and began attempting to resolve the issue through CheckPoint directly.

To date (as of June 4), the issue has not been resolved and potential Zango customers using

ZoneAlarm 6 (with the included Kaspersky Anti-Virus engine "KAV") still cannot download

and install our software via www.seekmo.com.

7.    On May 29, I asked our engineers to perform further testing on the CheckPoint

ZoneAlarm 7 product, which, like ZoneAlarm 6, utilizes the KAV, and determined that Zango

customers who also installed the ZoneAlarm 7 product were unable to see the Zango Toolbar.

8.    On May 20, I learned that America Online (AOL) was offering a free antivirus

product called AOL Active Virus Shield Powered by Kaspersky. Because of the previously

noted Kaspersky behavior, I asked our lab to test the treatment of the Zango software by the

AOL/Kaspersky solution. I discovered that the AOL software prevented the installation of

Zango software when in its default mode. This inability to install Zango's software across the

millions of AOL customers is still unresolved to this day. AOL is investigating the issue, but has

not yet provided its analysis to Zango.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

9.     To date, Zango has spent countless lab hours in an attempt to determine which other anti-virus, anti-spyware, and firewall vendors – in addition to CheckPoint and AOL – utilize Kaspersky's technology. Kaspersky's web page states that their anti-virus engine and/or anti-virus software powers at least 50 and possibly as many as 150 OEM partners.

## Response to Shane Coursen's Declaration

10.     Zango software does not fit the typical description of adware. All Zango software provides concise, clear language conveying the terms of the offer to the potential customer in advance of installation. Further, Zango software makes it abundantly clear in several places how to uninstall (completely) the software if it is, in fact, not wanted. The Zango software also does not "track" the web surfing behavior of users, as Mr. Coursen inaccurately suggests. The Zango software uploads to the downloaded client on the user's computer a list of keywords that may lead to relevant advertisements. The Zango software resident on the user's PC detects instances of those keywords from the customer's web browser while they are surfing the internet and then calls the Zango server for a relevant ad from the Zango approved ad inventory. This occurs without collecting any personally identifiable information and, contrary to Mr. Coursen's suggestion at p. 3 of his declaration, without sending the consumer's "Internet browsing habits" back to the Zango servers. All ads displayed are clearly labeled as coming from Zango.

11.     Zango never sends unwanted links to pornography websites. Mr. Coursen, while mentioning pornography liberally, presents no evidence—and none exists—that a Zango consumer would unwittingly be sent pornographic material. In paragraph 19, Mr. Coursen reiterates his unfounded concerns that our software provides links to "pornography and other untrustworthy sites." Mr. Coursen, despite his tenure in the industry, appears to miss the fact that Zango software provides relevant advertising to Zango customers. Zango does not provide

SECOND DECLARATION OF GREGG BERRETTA - 5
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

"links" and, in fact, displays the actual Internet web page from an advertiser relevant to the user without requiring the user to click on a link. All advertisements are reviewed by Zango prior to entering the ad inventory and Zango exercises strict controls over what is and what is not allowed to be displayed. Zango has a vested interest in ensuring that customers receive relevant and trustworthy advertisements. Again, Mr. Coursen provides no examples of either the supposed unwanted "links" or advertisements in his declaration.

12.     Mr. Coursen repeatedly infers that Zango software will "use up computer memory and processing speed," implying both that this is unusual for a software application and that Zango software consumes an inordinate share of those resources. It is not unusual, which Mr. Coursen knows, because it is true of every software application, including Kaspersky Internet Security (KIS). Further, Mr. Coursen's assessment that Zango software slows the operation of the computer by taking an inordinate share of computer memory or processing speed is entirely unsubstantiated.

13.     Mr. Coursen (at page 6, point 12) claims that Zango has "fabricated a dispute with Kaspersky." This is false. Additionally, and perhaps more importantly, Mr. Coursen chooses to ignore the more critical current damage that Kaspersky is having on Zango through its most recent software release and those of its OEM customers. One of Kaspersky's largest OEM customers, CheckPoint, is to this day still removing the www.seekmo.com download link despite the fact that Mr. Coursen avers that defacing the detected website is not possible. Additionally, Kaspersky's KIS software refuses to allow a potential Zango customer unfettered access to Zango functionality despite taking affirmative steps to allow the proper functioning of Zango. In his paragraph 18, Mr. Coursen provides a screen shot of the Kaspersky software giving the

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

customer the supposed choice of allowing or denying the download of our software. What Mr.

Coursen fails to show the court is that once the software is installed, Kaspersky's KIS will

continue to pop warnings over and over, each time giving the user "choice" as to whether they

want to allow the software to function. Even the most persistent and dedicated customer will

find that choosing to "Allow" every 15 to 30 seconds becomes cumbersome and renders the

operation of our software de facto damaged.

