1                                                              Honorable John C. Coughenour

2

3

4

5

6

7                        IN THE UNITED STATES DISTRICT COURT
                        FOR THE WESTERN DISTRICT OF WASHINGTON
8                                     AT SEATTLE

9                                          )
                                           )
10    ZANGO, INC.,                         )        No. C-07-0807-JCC
                                           )
11                    Plaintiff,           )        **DEFENDANT KASPERSKY'S**
                                           )        **MOTION TO DISMISS OR,**
12          v.                             )        **ALTERNATIVELY, FOR**
                                           )        **SUMMARY JUDGMENT**
13    KASPERSKY LAB, INC.,                 )
                                           )        **NOTE ON MOTION**
14                    Defendant.           )        **CALENDAR: July 6, 2007**
                                           )
15    _____ )

16                                    Bruce E. H. Johnson, WSBA # 7667
                                      DAVIS WRIGHT TREMAINE LLP
17                                    1201 Third Avenue, Suite 2200.
18                                    Seattle, WA 98101
                                      Telephone: (206) 757-8069
19                                    Fax: (206) 757-7079
                                      E-mail: brucejohnson@dwt.com
20
                                      Erik Paul Belt (appearing *pro hac vice*)
21                                    Lisa M. Fleming (appearing *pro hac vice*)
22                                    BROMBERG & SUNSTEIN LLP
                                      125 Summer Street
23                                    Boston, MA 02110
                                      Tel:  (617) 443-9292
24                                    Fax:  (617) 443-0004
                                      E-mail:  ebelt@bromsun.com
25
26                                    *Attorneys for Defendant Kaspersky Lab, Inc.*

27

DEFENDANT KASPERSKY'S MOTION                         Davis Wright Tremaine LLP
TO DISMISS OR FOR SUMMARY JUDGMENT                   1201 Third Ave, Suite 2200
(C-07-0807-JCC) -- 0                                 Seattle, WA 98101
                                                     Tel: (206) 757-8069

Dockets.Justia.com

**INTRODUCTION**

In its order denying Plaintiff Zango's motion for a TRO, this Court held that "it is unlikely that Plaintiff will succeed on the merits of any of those claims." The Court also noted that the defendant, Kaspersky, "has also asserted a compelling argument that it qualifies under the safe harbor provision of 46 U.S.C. § 230(c) and that it might not be a proper Defendant in this action." Order dated June 6, 2007 [Docket # 26] at 3.

Based on the Court's ruling, Kaspersky Lab, Inc. ("Kaspersky USA"), now seeks dismissal of this case under Fed. R. Civ. P. 12(b)(6) (failure to state a claim) and 12(b)(2) (lack of personal jurisdiction). In particular, the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(2), immunizes Kaspersky USA's distribution of anti-virus software. Kaspersky's alleged conduct is otherwise privileged under the First Amendment. Furthermore, Kaspersky USA's alleged conduct did not occur in Washington, and Kaspersky USA otherwise has insufficient ties with Washington to support general jurisdiction.

Alternatively, this Court may grant summary judgment for Kaspersky USA as to all claims. Without dispute, Kaspersky USA has no control over the Internet security software in question and did not commit the alleged wrongful acts. Zango's complaint appears to be directed at Kaspersky Lab ZAO ("Kaspersky Moscow"), not to Kaspersky USA.

Zango's suit amounts to an ill-advised attempt to influence the threat designation of its adware in the Kaspersky anti-virus software  This attempt comes on the heals of Zango's battle with the Federal Trade Commission, which fined Zango $3 million for foisting upon unsuspecting computer users unwanted adware or spyware. No wonder that many anti-virus software companies--including, apparently, PC Tools, the defendant in a co-pending case--are reluctant to downgrade Zango's adware as a threat to computers. Having failed to convince Internet security companies like Kaspersky USA and PC Tools that Zango's adware is harmless, Zango turned to litigation to accomplish the same goal. A lawsuit is hardly the way to win friends and influence anti-virus software, however.

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 1

In effect, Zango is suing anti-virus software for being anti-virus software, nothing more.  Zango has not alleged, and could not seriously contend, that Kaspersky USA has <u>intentionally</u> harmed Zango or even has any motive for doing so.  Kaspersky USA is not Zango's competitor and otherwise has no relationship with Zango.  Kaspersky USA's only motive has been to sell software that protects computers from viruse and other malware.

Allowing Zango's suit to proceed will have a chilling effect on the Internet security industry.  Anti-virus software distributors have an interest in protecting their customers from cybercrimes and intrusions.  They have an interest in determining their own ratings of potential threats.  Forcing such companies to remove Zango and similar sources of malware from threat detection lists will compromise the ability of these security providers to protect their customers. Allowing the suit to continue may also encourage the distributors of even more pernicious malware (such as spyware and computer viruses) to sue security software companies, forcing them out of business.  For that public policy reason alone, this Court should closely scrutinize Zango's suit and dismiss it.

## ZANGO'S ALLEGATIONS

Zango's allegations appear to be addressed to Kaspersky Moscow, not to Kaspersky USA.  Zango begins by asserting that Kaspersky is "a privately owned company based in Moscow, Russia," and which maintains an office in Woburn, Massachusetts.  Complaint at ¶ 2.[1]  But as first detailed in Kaspersky USA's opposition to Zango's motion for a TRO, and as further detailed in the next section (entitled "Undisputed Facts"), Kaspersky Moscow and Kaspersky USA are separate companies. Kaspersky USA is merely a non-exclusive distributor of Kaspersky Moscow's software products and is not Kaspersky Moscow's agent or subsidiary.  Kaspersky Moscow develops and maintains the software.  Kaspersky USA merely distributes it.

---

[1]  For the Court's convenience, the Complaint is attached as an appendix to this memorandum.

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 2

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

Zango's allegations focus on the operation of the software (developed in Russia), not on its distribution *per se*.  Zango first alleges that the Kaspersky Internet Security ("KIS") software is somehow damaging a Zango website, www.seekmo.com, "by removing Zango weblinks from computers running the KIS program."  Complaint at ¶ 9.  In other words, Zango alleges nothing more than that the KIS software is doing what it is supposed to be doing:  blocking or filtering from an end user's computer potentially unwanted weblinks that the Zango adware causes to appear (*e.g.,* pop up ads) while the user is surfing the Internet.

