THE HONORABLE PARIS K. KALLAS

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| ZANGO, INC., <br><br> Plaintiff, <br><br> v. <br><br> KASPERSKY LAB, INC., <br><br> Defendant. | No. 07-2-16532-1 SEA <br><br> PLAINTIFF ZANGO'S MOTION FOR TEMPORARY RESTRAINING ORDER |

## I. RELIEF REQUESTED

Plaintiff Zango, Inc. ("Zango") is a Bellevue-based company that provides content to its customers via the Internet. On May 21, 2007, Zango learned that an anti-virus program manufactured and distributed by Kaspersky Lab, Inc. ("Kaspersky") is blocking users from downloading Zango's products, and damaging and interfering with the use of Zango software and products by existing Zango customers. In addition, Kaspersky's application has been damaging Zango's website in such a way that users are prevented from downloading Zango products since early March. There is no justification for Kaspersky's attack on Zango's products. Richard Purcell – a world-renowned independent computer privacy expert – has

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 1

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

COPY

conducted an exhaustive review of Zango's products and policies and pronounced them to be benign. *See* Declaration of Richard Purcell (hereinafter "Purcell Decl.").

Kaspersky's extensive, ongoing and irreversible attack on Zango warrants immediate injunctive relief. Here are some of the irreparable consequences Zango will continue to suffer absent injunctive relief:

- Kaspersky prevents Zango from reaching potential customers by blocking computer users who attempt to download and install Zango products from doing so without providing an opportunity for the user to consent to download.

- Zango customers who already have Zango products on their computers are unable to access Zango content. Accordingly, when these customers are unable to access their Zango programs after the installation of Kaspersky software, they unfairly (but understandably) blame Zango for the programs' disappearance. As a result, Kasperksy's product causes Zango to lose existing customers (and their goodwill) on daily basis.

- Because Zango does not collect personal identifying information from its customers, customers that Zango loses due to Kaspersky's attack are lost forever; similarly, Zango has no means of contacting its customers and warning them of the attack. For this reason, Kaspersky isn't just irrevocably erasing Zango products from users' computers, it is also irrevocably erasing hard-earned customers from the rolls of Zango's customer lists.

- Kaspersky software also disables Zango's website in such a manner that when a user opens the website in his or her internet browser, Kaspersky automatically deletes links to download Zango products without providing notice to the user. Thus, again potential future customers are prevented from accessing Zango's products, irrespective of their desire to do so.

Given these uncontested facts, there is no question that Zango will prevail in the claims set forth in the Complaint it quickly filed after learning of Kaspersky's misconduct. As a result of the widespread distribution of Kaspersky software, Zango is suffering massive irreparable harm to its business model and reputation *right now*, and without quick

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 2

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

intervention by this Court, Zango will continue to suffer irreversible harm that will never adequately be compensated at law. Accordingly, Zango seeks a temporary restraining order compelling Kaspersky to immediately remove Zango's software programs from its programs and its detection database, and to send an update to its existing customers.

## II. STATEMENT OF FACTS

Zango is an online media company based in Bellevue, Washington that provides consumers free access to a large catalog of online videos, games, music, tools and utilities. Zango's catalog of content is offered to customers free of charge and is sponsored by advertising that customers agree to view as a condition of using the products. Zango also offers a premium version of its software that gives consumers access to Zango's content catalog without advertising.

Zango takes extensive precautions to ensure that every Zango customer affirmatively and knowingly consents to download, installation and continued usage of Zango software. An independent audit conducted by Richard Purcell, CEO of Corporate Privacy Group, and released on May 7, 2007, concluded that Zango is fully compliant with all reasonable and recommended privacy requirements, and, in particular that Zango's privacy program ensures: (1) user notification of the program or application's existence; (2) user consent to the download or installation of the program or application; and (3) user control of the program or application. *See* Purcell Decl., Ex. B. As a result of Zango's commitment to protecting the privacy of its customers, Zango can be certain, and Mr. Purcell has verified, that all users who have installed Zango's applications or products since January 1, 2006 have done so consensually.
PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 3