14.    Contrary to Mr. Coursen's assertions that Kaspersky "does not specifically target

or single out Zango" (paragraph 16 at page 7), I personally notified Mr. Coursen and Kaspersky

that Zango engineers ran tests to determine whether the inability to stop warning flags from

Kaspersky regarding Zango software was unique to Zango or included Zango competitors such

as WhenU. Those tests showed conclusively that only Zango was targeted with non-stop

warnings despite the user having chosen to "Allow" the Zango software to proceed.

15.    Mr. Coursen attaches a copy of the FTC settlement which shows at page 3 of 11

in subpoint 9 that "Legacy program" will mean any software program that was installed on a

consumer's computer prior to January 1, 2006. Thus, the damages that Kaspersky have inflicted,

and continue to inflict on Zango, have all transpired since after the settlement of all claims

against legacy products and practices.

16.    Mr. Coursen includes in his Exhibit B several documents for the court to review.

Unfortunately, the Wikipedia article sited contains the contents of an on-going "edit war" and

cannot be cited as valid reference. Mr. Coursen then cites Mr. Edelman and Mr. Howes from

www.benedelman.org. Unfortunately, Mr. Edelman has made the December 8, 2006 update

difficult to find (see "Updated, December 8, 2006" just below the by-line on Mr. Edelman's page

SECOND DECLARATION OF GREGG BERRETTA - 7
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

at Mr. Coursen's Exhibit B.) In the December 8 update that Mr. Coursen fails to cite, Mr.

Edelman notes that Zango is in compliance with the FTC order. Mr. Edelman then proceeds to

take issue with the FTC. As to the November article, Mr. Edelman's concerns were expressed

during the FTC comments period and were reviewed and rejected by the FTC.

17.     The only instance where Mr. Coursen provides a post January 2007 reference is

particularly telling. From February 6, 2007, a poster by the handle "Zango affiliate" states that

"if you guys go on Zango.com (sic) you will see that their his (sic) now new warning and

permission disclaimers before anything his (sic) installed on peoples (sic) systems, so !if (sic)

people are willing to see the pop-ups I don't see anything wrong with it. Zango will really do

good (sic) because of their new clean ways." It's fitting that Mr. Coursen's last citation, despite

the grammatical challenges exhibited, seems to echo the reality of Zango in 2007.

**Response to Ray Everett-Church's Declaration**

18.     Mr. Everett-Church seems to base his expert opinion primarily on data either prior

to 2005, a visit to Zango's website, and/or his own personal history of working for a company

that attempted to "maximize revenue through the use of its primary asset: rich data profiles

about the online activities of customers." Zango should not and cannot be lumped in with the

type of company for which Mr. Everett-Church formerly served as Chief Privacy Officer. Given

that Mr. Everett-Church is back in as CPO of the reformed Alladvantage.com (now called

AGLOCO.com), a company that purports to collect user's personal information and web

browsing habits (in addition to setting up a multiple level marketing scheme), it is clear why Mr.

Everett-Church would feel alarmed that Zango might be a competitor. Despite the irony of his

position and his testimony in this declaration, it is clear that Zango does not create rich data

SECOND DECLARATION OF GREGG BERRETTA - 8
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

profiles about the online activities of our customers. Such activity is deplorable and contributes

significantly to the types of real harms to the Internet user's personal privacy than anything that

has ever been legitimately alleged against Zango. We may show a consenting customer a

relevant advertisement in exchange for providing free content, but we do not and will not ever

collect a user's personally identifiable information, let alone pay people to convince others to

disgorge that information to AGLOCO.

19.    Mr. Everett-Church is incorrect in his assertion on page 5 (point 11) that "Zango

also encourages developers to incorporate the Zango software into their content in exchange for a

share of the advertising revenue." The fact is that all Zango software is served from the Zango

server and is not incorporated directly into a developer's software. The ability to control the

source of our software installation ensures that Zango is aware of where our software was

installed, what notices were provided, and when to begin the timer to message the downloaded

client after 72 hours to inform the user that our software is still installed – thus providing the

users with a second chance to uninstall the software or choose, again, to remain a Zango

customer.

20.    Mr. Everett-Church's frequent statements throughout his declaration that no one

wants advertising delivered to their computer is not only hypocritical (see Mr. Everett-Church at

page 3, point 6), but becomes of minimal significance when the Zango customers provide

express consent to view the advertisements in exchange for access to free content. Further, every

Zango customer has the ability to uninstall Zango at any time they believe the value offered is no

longer sufficient. Despite Mr. Everett-Church's frequent claims that Kaspersky provides the

public with a desperately needed solution, the reality is that no Zango user needs a "pop-up

SECOND DECLARATION OF GREGG BERRETTA - 9
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

blocker," "anti-virus software," or "anti-spyware software" package to rid themselves of Zango software. Zango customers simply utilize the Add/Remove Programs function common on every Windows PC and Zango's software will be uninstalled. Had Mr. Everett-Church actually installed the Zango software as part of his research (and then uninstalled it), rather than assuming he knew how Zango worked, he would have seen that his unsubstantiated fears were incorrect.