Zango further alleges that the "Allow" option by which a user of the Kaspersky software can choose to accept the Zango adware does not function correctly and that the KIS software otherwise malfunctions.  Complaint at ¶¶ 12-13, 15.   In effect, Zango alleges that the KIS software itself is, at most, somehow defective, nothing more.  Zango, however, has no breach of warranty claim against Kaspersky and could not allege one in any event.  Zango would have no standing to assert such a claim on behalf of Kaspersky's own customers.

Zango further alleges that Kaspersky Moscow's original equipment manufacturer ("OEM") customers, who employ Kaspersky anti-virus engine software ("KAV"), caused further damage to a Zango website.  *Id*. at ¶ 10-11.  Importantly, as Zango alleges, the OEM's told Zango that they would try to resolve the alleged defect.  *Id*. at ¶ 10 ("The first OEM requested additional time to address Zango's concerns, and subsequently communicated to Zango that it would contact Kaspersky to resolve the issue").   This alleged communication occurred on March 28, 2007.  Zango filed this lawsuit less than two months later.  Apparently, Zango was unwilling to give Kaspersky Moscow or its OEM's sufficient time to investigate Zango's allegations and attempt, if warranted, a technical or business resolution.  Moreover, these allegations concerning the OEM's have nothing to do with Kaspersky USA.  Indeed, as seen in the Undisputed Facts section below, Kaspersky USA has no relationship with or control over these OEMs.

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 3

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

Nowhere does Zango allege that Kaspersky (whether Kaspersky Moscow or USA) maliciously refused to deal with Zango, refused to test its software, refused to reclassify Zango, or refused to debug the security software (if, indeed, it required debugging). Nor does Zango allege, for example, that Kaspersky attempted to cover up an alleged problem.   Rather, Zango alleges that "Kaspersky admitted that KIS was damaging Zango's website and requested time to fix the issue.  Testing performed by Zango's lab on March 14, 2007 showed that KIS was no longer damaging Zango's webpage."  Complaint at ¶ 9 (emphasis added).

This allegation shows that, if anything, Kaspersky was acting in good faith.  Zango admits that Kaspersky recognized an alleged defect and fixed it. To the extent that Zango has a further complaint against Kaspersky, it has more to do with timing than with actual misconduct.  To wit, Zango alleges that further testing on May 8 and then on May 21, 2007, revealed additional problems with the KIS software.  *See* Complaint at ¶¶ 11-15.   While Zango allegedly informed Kaspersky about one problem on May 8th (¶ 12),  Zango does not allege that it informed Kaspersky about the results of the May 21st testing or that Zango gave Kaspersky any time to investigate and address these alleged defects.   Instead, Zango responded by filing its complaint the very next day, on May 22, and serving Kaspersky USA a day later, on May 23rd.  Although Kaspersky apparently acted in good faith, Zango did not.

The remaining allegations concerns the way that the KIS software allegedly mislabels the Zango software as "malicious" or as an "infection."  Complaint at ¶¶ 14 and 28-29.  Despite Zango's admission that Kaspersky repaired an alleged defect when first presented with the issue, Zango does not allege that it requested that Kaspersky change the way it labels the Zango software.  Zango does not allege that it gave Kaspersky any time to investigate and address the labeling issue.  Nor does Zango allege that it provided any evidence to Kaspersky that Zango's adware was not malicious.   Accordingly, rather than attempt to deal with Kaspersky through business channels--which had worked to Zango's advantage once before--Zango instead filed this litigation to force Kaspersky's hand.

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 4

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

In effect, Zango's complaint can be read as follows: even though Kaspersky was cooperative and fixed on alleged software defect, Zango had no patience and wanted fixes to complex software immediately, without giving Kaspersky time to investigate and repair the alleged defects  Based on this set of questionable circumstances alone, Zango has advanced causes of action for tortious intefrence with contractual rights or business expectancy (Complaint at ¶¶ 19-21), violation of Washington's Consumer Protection Act (¶¶ 22-26), and trade libel (¶¶ 27-30).  Zango also advances claims for unjust enrichment and injunctive relief, although these last two claims appear to be requests for relief based on the alleged business torts rather than causes of action in their own right.

Finally, Zango does not allege where Kaspersky's conduct took place and certainly does not allege that any of Kaspersky's conduct took place in Washington or that Kaspersky specifically targeted Zango's customers in Washington.

## UNDISPUTED FACTS

In his declaration filed in opposition to Zango's motion for a TRO,  Kaspersky USA's Chief Financial Officer, Angelo Gentile, testified that Kaspersky USA is based in Woburn, Massachusetts.  Kaspersky USA resells Internet security software (*e.g.*, anti-virus software, spam filters, etc.) developed by Kaspersky Moscow.  The two companies are separate:  one does not own or control, in whole or in part, the other.  They share a name, which Kaspersky USA uses under a trademark license from Kaspersky Moscow.  *See* Declaration of Angelo Gentile ("Gentile Decl.") [Docket #  18] at ¶¶ 1-4, 7.[2]

Mr. Gentile further testified that Kaspersky USA is merely a non-exclusive distributor. Other companies, such as original equipment manufacturers ("OEMs"), also distribute the Kaspersky security systems without any involvement of Kaspersky USA.  Kaspersky USA

---

[2]    Kaspersky USA incorporates by reference into this motion the three declarations it filed in opposition to Zango's motion for a TRO:  (1) The Declaration of Angelo Gentile [Docket # 18], (2) the Declaration of Shane Coursen [Docket # 15], and (3) the Declaration of Ray Everett-Church [Docket # 16].  In addition, Kaspersky USA now submits the Supplemental Declaration of Angelo Gentile ("Gentile Supp. Decl.").