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Kaspersky is in the business of developing and marketing various computer protection and security software programs, including anti-virus protection. Kaspersky markets and distributes computer protection and security software programs under its own name, and also sells such programs to distributors and other original equipment manufacturers ("OEMs"). One such program is "Kaspersky Anti-Virus" or "KAV." Kaspersky utilizes KAV in its own computer program, called "Kaspersky Internet Security" ("KIS"), and sells KAV to OEMs. According to their website, Kaspersky has at least 50 and as many as 150 such OEM customers, including industry leaders such as PC Tools, Checkpoint, and AOL.

### A. Kaspersky's software damages Zango's website and prevents users from downloading Zango products from Zango's website.

On March 8, 2007, Zango's testing lab discovered that KIS was damaging a Zango website named "seekmo.com" by removing Zango weblinks from computers running the KIS program. Essentially, when a user running KIS on their computer accessed the seekmo.com website, KIS automatically and without notice to the user scanned the webpage and removed all links that would allow the user to download Zango products from the webpage. Further tests revealed that KIS was damaging and removing promotional links hosted by Zango publishers as well.

Zango contacted Kaspersky on March 9, 2007, regarding the damage being done by KIS. On March 12, 2007, Kaspersky admitted that KIS was damaging Zango's website and requested time to fix the issue. Testing performed by Zango's lab on March 14, 2007 showed that KIS was no longer damaging Zango's webpage.

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 4

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

However, on March 21, 2007, Zango's lab discovered that similar damage (i.e., missing web links) was being caused by at least two OEM customers of Kaspersky's anti-virus application KAV, i.e., the same technology utilized in KIS. Zango was able to resolve the issue with one of these OEMs by notifying it of the problem; the other OEM refused to take any action. Zango also contacted Kaspersky directly and requested that Kaspersky issue an update to its OEM customers of KAV immediately in order to correct the problem. As of this date, Kaspersky has not done so, and Zango's website continues to be damaged by OEM customers of Kaspersky, preventing users from downloading Zango products.

B. **Kaspersky's program and software disables Zango's programs from the computers of Zango customers, and prevents users from downloading Zango products.**

On May 21, 2007, Zango testing of KIS version 6.0.2.621 revealed that, in addition to damaging Zango's website, Kaspersky software blocks installation of Zango software, and also directly attacks and disables Zango products already installed on a user's computer. First, a user who has KIS enabled is unable to download and install Zango products. Zango is thus prevented from reaching potential customers. Moreover, in the course of blocking installation of Zango's software, KIS identifies Zango products as "malicious" and as an "infection," although Kaspersky knows full well that this is a false and misleading description.

Second if KIS is enabled on a computer that already has Zango products downloaded and installed, KIS damages Zango's application in such a manner that Zango users are unable to access Zango's content, i.e., the videos, games, etc. that Zango provides in exchange for the user's agreement to view targeted advertising. In addition, every time Zango software

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY RESTRAINING ORDER – 5

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

attempts to deliver a targeted ad, KIS opens a window prompting the user to click either "Allow" or "Deny." Even if the user clicks "Always Allow," KIS continues to require the user to choose "Allow each time." Users are thus left with a computing experience consisting of endlessly being required to click "Allow" in order to continue browsing the Internet, while being prevented from accessing the Zango content that they wanted access to in the first place. It is not difficult to see that this experience will turn users against Zango.

Although Zango has requested that Kaspersky remedy this situation, and issue an update to its OEMs, as of this date Kaspersky has taken no action to remedy the ongoing damage. Accordingly, Zango filed the Complaint in this matter on May 22, 2007, and provided Kaspersky with notice of intent to seek a temporary restraining order from the ex parte department of the King County Superior Court on May 24, 2007.

### III. STATEMENT OF ISSUES

Whether the Court should enter a temporary restraining order compelling defendant Kaspersky to immediately remove Zango's software programs from its programs and its detection database, and to send an update to its existing customers.