21.     Per Mr. Everett-Church's assertions in points 17-22, he again fails to mention that the plain language disclosures shown to users are only one part of the overall approach Zango takes to ensure customers understand what they are getting and how to remove it.

a.      Zango software always provides prominent, plain language disclosure of the fact that Zango is being installed and what Zango will and will not do.

b.      Zango makes the Privacy Policy and EULA, along with Best Practices, available to all users from easily accessible links.

c.      Once Zango is installed, a window appears which lets the user know that Zango has been installed.

d.      After Zango is installed, there is a prominent Zango icon placed in the lower right System Tray of the user's PC. By clicking on that link, the user is able to easily access information on how to remove Zango if they should so choose.

e.      Additionally, Zango includes an easy to find "Uninstall Zango Instructions" at the Start/Programs menu standard on every Windows PC.

f.      After 72 hours, Zango sends a notice to Zango customers informing them that they have Zango software installed on their PC. Again, this provides information on how to uninstall Zango.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

g.    After every 90 days, Zango again sends a notice to Zango customers

informing them that the Zango software is installed on their PC. Once again, the uninstallation

information is provided.

22.    Zango disclosures are a model in the industry as to informing customers of the

fact that they have installed a piece of software, what the software does, and how to uninstall it if

they no longer wish to take advantage of the value proposition offered by the software.

23.    Additionally, and glaring in its omission from Mr. Everett-Church's analysis, is

the fact that customers have the ability to pay for the premium version of Zango's Hotbar

software. To claim, as Mr. Everett-Church does (at page 8, point 20) that Zango somehow offers

up a "free gift" while some of the customers are paying for it with their credit cards is ridiculous.

Mr. Everett-Church may seem in his declaration to champion the "unsuspecting and

unsophisticated Internet users," but it would appear that he has not installed the Zango software,

nor has he paid for the Premium version of Hotbar, so he is ill equipped to opine on how many

plain language notices an unsuspecting customer needs before they can be deemed consensual

installations.

24.    Mr. Everett-Church seems to believe that there is some public interest at stake in

the relief sought against Kaspersky. The reality is that Kaspersky should be held to the same

standards to which Zango is held. Kaspersky should notify their users when they, or their OEM

customers, intend to remove a crucial portion of a non-malicious website. Kaspersky should let

users know that they will prevent customers from upgrading to the premium version of Hotbar

rather than denying such upgrade outright. Kaspersky should ensure that their users are given

true choice and true information about the nature of the harm for which they purport to protect

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

against. Zango is not a threat to the user's personal security or the security of their personal computer. Zango goes beyond any other company to ensure that the users know that Zango is installed and how to easily remove it completely. Zango acknowledges that Kaspersky does protect against real threats in the form of viruses and malware and has not requested that such protection be enjoined. Zango software should not be lumped in with malware simply by virtue of showing advertising to customers that want free access to Zango content in exchange for viewing ads. Because Kaspersky's business model relies on the finding of harms on the Internet to disgorge unsuspecting and unsophisticated users from their hard earned money, one can safely assume that Kaspersky has no business interest in accurately reporting the nature of threats when such threats turn out, like Zango, to be completely benign.

I declare under penalty of perjury pursuant to the laws of the State of Washington that the foregoing is true and correct.

DATED this ___4___ day of June, 2007, at Bellevue, Washington.

Gregg Berretta

SECOND DECLARATION OF GREGG BERRETTA - 12
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2007, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the following

persons:

Bruce EH Johnson
brucejohnson@dwt.com

Erik Paul Belt
ebelt@bromsun.com,

Lisa M Fleming
lfleming@bromsun.com

Jeffrey I. Tilden, WSBA #12219
Michael Rosenberger, WSBA #17730
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: 206-467-6477
Facsimile: 206-467-6292
jtilden@gordontilden.com
mrosenberger@gordontilden.com
Attorneys for Plaintiff Zango, Inc.

SECOND DECLARATION OF GREGG BERRETTA - 13
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

# EXHIBIT 1

# Attachment 1

When we test Seekmo, we download it from the Seekmo site (www.seekmo.com)
But after installing Kaspersky and opening the Seekmo site - the download link disappear.

## Seekmo download page with the download link:

## Seekmo download page after installing Kaspersky - without download link:



# EXHIBIT 2

Screenshot 1 – A user attempts to install Zango while Kaspersky (KIS) is running and receives a warning.



Screenshot 2 The user receives a second warning.



Screenshot 3 The user receives a third warning.



Screenshot 4 The user receives a warning without any option.



Screenshot 5 The user receives a final "Malicious HTTP" warning before the installation fails completely.