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 5

also has no control over these OEMs. Nor does Kaspersky USA have any control over the development and maintenance of the software and thus any way to compel the modifications Zango demands. *Id*. at ¶¶ 5-13. Indeed, Kaspersky USA's "Non-Exclusive Distribution Agreement" provides that it "shall have no authority to bind Licensor [Kaspersky Moscow] in any respect." *Id*. at ¶ 9 and Exhibit B attached thereto (emphasis added).

In his supplemental declaration filed with this motion, Mr. Gentile further testifies that the Kaspersky test lab in which malware threats are assessed, and in which the Kaspersky software is developed and tested, is based in Moscow, staffed by Kaspersky Moscow's scientists and technicians. Kaspersky USA has no involvement with this test lab or with the classification of malware threats. Gentile Supp. Decl. at ¶ 5.

Furthermore, Kaspersky USA has insufficient contacts with Washington. Kaspersky USA does not target Washington consumers specifically. Kaspersky USA neither advertises nor markets to consumers in Washington. Gentile Supp. Decl. at ¶ 10. Kaspersky USA does not deal directly with retailers in Washington. Kaspersky USA's two main customers are based in the Midwest and South, respectively, not in Washington. The Midwestern customer, a distributor who sells to retail chains, accounts for about 70% of all business to retailers. The other main customer, a reseller to businesses, accounts for 40% of business sales. *Id*. at 7-8. As far as Kaspersky USA can determine, only about 1% of its total revenues comes from customers residing in Washington. *Id*. at ¶ 9.

Kaspersky USA has no relationships or agreements with OEMs, such as those referenced in Zango's complaint. Kaspersky USA does not sell or supply software to these OEMs, who deal directly with Kaspersky Moscow or with other distributors. *Id*. at ¶ 11.

Kaspersky USA employs a Senior Technical Consultant, Shane Coursen, who keeps tabs on "malware" (short for "malicious software") circulating through the Internet. Malware includes, for example, computer viruses, worms, spyware, and adware, among other harmful programs. *See* Declaration of Shane Coursen ("Coursen Decl.") [Docket # 15] at ¶¶ 1-5.

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 6

1    More specifically, Zango sells advertising by luring viewers to its website on the

2    promise of free games and videos. A visitor to the Zango website downloads the video or

3    game but, in the process, also downloads the Zango adware, which comes bundled with the

4    video or game. The user often does not realize or fully appreciate that he or she is

5    downloading adware along with the free video or game. The adware, in turn, opens links to

6    websites that may contain pornography or that are known sources of computer viruses and the

7    like. Furthermore, apart from causing annoying pop-up ads and opening links to adult content

8    websites, the adware itself is often harmful to a computer system, clogging computer memory

9    and slowing processing time. *See* Coursen Decl. at ¶¶ 9-14.

10    Mr. Coursen explains the workings of the Kaspersky anti-virus software and other

11    security software. For example, the Kaspersky software does not single out or discriminate

12    against Zango. <u>Kaspersky has no intent to disrupt Zango's business.</u> Kaspersky's only

13    motivation is to provide its customers with the means to protect their computers from

14    malware and other unwanted content. The software merely detects potentially unwanted or

15    harmful malware. It is then up to the computer user to decide whether or not to accept or

16    reject the download--the Kaspersky software does not make that decision for the user. Indeed,

17    the Kaspersky security software allows the user to install the Zango adware, should the user

18    choose to do so. The software can also be configured to allow access to certain websites that

19    may be introduced by the Zango adware. *See* Coursen Decl. at ¶¶ 15-18.

20    Importantly, contrary to Zango's allegations, the Kaspersky software does not label

21    Zango's adware as "malicious" or as an "infection." Rather, as seen in the screen shot

22    presented in Mr. Coursen's declaration (at p. 8), the Kaspersky anti-virus warning states

23    simply that adware has been detected and that it is "not-a-virus." Coursen Decl. at ¶ 18. The

24    warning message further states, "This file <u>may</u> contain adware. You are advised to block this

25    download." *Id.* (emphasis added). Thus, the warning merely states advice about what the

26    intended software download "may" contain. It is up to the user whether to accept that advice.

27

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 7

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

According to Mr. Coursen, Kaspersky Moscow dealt reasonably with Zango and did undertake to remove or reduce certain threat detection from the Kaspersky software.  *Id*. at ¶ 19.  Indeed, as Zango admits, Kaspersky fixed an alleged defect and, as a result, Zango found that the KIS software "was no longer damaging Zango's webpages."  Complaint at ¶ 9.

Mr. Coursen warns, however, that it would be irresponsible to remove all threat detection relating to Zango and its clients (*i.e.*, the companies that advertise through Zango's adware).   The problem is that while the Zango adware may open links to harmless websites, it also opens links to websites that contain unwanted content (such as pornography ) or that are known sources of viruses and other malware.  Coursen Decl. at ¶¶ 10, 19.

Zango alleges that the Kaspersky security software damages Zango websites.  But as Mr. Coursen explains, that is physically impossible.  The Kaspersky software does not touch a website or in any way damage it.  The Kaspersky security software merely acts as a lock on a door--it bars malware or links to unwanted websites from entering a user's computer.  The Kaspersky software is purely defensive, not offensive.  *Id*. at ¶¶ 8, 16. 20.

Zango portrays itself as an innocent on-line advertising business.  But Internet security experts know otherwise.  As Mr. Coursen states, Zango is well known in the industry as a purveyor of malware, including spyware.  Many Internet security analysts actively follow Zango's exploits and post articles and blogs warning about the dangers posed by Zango.  Indeed, Zango's activities (such as downloading adware and spyware onto unsuspecting user's computers) became so damaging that the Federal Trade Commission took action against Zango and fined it $3,000,000 for its unfair and deceptive practices. *See* Coursen Decl. at 11-13.  No wonder that Kaspersky and other Internet security system providers have listed Zango and its affiliated websites as security threats.