### IV. EVIDENCE RELIED UPON

Zango relies upon the Declarations of Robert Purcell, Gregg Berretta, Steven Fogg and the exhibits attached therein.

### V. AUTHORITY

A.  **Legal Standard**

Injunctive relief should be granted where a plaintiff shows: (1) that it has a clear legal or equitable right; (2) that it has a well-grounded fear of immediate invasion of that right; and

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 6

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

(3) that the acts complained of are or will result in actual and substantial injury. *Rabon v. City of Seattle*, 135 Wn.2d 278, 284, 957 P.2d 621 (1988). These criteria must be examined "in light of equity" by balancing the relative interests of the party, and, where appropriate, the public interest. *Id.* Further, under *Spokane County v. AFSCE*, 76 Wn.App. 765, 770, 888 P.2d 735 (1995), when the injunctive relief sought is a temporary restraining order, the plaintiff must show irreparable harm. As will be demonstrated, Zango satisfies each requirement in this case and the balancing of the equities favors granting a temporary restraining order.

### B.   Zango has a Clear Legal or Equitable Right.

When deciding whether a party has a clear legal or equitable right, this court examines the likelihood that the moving party will prevail on the merits. *Kucera v. DOT*, 140 Wn.2d 200, 216, 995 P.2d 63 (2000).

Zango's first cause of action against Kaspersky, intentional interference with Zango's contractual relations or business expectancy, requires the following elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that the defendant had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendant interfered for an improper purpose or used improper means; and (5) resultant damage.

*Leingang v. Pierce County Medical Bureau*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997) (internal citations omitted).

The likelihood that Zango will prevail on this cause of action is overwhelming. Zango has a valid contractual relationship with its existing customers and a valid business expectancy in future customers of Zango products. *See Newton Ins. Agency & Brokerage,*

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 7

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

*Inc. v. Caledonian Ins. Group, Inc.*, 114 Wn. App. 151, 158, 52 P.3d 30 (2002) ("A valid business expectancy includes any prospective contractual or business relationship that would be of pecuniary value."). Kaspersky clearly had knowledge of the relationship between Zango and its customers as well as Zango's prospective business prospects and equally clearly purposefully interfered with those relations and prospects by disabling Zango's software and by preventing any future customers from being able to install Zango software. *See id.* ("Interference with a business expectancy is intentional 'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'") (quoting Restatement (Second) Of Torts § 766B cmt. d). Moreover, Kaspersky interfered for an improper purpose – advancement of its own commercial interests at Zango's expense – and its bad faith is evident by its continuing refusal to remedy the ongoing damage being inflicted on Zango. Finally, the resultant damage to Zango is self-evident: Kaspersky's actions have caused and continue to cause substantial financial damage by severing the relationship between Zango and its current and potential future customers (in addition to the damage Zango is suffering to its reputation and business model).

Zango is very likely to prevail on its second cause of action against Kaspersky as well. Liability for trade libel attaches where a defendant: (1) publishes false and disparaging statements concerning the quality of the plaintiff's product; (2) does so with the intent that such publication results in harm to the pecuniary interest of the plaintiff, or either recognizes or should recognize that such harm is likely; and (3) does so with actual malice (i.e., either knows that the statement is false or acts in reckless disregard of its truth or falsity). Restatement (Second of Torts) § 623A; *see also Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 820

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 8

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

(9th Cir. 1995) (assuming that Washington recognizes trade libel based on Washington Court of Appeals decision citing Restatement § 623A for the proposition that plaintiffs seeking damages in disparagement face a higher burden of proof than those seeking damages in defamation). Here, Kaspersky has labeled, and continues to label, Zango's products as an "infection," as "malicious." Labeling Zango products in this manner is likely to mislead existing customers into believing that Zango applications are attempting to damage their computers or somehow compromise their privacy, which, as Kaspersky knows, is not the case. Zango has worked hard to achieve a good reputation in the marketplace, and to foster relationships with customers, content-providers, and distribution channels. Kaspersky's baseless attacks on Zango's products threaten all that Zango has worked to achieve.