Ray Everett-Church is a noted Internet privacy expert.  Mr. Everett-Church explains two particular concerns about Zango and why it is not the victim here.  First, Zango is a source of pop-up ads, which consumers universally hate.   The adware also consumes

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 8

1    computer system resources and can often cause computer system crashes and can often clog

2    Internet connections.  Computer users should have the choice to filter or remove adware--such

3    as Zango's adware--to stop these unwanted effects.  Declaration of Ray Everett-Church

4    ("Everett-Church Decl.") [Docket # 16] at ¶¶ 11-14.  Second, computer users often install the

5    Zango adware without full consent and without fully realizing the implications.  Zango takes

6    advantage of the "Trojan Horse" model of deception.  It offers free entertainment (videos and

7    games) hoping that unsuspecting users will install the adware that comes bundled with it.

8    Such method of doing business is predatory.  *Id*. at ¶¶ 15-21.

9        As such, the Kaspersky security software serves an important public interest by giving

10   computer users the tools they need to intercept Zango's intrusive malware.  *Id*. at ¶¶ 22-23.

11                                          **ARGUMENT**

12       Zango has alleged nothing more than that the Kaspersky security software is somehow

13   defective in detecting and processing the Zango adware, that Kaspersky Moscow corrected

14   some defects, and that Kaspersky moved too slowly for Zango's taste in addressing others.

15   That is hardly grounds for tortious interference, unfair business practices, and trade libel.  In

16   any event, even accepting Zango's allegations as true, Kaspersky's conduct is both

17   immunized under the CDA, 47 U.S.C. § 230(c)(2), and privileged under the First

18   Amendment.  Thus, this Court may dismiss Zango's case under Fed. R. Civ. P. 12(b)(6).

19       Moreover, Kaspersky USA has insufficient contacts with Washington to support

20   jurisdiction.  Thus, the case should be dismissed under Fed. R. Civ. P. 12(b)(2).

21       In the alternative, this Court may treat the motion as one for summary judgment (*see*

22   F.R.C.P. 12(b)) and hold, as a matter of law, that Kaspersky USA is not liable. For example,

23   Kaspersky USA has no control over the Kaspersky software and thus no way to comply with

24   Zango's demands. Zango sued the wrong party.  Because Kaspersky USA is merely an

25   independent contractor, not Kaspersky Moscow's agent, it cannot be held liable.

26

27

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 9

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

1    **I.        ZANGO HAS FAILED TO STATE A CLAIM FOR RELIEF**

2          The standard for a motion to dismiss is whether, accepting the plaintiff's allegations as

3    true, the plaintiff has stated a cause of action for which relief may be granted.  Fed. R. Civ. P.

4    12(b)(6);  *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  Although a complaint is

5    construed in the plaintiff's favor, a court need not accept allegations that are contradictory or

6    conclusory.  Nor need the court accept allegations that are based on unwarranted deductions

7    of fact or unreasonable inferences. *Id*; *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55

8    (9th Cir. 1994);  In this case, even accepting Zango's allegations as true, it cannot prevail.

9          First, the Kaspersky security software provides a valuable service, encouraged by

10   public policy.  It detects malware and other unwanted content and allows users to selectively

11   block it.  This service falls under the safe harbor of 47 U.S.C. § 230(c).

12         Second, Kaspersky's conduct is otherwise privileged, either as honest opinion

13   protected under the First Amendment or under Washington's common interest privilege.

14         Third, the alleged conduct, even if proven, does not amount to the kind of intentional,

15   tortious conduct that would meet the requirements of Zango's causes of action.

16         **A.        Kaspersky USA Is Immune From Liability**

17         The safe harbor provision of the  CDA, 47 U.S.C. § 230(c)(2), shields Kaspersky's

18   alleged conduct.   Section 230 is entitled "Protection for Private Blocking and Screening of

19   Offensive Material."   The Kaspersky security software is directed to just that function:

20   allowing computer users to block and screen offensive material.

21         Section 230 states that it is the policy of the United States --

22             "to encourage the development of technologies which maximize user
23         control over what information is received by individuals, families, and schools
           who use the Internet and other interactive computer services;" and

24             "to remove disincentives for the development and utilization of
25         blocking and filtering technologies that empower parents to restrict their
           children's access to objectionable or inappropriate online material."
26
27   47 U.S.C. § 230(b)(3) and (4).

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 10

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

The Kaspersky security system furthers this public policy.  The Kaspersky software system is a technology that allows computer users to control what information they receive over the Internet and to filter or block objectionable material, such as malware or links to adult content web sites (*i.e.*, pornography).  Importantly, the software gives users the choice whether to accept or reject Zango's adware.  *See* Coursen Decl. at ¶¶ 9-18.

Subsection (c)(2) sets forth the safe harbor from civil liability:

> No provider or user of an interactive computer service shall be held liable on account of --
>
> (A)  any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
>
> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c).

The statute defines an "interactive computer service" to include an "access software provider."  47 U.S.C. § 230(f)(2).  An "access software provider," in turn, is defined as a provider of software or tools that, *inter alia*, "filter, screen, allow, or disallow content."  *Id*. at § 230 (f)(4)(A).  The Kaspersky security systems are software tools that enable users to "filter, screen, allow, or disallow content" at their discretion.

Courts consider the scope of immunity under § 230(c) to be "quite robust."  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). *See also Batzel v. Smith*, 333 F.3d 1018, 1030 and n.15 (9th Cir. 2003) (term "interactive service provider" must be broadly construed to cover a broad range of "cyberspace services").  As such, Kaspersky USA must be regarded as an "access software provider" for purposes of this statutory immunity.  Indeed, Kaspersky USA's alleged conduct falls directly within the scope of immunity stated in either Subsections A or B.  Kaspersky USA distributes "the technical means to restrict access to" material that is "obscene . . . or otherwise objectionable."  That is, Kaspersky USA distributes

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 11

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

1    security software that allows users to restrict access to adult content websites or other

2    objectionable material, including Zango's adware itself.[3]

3       At least one other court has determined that § 230(c)(2) immunizes a provider of anti-

4    malware software.  In *Pallorium, Inc. v. Jared*, No. G036124, 2007 WL 80955 (Cal. Ct. App.