Zango will likewise be able to establish its cause of action under the Washington Consumer Protection Act ("CPA"). A plaintiff makes a *prima facie* showing of a CPA violation when it shows (1) an unfair or deceptive act; (2) in trade or commerce; (3) impacting the public interest; (4) injuring Plaintiff in its business or property; and (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Kaspersky specifically markets itself as a purveyor of security software that protects consumers from so-called "malware." Kaspersky's unfair and deceptive conduct thus has a public interest impact, and the conduct clearly injured and will continue to injure Plaintiff's business, reputation, and goodwill.

C.   **Zango Has a Well-Grounded Fear of Immediate Invasion of Its Rights**

When a defendant has already invaded the plaintiff's rights, the fear of invasion is self-evidently "well-grounded." *See generally Piepkorn v. Adams*, 102 Wn. App. 673, 685,

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 9

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

10 P.3d 428 (2000) (well-grounded fear of immediate invasion of plaintiff's right established by fact that the right had already been invaded). Such is the case here as Kaspersky's attacks on Zango's website and programs have been ongoing since at least March 8, and likely since before that date.

D.  **Kaspersky's Conduct Has Caused, and Will Continue to Cause "Irreparable" and "Actual and Substantial" Injury to Zango.**

Courts routinely recognize that significant loss of customers or business goodwill and damage to business reputation may constitute substantial or irreparable harm justifying injunctive relief. *See, e.g., Multi-Channel TV Cable Co. v. Charlottesvlle Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied."); *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989) ("[H]arm to goodwill, like harm to reputation, is the type of harm not readily measurable or fully compensable in damages -- and for that reason, more likely to be found 'irreparable.'"); *Ginorio v. Gomez*, 301 F. Supp. 2d 122, 134 (D.P.R. 2004) (plaintiffs sought an injunction to stop the defendant from revoking their insurance licenses; court found that plaintiff had established irreparable injury where evidence showed that the "the insurance business is one based on trust and . . . the revocation of plaintiffs licenses, even if temporary, would result in unmeasurable harm to plaintiffs' reputation[,]" and that plaintiffs "existing clients and any potential new ones would have to take their business elsewhere.").

Here, as a result of Kaspersky's conduct, Zango has suffered damages to its customer base, its reputation, and its business model. In addition to the direct financial damages being

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 10

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

inflicted by Kaspersky, Zango faces the ongoing prospect of permanent loss of customers to competitors in the marketplace, loss of goodwill, and damage to its reputation. These are not losses that are easily recouped or which may be cured solely by recovery of money damages.

### E. The Balance of Equities Favors Granting a Temporary Restraining Order.

The purpose of a temporary restraining order is to preserve the status quo pending further court proceedings. *State ex rel. Payless Drug Stores v. Sutton*, 2 Wn.2d 523, 531, 98 P.2d 680 (1940). The status quo is "the last, actual, peaceable, noncontested status which preceded the pending controversy." *Id.* at 532. This Court has considerable discretion in granting or withholding this injunctive relief, and whether injunctive relief should be granted is determined in light of the relative equities of the parties. *Rupert v. Gunter*, 31 Wn. App. 27, 30, 640 P.2d 36 (1982). Here, Zango will suffer incalculable harm if the temporary restraining order is not granted. Day by day, Zango is losing its customers and suffering damage to its goodwill and reputation. Conversely, the relief requested by Zango asks very little of Kaspersky, and would have no effect on its existing customer base or future customers. Given the significant ongoing damages being suffered by Zango, and the ease with which Kaspersky may remedy the situation, balancing of the equities favors granting the present motion.

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 11

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## VI. CONCLUSION

For the foregoing reasons, this Court should issue a temporary restraining order compelling Kaspersky to remove Zango's software programs from its programs and detection database, and to send an update to its existing customers.

DATED this 25th day of May, 2007.

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP

_/s/ Kelly Corr_
Kelly P. Corr, WSBA #00555
Steven W. Fogg, WSBA #23528
Attorneys for Plaintiff
Zango, Inc.

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – 12

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900