5    Jan. 11, 2007), the California Court of Appeal affirmed dismissal of claims against the

6    provider of spam filtering software. Like Zango's claims, the dismissed claims included

7    intentional interference with business relations and unfair business practices.[4]

8       In *Pallorium*, the defendant, Jared, developed filtering software to test for and block

9    spam (unsolicited or "junk" commercial e-mail) and posted a "Block List" identifying the IP

10   (Internet protocol) addresses of e-mail servers from which spam was sent.  The court affirmed

11   the trial court's ruling that Jared qualified as an "interactive computer service" (specifically an

12   "access software provider") within the scope of the statute.   In particular, Jared "provide[d]

13   or enable[d] computer access by multiple users to a computer server" within the meaning of

14   the statute because his software allowed third parties to interact with the filtering software and

15   thus control access to or from e-mail servers.  2007 WL 80955 at *5-6.  The court further held

16   that Jared qualified for immunity even if his spam filter software was over-inclusive.  The

17   spam filter blocked not only ads for sexually explicit material but also legitimate or

18   inoffensive e-mails as well.  *Id*. at *7.

19

20      [3]  Zango's adware need not provide links to pornographic websites for it to be

21   considered objectionable under the statute.  In *Langdon v. Google, Inc*., 474 F. Supp.2d 622, 631 (D.
     Del. 2007), the court held that Google and other defendants were immune under the CDA for blocking

22   website ads.  Even though the ads were not obscene, they were, under § 230(c)(2)(A), "otherwise
     objectionable" (an all encompassing, subjective classification).  Accordingly, even if Zango does not

23   open links to adult content websites (although it certainly does), its adware can still be deemed
     "otherwise objectionable."  Without dispute, the adware causes "pop-up" ads to appear while a user is

24   surfing the world wide web.  The Internet privacy expert, Mr. Everett-Church, has detailed just how
     harassing and objectionable pop-up ads can be.  *See* Everett-Church Decl. at ¶¶ 13-16.

25

26      [4] *Pallorium* is designated as not citable precedent in California tribunals.  Given the scarcity
     of cases interpreting § 230(c)(2), however, and given its factual similarity to this case, Kaspersky USA

27   respectfully requests that the Court consider *Pallorium* as instructive or illustrative, if not controlling.

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 12

1    The court focused on one of the policy objectives of § 230, which is "to encourage the

2    development of technologies which maximize user control over what information is received

3    by individuals, families, and schools who use the Internet." *Id*. (citing § 230(b)(3)). Because

4    Jared's filtering software allowed users to control information, it was furthering this objective.

5    Finally, the court held that Jared provided the "technical means to restrict access" to

6    unwanted material, as required under § 230(c)(2)(B). The court interpreted "technical means"

7    to include both the filtering software (called "RB Check") that Jared distributed to others and

8    the Block List that Jared posted. *Id*. at *8.

9    Here, Kaspersky USA distributes the "technical means" (anti-virus and other security

10    software) for users to restrict access to unwanted material, such as unwanted or offensive pop-

11    up ads, links to adult content websites, and the like. The Kaspersky security software allows

12    users to interact with it and the servers of others (by giving the option whether to accept or

13    reject the downloaded software). As such, under the reasoning of *Pallorium*, and under the

14    plain wording of the statute itself, Kaspersky USA must be seen as immune from suit here. [5]

15    **B.    Kaspersky's Conduct Is Privileged**

16    Under the common interest doctrine, statements are conditionally privileged when the

17    speaker and recipient have a common interest in the subject of the communication and thus

18    need to speak freely about it. *See, e.g*, *Ward v. Painters Local Union No. 300*, 41 Wash.2d

19    859, 865-66, 252 P.2d 253 (1953) (recognizing common interest privilege); *Nichols v. J.J.*

20    *Newberry Co.*, 150 F.2d 15, 17 (9th Cir. 1945) (store's posting of alleged check forger's

21    photo was privileged and not libelous); Restatement (First) of Torts, § 596. In this case,

22

23    [5]    In effect, Zango is trying to silence Kaspersky USA's anti-virus software. But that
24    software is serving a public policy goal of allowing computer users to filter the bombardment of
      unwanted content over the Internet. Allowing this suit to continue will chill anti-virus software
25    makers, with the result that Internet security will become far less effective. As such, public policy
      compels that Zango's complaint be dismissed. *See, e.g., Batzel*, 333 F.3d at 1029 ("If efforts to review
26    and omit third-party defamatory, obscene or inappropriate material make a computer service provider
      or user liable for posted speech, then website operators and Internet service providers are likely to
27    abandon efforts to eliminate such material from their site").

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 13

Kaspersky and its customers have a common interest in communicating about potential malware threat and in ensuring the security of their computers. Kaspersky has an interest in making sure that its customers are fully informed. Such communications should be protected under the First Amendment. *See, e.g., KinderStart.com, LLC v. Google, Inc*., No. C 06-2057 JF, 2007 WL 831806 at * 19-21 (N.D. Cal., March 16, 2007) (dismissing libel claims under Rule 12(b)(6) because, *inter alia*, the common interest privilege immunized Google's unfavorable ranking of the plaintiff's website. Subscribers to Google's ranking service were entitled to Google's opinion on websites).

Here, Kaspersky software users are like the Google subscribers in the *KinderStart.com* case. When users purchase or install the anti-virus software, they are asking for Kaspersky's opinion on potential threats. The Kaspersky software gives that opinion--*e.g*., the download <u>may</u> contain adware and thus user is advised to delete it. That is hardly libelous.

Furthermore, the software's threat detection labeling must be seen as opinion shielded under the First Amendment**.** *See, e.g., Potomac Valve & Fitting Inc. v. Crawford Fitting Co*., 829 F.2d 1280, 1285-1290 (4th Cir. 1987) (statement by plaintiff's competitor to distributors that plaintiff's tests misrepresented the quality of the plaintiff's products was opinion, especially considering the statement's wording and context).

The Kaspersky threat warnings merely say, *e.g*., that a download "may" contain adware and the user is advised to delete it. *See* Coursen Decl. at ¶ 18. The user has the choice whether to accept or delete the download. In this context, a reasonable user would regard the warning as advice or opinion, not as fact. The statements are thus privileged.

### C.    Zango Has Not Alleged Conduct that Can Be Considered Tortious

In a nutshell, Zango's allegations can be restated as follows: (a) Zango asked Kaspersky to solve an alleged defect in its software; (b) Kaspersky did so and, indeed, fixed a problem; (c) Zango confirmed that the software was no longer damaging its website; (d) on May 21st, Zango discovered other harm that the Kaspersky security software allegedly caused

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 14

but (e) filed this litigation the next day rather than attempt to work with Kaspersky, even though Kaspersky has previously cooperated and fixed an alleged defect. That set of facts can hardly be called tortious.

**1.    Zango Will Not Prevail On Its Claim for Tortious Interference**

"Intentional interference requires an improper objective or the use of wrongful means that in fact cause injury to the person's contractual relationship." *Leingang v. Pierce County Medical Bureau, Inc.*, 131 Wash.2d 133, 157, 930 P.2d 288, 300 (1997) (defendant did not tortiously interfere with business relations because, *inter alia*, it had no improper purpose and acted in good faith). Here, Kaspersky USA cannot be held liable for tortious interference. Kaspersky USA merely distributes software and has no improper purpose--unless safeguarding people's computers from unwanted pop-up ads, viruses, and other malware is somehow improper.

Zango has failed to allege the improper conduct necessary to support its claim. Indeed, Zango has alleged, at best, that, once confronted with a problem, Kaspersky addressed it and stopped the alleged damage to Zango's website. Complaint at ¶ 9. Then, when Zango's testing revealed further alleged problems, Zango filed this lawsuit the next day instead of again attempting to work with Kaspersky through normal business channels, even though the first attempt, Zango admits, was cooperative and productive. That alleged conduct cannot seriously be viewed as improper.

Zango makes no allegation that Kaspersky specifically singles out or targets Zango. Kaspersky is not Zango's competitor. There is no allegation of motive or improper means.

Of course, the undisputed facts also show that Kaspersky has not targeted or attempted to damage Zango. *See* Coursen Decl. at ¶¶ 16, 19-20. Furthermore, the Kaspersky software provides a valuable service--filtering or blocking objectionable content, including obscene material, computer viruses, and the like--that is immune for the public policy reasons stated in 47 U.S.C. § 230 and discussed in Section I.A. above.

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 15

1    Finally, Zango has failed to identify what agreements or business expectancies with

2    third parties were actually damaged by Kaspersky USA's alleged conduct.   "Generic

3    allegations that there was an interference with an unnamed third party are insufficient as a

4    matter of law."  *Bradley v. Google, Inc*., No. C 06-05289 WHA, 2006 WL 3798134 at * 4

5    (N.D. Cal., Dec. 22, 2006) (granting motion to dismiss claim for interference with prospective

6    business advantage).

7              **2.      Zango Cannot Prevail On its Consumer Protection Act Claim**

8         The elements of a claim under the Washington Consumer Protection Act are (1) an

9    unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

10   impact; (4) injury to plaintiff in his or her business or property; (5) causation.  *Hangman*

11   *Ridge Training Stables v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 780, 719 P.2d 531 (1986).

12        Here, there is no allegation that Kaspersky's software is unfair or deceptive. For one,

13   the software lets the user <u>choose</u> whether to accept or reject the Zango adware.  That adware

14   is harmful in and of itself, even if it never exposes a computer owner to viruses or

15   pornography.  For example, the adware clogs computer systems, causes system crashes, and

16   evokes annoying pop-up ads.

17        Nor is there an adverse impact on public interest. In fact, public policy favors the

18   development of anti-virus and blocking and filtering software.  *See generally* Everett-Church

19   Decl. at ¶¶ 11-23; 47 U.S.C. § 230.  There is nothing unfair or deceptive about providing anti-

20   virus software products for the purpose of protecting computers from malware.

21             **3.      Kaspersky USA Has Not Committed Trade Libel**

22        Aside from the First Amendment principles discussed above, and assuming *arguendo*

23   that Washington would recognize a claim for trade libel, Zango would have to prove that

24   Kaspersky USA (1) published a knowingly false statement harmful to the interests of another,

25   and (2)  intended such publication to harm the plaintiff's pecuniary interests.   That burden is

26   high.  *Auvil v. CBS "60 Minutes,"* 67 F.3d 816, 820 (9th Cir. 1995).

27

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 16

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

Here, Zango has not alleged that Kaspersky intended to harm Zango's pecuniary interests.  Why would Kaspersky?  It would have nothing to gain by harming Zango.  Nor would Kaspersky have anything to gain by misrepresenting Zango has a malware threat.  The integrity of Kaspersky's anti-virus and security software would depend on Kaspersky getting it right, not on misleading its customers.

Zango cannot prove that Kaspersky's warnings to users of the Kaspersky's anti-virus software are knowingly false or malicious.  Zango's has asserted conclusory allegations of maliciousness and has alleged no facts that could be read as casting doubt on Kaspersky's state of mind.  Such conclusory allegations cannot withstand a motion to dismiss. *Keniston v. Roberts*, 717 F.2d at 1300.

If anything, Kaspersky and many other security software providers understand that Zango's software poses some threat to users' computers.  Zango has a history of foisting on unsuspecting users intrusive and unwanted adware.  That history culminated in a hefty fine and a March 2007 consent agreement with the Federal Trade Commission.  According to Mr. Coursen, it would be highly irresponsible to allow Zango's malware to go unchecked. Coursen Decl. at ¶ 19.

## II.     ZANGO CANNOT ASSERT JURISDICTION OVER KASPERSKY USA

In analyzing whether a court may exercise personal jurisdiction over an out-of state defendant like Kaspersky USA, this Court must look to Washington's long-arm statute.  But because the long-arm statute is coextensive with the Due Process Clause of the Constitution, a Washington court applies the federal due process standard--namely, whether the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offed 'traditional notions of fair play and substantial justice.'" *McMains v. Picart*, No. C06-1539JCC, 2007 WL 1031681 at *2 (W.D. Wash., March 30, 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also*, *e.g.*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-801 (9th Cir. 2004) (affirming dismissal for lack of jursidiction).

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 17

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

Under this due process standard, a court may require the presence of a non-resident defendant only if "general" or "specific" jurisdiction can be established. The plaintiff has the burden of submitting facts establishing jurisdiction and may not simply rest on the bare allegations of its complaint. *Emery v. BioPort Corp.*, No. 06-CV-0008-AAM, 2006 WL 3147399 at *2 (E.D. Wash., Oct. 31, 2006) (citing Ninth Circuit precedent). Here, there is neither specific nor general jurisdiction.

### A.    The Alleged Conduct Did Not Occur in Washington and Thus There Is No "Specific" Jurisdiction

A court may exercise specific jurisdiction only when the suit arises out of the defendant's activities in the forum state. Specific jurisdiction requires that the plaintiff establish facts satisfying the following three prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

Any cause of action that Zango has against Kaspersky USA has nothing to do with any activities Kaspersky USA performs in Washington or, for that matter, directed towards Zango. Indeed, the alleged misconduct took place, if at all, in Moscow, Russia, at Kaspersky Moscow's lab, not in Washington.

In particular, Kaspersky Moscow develops the software, controls it, and makes the decisions on labeling of malware threats. Gentile Supp. Decl. at ¶ 2. Kaspersky USA has no control over that process. Kaspersky USA is merely a non-exclusive distributor and licensee of Kaspersky Moscow. Kaspersky USA is an entirely separate entity and is not Kaspersky Moscow's agent. Thus, Zango cannot establish specific jurisdiction over Kaspersky USA.

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 18

*See, e.g., Earth Products, Inc. v. Meynard Designs, Inc.*, No. C05-1326Z, 2006 WL 2192124 at *1 (W.D. Wash., July 31, 2006) (finding no personal jurisdiction, reasoning that because first defendant was a separate corporate entity from other defendants, the actions of those parties could not be attributed to first defendant for purposes of personal jurisdiction inquiry).

Moreover, merely because Zango may suffer the effects of the alleged wrongful conduct in Washington does not demonstrate a connection to Washington. Rather, "something more" must be shown to establish specific jurisdiction. *McMains*, 2007 WL 1031681 at * 3 (dismissing case for lack of personal jurisdiction over non-resident). Here, that "something more" is lacking. Zango has not alleged that Kaspersky's decisions on labeling the Zango software, Kaspersky's testing of Zango's software, or Kaspersky's investigation of the alleged defects occurred in Washington. Nor has Zango even alleged that it has customers in Washington or that those customers (a) used Kaspersky software and (b) as a result, could not install or uninstall the Zango software and could not view Zango affiliated websites. In any event, Kaspersky USA certainly never directed any actions against Zango. That Kaspersky USA may sell products that eventually wind up in Washington is not enough under this standard. *Id.*, at * 4 (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state")).

**B.    Kaspersky USA's Contacts with Washington Are Not Extensive**

Because specific jurisdiction is unavailable, general jurisdiction is appropriate only if Kaspersky USA's contacts with Washington are "fairly extensive" or "continuous and systematic." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Bancroft & Masters, Inc. v. August Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). The standard for establishing general jurisdiction is "exacting" and "fairly high." *Schwarzenegger*, 374 F.3d at 801; *Bancroft*, 223 F.3d at 1086 (citation omitted). Kaspersky USA's contacts are neither "fairly extensive" nor "continuous and systematic."

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 19

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

Here, Kaspersky USA conduct does not establish or approximate a physical presence in Washington. Kaspersky USA has contacts with Washington, if at all, in two ways: through the small amount of business it gains from Washington customers and by its Internet website. Gentile Supp. Decl. at ¶¶ 6-10. Viewed together, however, these contacts are not extensive or systemic enough for Kaspersky USA to reasonably expect to be subject to suit in Washington from actions occurring elsewhere.

First, Kaspersky USA maintains no offices and has no employees in Washington. Most of its employees are based at the company headquarters in Woburn, Massachusetts. Moreover, Kaspersky USA's main customers reside in the Midwest and South, not in Washington. Gentile Decl. at ¶ 4; Gentile Supp. Decl. at ¶ 3, 8. These facts show a lack of presence in Washington. *See, e.g, Emery v. BioPort Corp.*, 2006 WL 3147399 at *3 (no general jurisdiction over Michigan corporation with no employees or offices in Washington).

Second, Kaspersky does not specifically target Washington consumers and does not advertise or market to them. Gentile Supp. Decl. at ¶ 10. Indeed, while Kaspersky USA's website makes the product available to anyone, Kasapersky derives only above 1% of its total revenue from Washington customers. Gentile Supp. Decl. at ¶ 9. On similar facts, this Court and others have declined to exercise general personal jurisdiction over an out-of-state defendant. *See, e.g., Earth Prods.,* 2006 WL 2192124 at * 1 (defendant's sales of $300,000 worth of trademark infringing products over four year period in Washington, combined with lack of advertising in Washington, did not support general jurisdiction); *Emery*, 2006 WL 3147399 at * 4 (no general jurisdiction even though defendant did some small amount of business in Washington); *see also Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199-1200 (4th Cir. 1993) (no general jurisdiction because defendant's sales in the forum state constituted only about 2% of total sales); *Chiaphua Components Ltd. v. West Bend Co.*, 95 F. Supp.2d 505, 511-12 (E.D. Va. 2000) (defendant's sales in the forum state were consistently

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 20

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

1    2.16% or less, which was not enough to support general jurisdiction).[6]

2    **III.    ZANGO SUED THE WRONG PARTY**

3    Zango's dispute appears to be with Kaspersky Moscow, not with the non-exclusive

4    distributor, Kaspersky USA.  Zango seeks to change the way its software and websites are

5    rated in Kaspersky's anti-virus software.  But that objective is better addressed to Moscow,

6    not to Woburn, Massachusetts.  Zango cannot dispute that Kaspersky USA has no control

7    over the design, development, or maintenance of the software.  Kaspersky USA has no control

8    over Kaspersky Moscow.  Kaspersky USA is not Moscow's agent or subsidiary.  Indeed,

9    Kaspersky USA is but one of several distributors.  Furthermore, Kaspersky USA has no

10   control over or relationship with the OEMs and thus no involvement in the allegations related

11   to such OEMs.  *See generally* Gentile Decl. at ¶¶ 5-12 and Gentile Supp. Decl. at ¶¶ 2, 11.

12   As such, this case may be dismissed on summary judgment because Zango sued the

13   wrong entity.  *See, e.g.*, *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 610 (9th Cir.

14   1992) (affirming summary judgment for defendant on plaintiff's personal injury claims

15   because the defendant did not own, operate, or control the premises in which the plaintiff was

16   injured); *Weber v. Time Warner, Inc*., No. C05-1706L, 2006 WL 240751 at * 2 (W.D. Wash.,

17   Jan. 31, 2006) (granting summary judgment for defendants who were not involved in the

18   filming or recording of a CD/DVD that allegedly invaded the plaintiff's privacy).

19   Certainly, it would be unfair to hold Kaspersky USA liable for acts it did not commit

20   and over which it has no control.  Indeed, Zango requests certain injunctive relief, but

21   Kaspersky USA could not perform the requested relief (repairing the software) in any event.

22   Finally, Kaspersky USA is not an agent of Kaspersky Moscow.  At most, Kaspersky

23   USA is an independent contractor.  Indeed, the Non-Exclusive Distribution Agreement

24   _____

25   [6]    Should the Court find that Zango's complaint survives this motion and that the Court has
     jurisdiction over Kaspersky USA, Kaspersky USA requests, in the alternative, that the Court transfer
26   the case to the United States District Court for the District of Massachusetts, in Boston.  Given
     Kaspersky USA's lack of connection with Washington, and its tenuous connection with the events of
     this case, it would be unfair to force Kaspersky USA to defend itself in Washington.  *See* 28 U.S.C. §
27   1406; *Earth Prods*., 2006 WL 2192124 at * 2 (transferring case from Washington to Boston).

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 21

provides that Kaspersky USA is not Kaspersky Moscow's agent and "shall have no authority to bind Licensor in any respect."  Gentile Decl. at ¶ 9.  Kaspersky USA neither maintains the software nor exercises any control over the licensor, Kaspersky Moscow.  *Id.* at ¶¶ 5-11.  As such, Kaspersky USA may not be held liable for any damage allegedly caused by the software or by the actions of Kaspersky Moscow.  *See, e.g., Nelson v. Serwold*, 687 F.2d 278, 282 (9th Cir. 1982) (applying Washington law and holding that defendant was not liable as agent of third parties given that they did not characterize their relationship as one of agency); *see also, e.g., Arnold v. Fremin*, 538 So.2d 624, 625 (La. Ct. App. 1988) (non-exclusive distributor not liable for injury caused by product it imported).[7]

---

[7]     Zango argued during the TRO briefing that, even if Kaspersky USA has no control over the software, the Court should still enjoin Kaspersky USA from selling it.  But that relief is over broad.  It would be improper to make Kaspersky USA stop selling the anti-virus software--which benefits thousands of customers and which block or filters truly malicious viruses, worms, and other malware unrelated to Zango--simply because the software allegedly, sometimes, damages Zango.  In other words, the sum of the software is greater (and more beneficial) than the part that allegedly damages Zango. Indeed, courts have declined to grant injunctions in which only a small part of an otherwise beneficial product infringes the plaintiff's rights.  *See, e.g., Paice LLC v. Toyota Motor Corp*., No. 2:04-CV-211-DF, 2006 WL 2385129 at *5 (E.D. Tex., Aug. 16, 2006) (infringing component was small aspect of the overall vehicle);  *Z4 Technologies, Inc. v. Microsoft Corp*., 434 F. Supp.2d 437, 441 (E.D. Tex. 2006) (denying injunction because infringing component was just a small part of the defendant's overall software).

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 22

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

1

**CONCLUSION**

2
      For the reasons stated above, Kaspersky Lab, Inc., respectfully asks this Court to

3
dismiss this case under Rules 12(b)(2) or 12(b)(6) or, alternatively, to grant to Kaspersky

4
USA summary judgment against Zango on all of its claims.

5

6
DATED this 12th day of June, 2007.     Defendant Kaspersky Lab, Inc.

7

8

9
       By /s/ *Bruce E.H. Johnson*

10
       Bruce E. H. Johnson, WSBA # 7667
       DAVIS WRIGHT TREMAINE LLP

11
       1201 Third Avenue, Suite 2200.
       Seattle, WA 98101

12
       Telephone: (206) 757-8069
       Fax: (206) 757-7079

13
       E-mail: brucejohnson@dwt.com

14
       Erik Paul Belt (appearing *pro hac vice*)
       Lisa M. Fleming (appearing *pro hac vice*)

15
       BROMBERG & SUNSTEIN LLP
       125 Summer Street

16
       Boston, MA 02110

17
       Tel:  (617) 443-9292
       Fax:  (617) 443-0004

18
       E-mail:  ebelt@bromsun.com

19

03267/00501  683690.1

20

21

22

23

24

25

26

27

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## CERTIFICATE OF SERVICE

I certify that on  June 12, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

**Attorneys for Plaintiff**
Jeffrey I. Tilden, WSBA No. 12219
Michael Rosenberger, WSBA No. 17730
Gordon Tilden Thomas & Cordell LLP
1001 Fourth Avenue
Suite 4000
Seattle, WA  98154-1051
jtilden@gordontilden.com

In addition, paper copies of the foregoing document will be mailed by United States Postal Service to non CM/ECF participants, if any.


/s/ *Bruce E.H. Johnson*
Bruce E.H. Johnson, WSBA No. 7667

DEFENDANT KASPERSKY'S MOTION
TO DISMISS OR FOR SUMMARY JUDGMENT
(C-07-0807-JCC) -- 24

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069