The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ZANGO, INC.,

              Plaintiff,

      v.

KASPERSKY LAB, INC.,

              Defendant.

NO.  07-CV-0807 JCC

ZANGO'S OPPOSITION TO
KASPERSKY'S MOTION TO
DISMISS

Noted on Motion Calendar:
July 6, 2007

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS
No. 07-CV-0807

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Dockets.Justia.

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................... 1

II.    FACTS .................................................................................................. 3

       A.     The Relevant Facts For Purposes of the Motion to Dismiss        3

              1.     Zango is Not Malware or Badware........................................ 3

              2.     Ironically, KIS Acts as Badware........................................... 4

              3.     Kaspersky Is Singling Out Zango, and Doing So Intentionally ........... 4

              4.     Kaspersky Misleads Users .................................................... 5

       B.     Kaspersky Appears to Hide a Critical Fact Showing Common Control
              of the American and Russian Companies                            5

III.   ARGUMENT ........................................................................................ 7

       A.     Defendant's Motion Incorrectly Relies on Declarations Submitted by
              Defendant When the Focus Should be on Whether Zango's Complaint
              Contains a Short and Plain Statement Entitling it to Relief        7

       B.     The Tortious Interference Claim Should Not Be Dismissed          7

              1.     Defendant's Contention That Zango Cannot Prove that
                     Kaspersky Acted with an Improper Motive or By Improper
                     Means is Particularly Unsuited to a Motion to Dismiss ....................... 7

              2.     Elements of the Tortious Interference Claim........................... 8

              3.     Final Thoughts on Tortious Inference.................................... 11

       C.     Zango States a Claim Under the Consumer Protection Act          12

       D.     Zango Has Stated a Claim for Trade Libel                         13

       E.     Zango Has Not Sued the Wrong Entity                              13

       F.     Kaspersky Is Not an "Interactive Computer Service" and Thus Is Not
              Immune From Liability                                            14

              1.     Interactive Computer Service ............................................. 14

              2.     "Action Taken in Good Faith"............................................. 15

              3.     "Otherwise Objectionable" ................................................ 16

       G.     Kaspersky Cannot Invoke the Common Interest Privilege.          17

       H.     This Court Has General Jurisdiction Over Kaspersky              17

              1.     Kaspersky's Continuous and Systematic Contacts With
                     Washington ...................................................................... 17

              2.     Courts Recognize General Jurisdiction Over "E-tailers" Like
                     Kaspersky......................................................................... 19

       I.     Given That Zango's Claims Arise from Kaspersky's Sales in
              Washington, Specific Personal Jurisdiction Exists                22

              1.     Kaspersky Purposefully Avails Itself of Washington Because It
                     Sells Software to Washington Residents Over its Interactive
                     Website ............................................................................ 22

              2.     Zango's Claims Arise Out Of or Relate To Kaspersky's
                     Washington-Related Activities ............................................ 23

       J.     At Minimum, This Court Should Deny the Personal Jurisdiction
              Motion and Allow Discovery                                       24

IV.    CONCLUSION....................................................................................... 24

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**TABLE OF AUTHORITIES**

**Cases**

*Auvil v. CBS "60 Minutes"*, 67 F.3d 816 (9th Cir. 1995)............................................ 13

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), *cert. denied*, 541 U.S. 1085 (2004)............. 14, 15

*Burbo v. Harley C. Douglass, Inc.*, 125 Wn. App. 684, 106 P.3d 258 (2005) ........................... 12

*Butcher's Union Local No. 498 v. SDC Inv., Inc*, 788 F.2d 535 (9th Cir. 1986)......................... 24

*Chan v. Society Expeditions, Inc.*, 39 F.3d 1398 (9th Cir. 1994) ....................................... 17

*Coremetrics, Inc. v. AtomicPark.com, LLC*, 370 F. Supp. 2d 1013 (N.D. Cal. 2005)...... 17, 19, 20

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005)....................................................... 7

*Earth Prods., Inc. v. Meynard Designs, Inc.*, 2006 U.S. Dist. LEXIS 56232
    (W.D. Wash. July 31, 2006) ...................................................................... 21

*Emery v. BioPort Corp.* 2006 U.S. Dist. LEXIS 79230 at *9 (E.D. Wash. Oct. 31, 2006) ......... 21

*Expedia, Inc. v. Reservationsystem.com, Inc.*, 2006 U.S. Dist. Lexis 90848 at *6
    (W. D. Wash. Dec. 14, 2006)................................................................. 17, 19

*Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072 (9th Cir. 2003) ................................... 21

*Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005) ................................... 21

*Gordon v. Virtumundo, Inc.*, 2006 U.S. Dist. Lexis 34095 (May 24, 2006) ........................ 22

*Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 649 P.2d 828 (1982) ......................... 12

*Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778,
    719 P.2d 531 (1986)............................................................................... 12

*Lakin v. Prudential Secs.*, 348 F.3d 704 (8th Cir. 2003) ............................................... 19

*Moe v. Wise*, 97 Wn. App. 950 (1999)..................................................................... 17

*Nutraceutical Corp. v. Vita-Cost.com, Inc.*, 2006 U.S. Dist. Lexis 33762
    (D. Utah May 25, 2006) ........................................................................ 20

*Oja v. United States Army Corps of Eng'rs*, 440 F.3d 1122 (9th Cir. 2006) ........................ 21

*Pleas v. City of Seattle*, 112 Wn.2d 794, 774 P.2d 1158 (1989)........................... 7, 9, 10

*Qwest Comms. Int'l, Inc. v. Sonny Corp.*, 2006 U.S. Dist. Lexis 29832
    (W.D. Wash. May 15, 2006)............................................................... 22, 23

*Rio Properties, Inc. v. Rio Int'l Interlink*,  284 F.3d 1007 (9th Cir 2002).................................. 23

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004)................................ 22

*Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992) ............................. 24

*Sintra, Inc. v. Seattle*, 119 Wn.2d 1, 829 P.2d 765 (1992) .............................................. 8

*Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Ore. 201, 582 P.2d 1365 (Or. 1978)........... 9

*Wood v. Battle Ground Sch. Dist.*, 107 Wn. App. 550 (2001)........................................... 17

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006)....................... 23, 24

*Ziegler v. Indian River Country*, 64 F.3d 470 (9th Cir. 1995).............................................. 24

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)............................ 22

**Statutes**

47 U.S.C. § 230.............................................................................................. 14, 15

RCW 4.28.185 ................................................................................................ 17

**Other Authorities**

Restatement (Second) of Torts § 623A...................................................................... 13

Restatement (Second) of Torts, § 767........................................................................ 7, 8, 9

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS
No. 07-CV-0807

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## I.    INTRODUCTION

Kaspersky claims that "Zango is suing anti-virus software for being anti-virus software." Motion at 2:1.  No, Zango is suing Kaspersky because Kaspersky's software, Kaspersky Internet Security ("KIS"), behaves like the very "malware" or "badware" from which it purports to protect consumers.  Zango alleges, and will prove at trial, that Kaspersky's software disables a consumer's Zango software *without the consumer's consent* and *despite the consumer having knowingly and intentionally contracted* to receive Zango's applications.  Just as a police officer who engages in criminal activity enjoys no immunity simply because he has been entrusted to fight criminal activity, Kaspersky does not get a "free pass" to engage in tortious activity merely because it sells anti-spyware software.

StopBadware.org is an initiative led by Harvard Law School, Oxford University, and prominent technology companies to "provide reliable, objective information about downloadable applications in order to help consumers to make better choices about what they download on to their computers."[1]  This organization defines "badware" as software that "engages in potentially objectionable behavior without:  [f]irst, prominently disclosing to the user that it will engage in such behavior, in clear and non-technical language, and [t]hen, obtaining the user's affirmative consent to that aspect of the application."[2]  This is *exactly* how KIS behaves in relation to Zango software that the user has willfully and knowingly installed on his or her computer.

Kaspersky defends its behavior on the grounds that Zango signed a consent order with the Federal Trade Commission governing Zango's method of subscribing new customers and that other anti-spyware purveyors deal with or treat Zango the same way.  The former is irrelevant

---

[1] www.stopbadware.org/home/about.

[2] www.stopbadware.org/home/guidelines#badware.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 1
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

and the latter is false.  The FTC consent agreement resulted from misuse of Zango's software by third-party affiliates of the company – a problem that Zango corrected more than 18 months ago. The relevant question is what Zango offers customers *today*.  Now, *every* user of Zango is presented with a clear, non-technical opportunity to consent to installation of the Zango software, as well as simple ways to uninstall Zango if the user chooses to do so.  As to Kaspersky's claim that it merely does what the rest of the industry does to Zango, Kaspersky is wrong—in fact, the leading anti-spyware purveyors do not harm Zango.

Assuming the truth of plaintiff's allegations, as this Court must for the purposes of a motion to dismiss, the jury will conclude:

- That all Zango users affirmatively consent to Zango's installation on their computers and thus Zango is not malware or badware.
- That KIS software itself behaves like badware vis-à-vis Zango by blocking the user's ability to utilize Zango, without the user's consent.
- That Kaspersky's behavior is intentional and violates Kaspersky's own representations to the consumer and this Court.
- That KIS falsely labels Zango as malicious and that Kaspersky knows or should know such characterization is false and libelous.
- That such behavior is unfair and deceptive within the meaning of Washington's Consumer Protection Act.

The jury could find for Zango on all its causes of action on these facts and, thus, the motion to dismiss should be denied.

As to Kaspersky's request to dismiss for lack of personal jurisdiction, Kaspersky's own admissions show it does substantial business in Washington and therefore general jurisdiction exists.  Specific jurisdiction also exists because Kaspersky's sales to Washington residents constitute "purposeful availment" and Zango's claims relate to these contacts by Kaspersky with

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 2
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

the forum. Nevertheless, if the Court has any questions concerning this issue, the Court should deny the motion to permit discovery into facts relating to jurisdiction.

## II.    FACTS

Kaspersky's motion to dismiss cites inappropriately (and extensively) to the Declaration of Shane Coursen and other allegedly "undisputed" evidence—evidence that Zango does, in fact, dispute. For purposes of a motion to dismiss, Kaspersky's view of the facts is irrelevant – the question is whether the allegations of the complaint, both direct and inferential, construed in the light most favorable to plaintiff, could sustain a recovery for Zango.

**A.    The Relevant Facts For Purposes of the Motion to Dismiss**

**1.    Zango is Not Malware or Badware**

As described in the introduction, the joint Harvard-Oxford initiative defines badware as a software application that engages in potentially unwanted behavior without disclosing such behavior to the user in clear and non-technical language and then obtaining the user's affirmative consent. Accepted as true, Zango's allegations establish that Zango is not badware:

> Before installing Zango's programs, customers are provided with plain language disclosures describing Zango's software and how it works. . . . Every customer who downloads Zango software programs receives a post-installation confirmation message, complete with a link for more information, including uninstall instructions. Within 72 hours of downloading Zango software, customers receive a reminder that they have installed Zango programs, which includes information about how the software works along with uninstall information. . . . In addition, upon download, Zango programs provide a system tray icon from which the customer can access program information, customer support and uninstall instructions.

Complaint ¶ 7.

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

### 2.    Ironically, KIS Acts as Badware

Zango alleges, and will prove, that KIS disables Zango software that a customer has previously installed and prevents a potential Zango customer from accessing Zango—no matter how vigorously or frequently the customer attempts to consent.  Disabling a consensually installed software program without the user's consent (or, indeed, without even providing a means by which consent could be given) is the very definition of badware.

The Complaint describes Kaspersky's attacks on Zango software as follows:

- <u>KIS precludes use of Zango</u>:  "Once this version [version 6.0.2.621] is installed, it blocks any installation of Zango software, and blocks users from accessing Zango content."  Complaint ¶ 13.

- <u>The alleged choice provided by Kaspersky does not exist</u>:  "[O]nce KIS was running on a user's computer, a user was allegedly given a choice to "Allow" Zango's programs to run.  However, the 'Allow' choice offered by KIS proved illusory, as KIS continually caused warnings to appear on the user's screen no matter how many times the Zango customer clicked 'Allow.'"  Complaint ¶ 12.

To elaborate on the last point, when an existing Zango customer downloads KIS, KIS has the following effects:  (1) the user cannot under any circumstance access Zango content; (2) KIS blocks the delivery to the user of the advertisements that the user has agreed to view, thus depriving Zango of its revenue source; (3) the "Zango toolbar" that was installed when the user signed up for Zango is automatically (and without notice) eliminated; and (4) the user has no choice but to suffer these consequences.

### 3.    Kaspersky Is Singling Out Zango, and Doing So Intentionally

Zango has performed tests in its quality assurance labs to determine how KIS affects Zango competitors and how Kaspersky's competitors deal with Zango.  Results of these tests are supportive of Zango's claim.  First, as alleged in the Complaint, "testing revealed that KIS did not treat the software of a known Zango competitor in the same manner."  Complaint ¶ 12.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 4
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

While Kaspersky contends it has acted responsively and in good faith, Kaspersky overlooks Zango's May 8 email informing Kaspersky that KIS does not allow Zango customers to use Zango. Complaint ¶ 12. Kaspersky never responded to this email and *to this day* KIS continues to interfere with a Zango customer's ability to continue to use and enjoy Zango.

Second, the three market leaders in anti-spyware, McAfee, Norton (Symantec), and Webroot, do *not* prevent a user from accessing Zango. Declaration of Greg Berretta ¶ 2. Their programs identify the presence of Zango (without *mis*-identifying it as malicious, an infection, or a virus) and give the user a choice to leave Zango on the computer. *Id.* When the user opts to utilize Zango, the software respects that choice and thus the user can simultaneously enjoy Zango while receiving the benefits of the anti-spyware program.

### 4.    Kaspersky Misleads Users

Kaspersky's web site provides users and potential users with certain assurances regarding the "advantages" and features of Kaspersky's KIS—protection from viruses, spyware, hackers and spam. (http://usa.kaspersky.com/products_services/internet-security.php.) Kaspersky fails to inform consumers that KIS will: (1) disable an application, Zango, that the user knowingly installed, (2) preclude the user from seeing harmless content the user wants to see; and (3) preclude the user from viewing advertisements that the user contractually agreed to receive as a quid pro quo for access to Zango's content.

### B.    Kaspersky Appears to Hide a Critical Fact Showing Common Control of the American and Russian Companies

If publicly available information is correct, Kaspersky's motion omits a significant fact that its duty of candor under Fed. R. Civ. P. 11(b) would seem to require it to disclose. Kaspersky claims that the American and Russian companies "merely share a name" and that

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO DISMISS - 5
No. 07-CV-0807

"the two companies are separate; one does not own or control, in whole or in part, the other." Motion at 17-19. Zango disputes this characterization.

Defendant's web site states that its Chief Executive Officer is Natalya Kaspersky. Ms. Kaspersky may have a controlling or significant ownership stake in Kaspersky Lab (Russia). Her biography on Wikipedia (http://en.wikipedia.org/wiki/natalya_kaspersky) indicates that she and her ex-husband, Yevgeny Kapsersky, "own about 80 percent of the company." If defendant's CEO, Ms. Kaspersky, does in fact have substantial ownership in the Russian company, defendant's motion misrepresents the supposed independence of the two companies.

Moreover, Kaspersky ignores any formal distinction between the companies when its suits its purpose—that is, when marketing its products. Defendant's web site holds out "Kaspersky Lab" as *a single company* with a "regional office" in the United States:

> Founded in 1997, Kaspersky Lab is an international information security software vendor. Kaspersky Lab is *headquartered in Moscow*, Russia and has *regional offices* in the U.K., France, Germany, the Netherlands, Poland, Japan, China, and the United States. Further expanding the company's reach is its large partner network comprising over 500 companies globally.

http://usa.kaspersky.com/about-us/ (emphasis added).

In any event, Zango's claim does not depend upon establishing the American company's control over the Russian company or vice-versa. All communications between Zango and Kaspersky have been with or involved the American affiliate. Whether defendant wrote the software or not, defendant's sole business is marketing to United States consumers the software that is interfering with Zango's actual and prospective contractual relationships with consumers.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO DISMISS - 6
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

### III.    ARGUMENT

**A.    Defendant's Motion Incorrectly Relies on Declarations Submitted by Defendant When the Focus Should be on Whether Zango's Complaint Contains a Short and Plain Statement Entitling it to Relief**

Kaspersky's motion turns the pleading standard on its head. Although this Court surely needs no reminder, a motion to dismiss focuses on *plaintiff's* allegations, not defendant's untested declarations. To the extent this Court considers the evidence submitted by Kaspersky pursuant to Federal Rule 12(b), thereby converting this motion into one for summary judgment, Zango requests that it be denied because Zango has already submitted substantial evidence creating genuine issues of material facts, *see*, *e.g.*, Dkt #24-25, and because Zango should be allowed to conduct discovery to gather additional facts (or disprove untested assertions).

Assuming this Court treats the motion as it is denominated, a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

**B.    The Tortious Interference Claim Should Not Be Dismissed**

**1.    Defendant's Contention That Zango Cannot Prove that Kaspersky Acted with an Improper Motive or By Improper Means is Particularly Unsuited to a Motion to Dismiss**

The Washington Supreme Court, in its seminal case on tortious interference, cited the comments to the Restatement (Second) of Torts, § 767, "Factors in Determining Whether Interference is Improper." *Pleas v. City of Seattle*, 112 Wn.2d 794, 803, 774 P.2d 1158 (1989). These comments state that whether an intentional interference with a business expectancy is improper, and therefore tortious, is a fact- and judgment-laden inquiry.

---

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 7
No. 07-CV-0807

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. *The decision therefore depends upon a judgment and choice of values in each situation. . . .*

[W]hen there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the manner in which they would operate upon the facts in questions.

Restatement (Second) § 767, comments b, l (emphasis added). Kaspersky's claim that its interference is proper is thus unsuited even to summary judgment, much less a motion to dismiss.

### 2.    Elements of the Tortious Interference Claim

To survive a 12(b)(6) challenge, Zango must allege facts supporting the following elements: (1) the existence of a valid contractual relationship or business expectancy; (2) Kaspersky had knowledge of that relationship or expectancy; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) Kaspersky interfered for an improper purpose or used improper means; and (5) resultant damages. *Sintra, Inc. v. Seattle*, 119 Wn.2d 1, 28, 829 P.2d 765 (1992). Although Kaspersky claims that Zango has not identified business expectancies that were damaged by Kaspersky's conduct, Motion at 16:1-3, the Complaint clearly alleges facts sufficient to support the claim.

#### a.    Valid Contractual Relationship or Business Expectancy

Zango sufficiently pled its business relationships with its customers. Complaint ¶¶ 5-7.

#### b.    Knowledge and Intentional Interference

Zango pled Kaspersky's knowledge of, and intentional interference with, Zango's business expectancies given that Zango advised Kaspersky of such interference on May 8 and Kaspersky failed to cure damage being done. Complaint ¶¶ 12-13.

---

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 8
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

### c.    Resultant Damages

Zango pled that KIS blocks access to Zango by existing and potential customers and that this has harmed Zango. Complaint ¶¶ 12-16. These allegations must be accepted as true, despite Kaspersky's reliance on materials outside the pleadings.

### d.    Improper Means—Misrepresentation

"Interference can be 'wrongful' by reason of a statute or other regulation, or a recognized rule of common law, or an established standard of trade or profession." *Pleas*, 112 Wn.2d at 804. Here, the improper means Kaspersky employs is misrepresentation, prohibited by a "recognized rule of common law."

> The nature of the actor's conduct is a chief factor in determining whether the conduct is improper or not, despite its harm to the other person. . . . Fraudulent misrepresentations are also ordinarily a wrongful means of interference and make an interference improper.

Restatement (Second), § 767, comment c; *accord, Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Ore. 201, 210 at n.11, 582 P.2d 1365 (Or. 1978) ("fraudulent misrepresentations made to a third party are improper means of interference with plaintiff's contractual relations"). Hence, if a defendant fruit wholesaler induces a grocery chain to cease doing business with plaintiff fruit wholesaler by telling the grocer, falsely, that plaintiff's fruit is contaminated, such inducement to breach the contract is tortious.

Zango contends Kaspersky's representations to the parties' shared customers are fraudulent in two respects. First, Kaspersky promises its customers it will protect them from *harmful* things—viruses, spyware, spam and hackers. Kaspersky does not inform its customers that KIS will deprive them of the opportunity to utilize software that is not harmful, that they intentionally downloaded, that they could easily and completely uninstall at any time, and that

they want to continue using. Second, Kaspersky's representations are fraudulent insofar as KIS characterizes Zango as "malicious" and an "infection." Complaint ¶ 14.

Thus, as in the fruit wholesaler hypothetical, Kaspersky is wrongfully interfering with Zango's relationships with its actual and potential customers through falsely representing Zango to be harmful. However, Kaspersky goes one step further – preventing those customers from continuing to do business with Zango *even if they want to*. It is as if the defendant fruit wholesaler intercepted and disabled the delivery trucks of its rival.

Kaspersky contends it has acted in good faith, having on one occasion fixed a problem that Zango brought to its attention. Motion at 15:13-19. This contention entirely ignores Zango's allegation that Zango informed Kaspersky via email on May 8 that the choice KIS purportedly gave users to allow Zango to run was illusory and effectively prevented users from accessing Zango. Complaint ¶ 12. Kaspersky never responded to this and, to this day, KIS continues to behave in the same manner, thus harming Zango. Kaspersky also contends that Zango "makes no allegation that Kaspersky specifically singles out or targets Zango." Motion at 15:20. Zango, however, makes *exactly* this allegation: "Testing revealed that KIS did not treat the software of a known Zango competitor in the same manner." Complaint ¶ 12.

Finally, Kaspersky makes another disputed factual assertion, claiming it "has no improper purpose." Motion at 15:10. Given Zango's allegation of improper means, there is no need to prove improper purpose or motive. *Pleas*, 112 Wn.2d at 804 (holding that liability may arise from improper motives *or* improper means). However, Zango believes Kaspersky's action in singling out Zango has an improper motive. Since KIS is available from Kaspersky on a free 30-day trial, which Kaspersky hopes to convert into a sale at the end of the trial period,

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO DISMISS - 10
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Kaspersky has an interest in identifying as many "threats" as possible to the user's computer—even if they are not actual threats. This "scareware" business model exaggerates threats to increase sales.[3]

### 3.    Final Thoughts on Tortious Inference

Fifteen years ago, the conduct described in the Complaint would not have been possible because the technology did not exist. While the Court must exercise its gatekeeper role in regard to factual allegations that, even if proven, do not state a claim, juries ultimately should be permitted to determine whether, in the evolving e-commerce arena, certain business conduct is inside or outside the bounds of "fair play." This is not only correct under the law, but is also necessary here for practical reasons.

Thomas Hobbes wrote that in the absence of civil society, the state of humankind is nothing but a war of all against all. So it will be with e-commerce if our civil society, through the courts, does not enforce order. Zango *could* modify its software to make it impossible for a Zango customer to operate KIS (after giving the user a choice as to whether or not the user wishes to disable or block KIS). This would force Zango customers to choose between uninstalling Zango and selecting a security application from a provider other than Kaspersky. Zango has no desire to launch a software war. However, if Zango cannot protect its customer relationships and goodwill, it—and others to follow—may be forced to consider taking the offensive.

---

[3] Scareware includes "software products, that while serving some desired purpose, also produce a lot of frivolous and alarming warnings or threat notices, most typically commercial firewall software. This class of program tries to increase its perceived value by bombarding the user with constant warning messages that do not increase its effectiveness in any way." http://en.wikipedia.org/wiki/scareware.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 11
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

## C.    Zango States a Claim Under the Consumer Protection Act

To state a claim under the Consumer Protection Act, Zango need only allege facts constituting (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) injury to Zango; and (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Kaspersky challenges only elements 1 and 3. Contrary to Kaspersky's motion, Zango does contend that KIS is unfair or deceptive in at least the following respects:

- it is unfair and deceptive to characterize one's product as blocking only harmful software or activity when, in fact, it also prevents the user from utilizing Zango's beneficial software;

- it is unfair and deceptive to both Zango and consumers to characterize KIS as offering consumers a choice when, as described above, the software refuses to accept the user's choice;

- it is unfair and deceptive to characterize Zango as malicious when it is not and the scanning application industry leaders do not so characterize Zango.

An action is unfair or deceptive if it "has the capacity to deceive a substantial portion of the purchasing public." *Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 759, 649 P.2d 828 (1982). Zango alleges that Kaspersky and its software not only has the capacity to deceive, but in fact is doing so.

Zango also satisfies the public impact element. "Factors to be considered in assessing potential public impact are whether the facts suggest a pattern of conduct, the potential for repetition, and the likelihood that others will be affected." *Burbo v. Harley C. Douglass, Inc.*, 125 Wn. App. 684, 700, 106 P.3d 258 (2005). Kaspersky admits it has sold and continues to sell KIS to Washington residents. Zango contends KIS damages Zango's relationships with its customers and potential users and future sales of KIS will do the same. Moreover, Kaspersky has OEM (original equipment manufacturer) customers, such as a company called Zone Labs,

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO DISMISS - 12
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

which incorporates Kaspersky's product in its own (called "Zone Alarm"), thus exacerbating the potential for repetition and the likelihood of harm.

**D.    Zango Has Stated a Claim for Trade Libel**

In order to survive a motion to dismiss, a plaintiff claiming trade libel must allege facts indicating, directly or implicitly, that "(1) the defendant published a knowingly false statement harmful to the interests of another and (2) intended such publication to harm the plaintiff's pecuniary interests." *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 820 (9th Cir. 1995) (per curiam) (citing Restatement (Second) of Torts § 623A).

Again, Zango has alleged sufficient facts to state a claim for trade libel. The Complaint alleges Kaspersky publishes knowingly false statements when it notifies users that Zango is "malicious." Complaint ¶ 14. The intentional harm element is satisfied if defendant "either recognizes or should recognize that it is likely to do so." Restatement, § 623A(a). Zango notified Kaspersky of the problems with KIS, Complaint ¶ 12, so Kaspersky surely recognized the likelihood that Zango was being financially harmed.

**E.    Zango Has Not Sued the Wrong Entity**

Regardless of the relationship between the Russian company and what defendant's web site calls the American "regional office," the defendant is properly named. Even if all programming is done in Moscow, the named defendant is selling the product in Washington and has had knowledge of its wrongful conduct through Zango's communications with defendant's employee, Shane Coursen. Zango can prove all elements of the tort and CPA claims against defendant; neither claim requires that defendant have actually created the software.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO DISMISS - 13
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**F.    Kaspersky Is Not an "Interactive Computer Service" and Thus Is Not Immune From Liability**

Kaspersky seeks immunity under 47 U.S.C. § 230(c)(2) of the Communications Decency Act. Dkt. No. 28 at 12:6-14. "The primary goal of the Act was to control the exposure of minors to indecent material." *Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003), *cert. denied*, 541 U.S. 1085 (2004). In addition, Congress was concerned with promoting Internet free speech and e-commerce. *Id.* at 1027; 47 U.S.C. § 230(a)(3). None of these concerns is implicated here and the immunity claimed by Kaspersky does not apply.

To invoke section 230(c)(2)(A), Kaspersky must show it: (1) is a "provider" (2) of an "interactive computer service" (3) that has acted in good faith via that interactive computer service (4) to restrict access to or availability of material (5) the provider considers "obscene, lewd, lascivious, filthy, excessively violent, harassing or otherwise objectionable." Kaspersky does not establish elements 2, 3 and 5. Kaspersky also seeks immunity under section 230(c)(2)(B), which immunizes the provision of the technical means to restrict access to the objectionable content identified in subsection (c)(2)(A). As relevant here, there is no distinction between the proof required to establish immunity under subsections (c)(2)(A) and (B).

**1.    Interactive Computer Service**

Kaspersky is not an "interactive computer service." Kaspersky's motion omits the full definition of "interactive computer service," which provides:

> The term "interactive computer service" means any information service, system or access software provider *that provides or enables computer access by multiple users to a computer server*, including specifically a service that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO DISMISS - 14
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

47 U.S.C. § 230(f)(2) (emphasis added). Contrary to Kaspersky's argument, it is not enough to be an "access service provider" to be an interactive computer service – one must also provide multiple users access to a server. *Batzel,* 333 F.3d at 1030 ("as long as the service or system allows 'multiple users' to access 'a computer server,' the service or system fits this definition"). Thus, the classic example of an "interactive computer service" is an Internet service provider (ISP), such as America Online and Earthlink, that provides subscribers with access to the Internet. Additionally, other "cyberspace services" also fit the definition, such as Amazon.com, eBay, and newsgroups. *Batzel,* 333 F.3d at 1030 n.15.

KIS is nothing like an ISP or electronic bulletin board and its motion cites no published authority that a "blocking and filtering program," in and of itself, constitutes an "interactive computer service."[4] *Batzel* assumed a distinction between the two, noting that "[s]ome blocking and filtering programs depend on the cooperation of web site operators and access providers." *Batzel,* 333 F.3d at 1029. Kaspersky does not argue, nor can it, that KIS "enable[s] computer access by multiple users to a computer server." KIS is software loaded onto an individual's computer; it does not "enable access" to anything. In this regard, it is no different than Microsoft Windows or any Windows-based application one might load onto one's PC.

### 2. "Action Taken in Good Faith"

A provider of an interactive computer service is not liable for "an action voluntarily taken in good faith to restrict access . . . ." This element is not satisfied for two reasons.

---

[4] As to the unpublished California state case cited by Kaspersky, since that appellate court deems the decision unworthy of precedential value, Zango respectfully suggests this Court should do likewise. In any event, that case is distinguishable because defendant therein maintained a web site on which he created a service "that third parties could interact with to determine whether an IP address was an open relay," thus providing access by multiple users *Pallorium, Inc. v. Jared,* 2007 Cal. App. Unpub. LEXIS 241 at *20-21 (Cal. App. Jan. 11, 2007).

First, this phrase must be read to require the action in question to be "voluntarily taken in good faith *via the interactive computer service*. . . ." In other words, a party claiming immunity must not only provide an interactive computer service (which Kaspersky does not), but the conduct in question must also have a nexus to the service "that provides or enables computer access by multiple users to a computer server." A person who sells anti-spyware software would not have immunity for restricting access to material he deems obscene by burning down an adult bookstore. Here, Kaspersky does not require an interactive computer service to sell KIS—KIS is sold in a box at the Fry's Electronics superstore in Renton.

Second, a question of fact exists as to Kaspersky's good faith. The market leaders do not treat Zango as does KIS. This suggests Kaspersky singles out Zango because Zango has lots of customers and Kaspersky is using "scareware" tactics to increase the number of people who convert the trial offer to a paid Kaspersky subscription.

### 3.      "Otherwise Objectionable"

Kaspersky claims that KIS "allows users to restrict access to adult content web sites or other objectionable material, including Zango adware itself." To Zango's knowledge, KIS does not restrict access to adult sites; a KIS user can open their web browser and access a pornographic web site in seconds. Moreover, only an anti-adware extremist—one who objects to the industry per se, regardless of a user's consent—could espouse Kaspersky's claim that Zango itself is objectionable. Every current Zango customer has consented not once, but multiple times, to the continued presence of Zango on his or her computer. Complaint ¶ 7. Claiming that Zango is objectionable is akin to claiming the New York Times' and Washington Post's web sites are "objectionable" because those sites trigger pop-up ads.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO DISMISS - 16
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

**G.    Kaspersky Cannot Invoke the Common Interest Privilege.**

For several reasons, the common interest privilege does not defeat Zango's claims.  First, assuming as we must the truth of Zango's allegations, Kaspersky and its users do not have a shared interest *in KIS's treatment of Zango*—KIS actually thwarts the user's desire to access Zango, and thus there is tension, not unity, in the interests of Kaspersky and its users.  Second, the privilege is qualified, *Moe v. Wise*, 97 Wn. App. 950, 957 (1999), and a qualified privilege can be overcome if Kaspersky acts "in reckless disregard for the falsity of the statement."  *Wood v. Battle Ground Sch. Dist.*, 107 Wn. App. 550, 569-570 (2001).  Zango alleges that Kaspersky knows that KIS falsely characterizes Zango.  Complaint ¶ 14.  Third, the common interest privilege would at most be a defense to the trade libel claim; it would not immunize conduct that constitutes tortious interference or a violation of the Consumer Protection Act.

**H.    This Court Has General Jurisdiction Over Kaspersky**

Washington's long-arm statute, RCW 4.28.185, "is coextensive with the outer limits of federal due process." *Expedia, Inc. v. Reservationsystem.com, Inc.*, 2006 U.S. Dist. Lexis 90848 at *6 (W. D. Wash. Dec. 14, 2006), citing *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994).  "Thus, this Court need only determine whether jurisdiction in this district comports with due process."  *Id*.  Assuming this Court does not hold an evidentiary hearing and rules on the written submissions, Zango need only make a prima facie showing of jurisdiction and this Court must resolve any disputed facts in Zango's favor.  *Coremetrics, Inc. v. AtomicPark.com, LLC*, 370 F. Supp. 2d 1013, 1015-16 (N.D. Cal. 2005) (citations omitted).

**1.    Kaspersky's Continuous and Systematic Contacts With Washington**

General jurisdiction exists when a defendant engages in "substantial" or "continuous and systematic" contacts with the forum state.  *Expedia* at *7*.  Based on its own admissions,

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 17
No. 07-CV-0807

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Kaspersky's contacts meet this standard. First, Kaspersky admits that 3.15% of on-line sales are made to Washington residents (which alone account for 1.2% of total sales). Dkt. 28-3 ¶ 9. In addition, Kaspersky sells through "resellers," who primarily sell Kaspersky's products to businesses. *Id.* at ¶ 7(a). Kaspersky admits that Washington resellers account for another nearly 1% of its sales. Thus, these two channels *alone* account for more than 2% of Kaspersky's sales. In addition, however, Kaspersky also sells through Washington-based Amazon.com (and possibly other Internet retailers) and KIS is also sold in Washington through "brick and mortar" retail stores like Fry's. Berretta Decl. ¶¶ 3-4. Hence, Kaspersky's claim that Washington residents constitute just 1% of sales, Motion at 20: 15, is plainly incorrect.

Second, Kaspersky incorrectly states it only has contacts with Washington "in two ways: through the small amount of business it gains from Washington customers and by its Internet website." Motion at 20: 3. In fact, defendant's contacts with the state include: (1) direct sales from its web site; (2) contractual relationships with Washington resellers who sell KIS to Washington businesses; (3) Washington businesses who buy KIS from resellers; (4) the Washington residents who buy KIS through traditional electronics retailers; (5) the Washington residents who buy KIS through on-line retailers; and (6) an apparent contract with Washington-based MSN.com for marketing—that is, paying to be a "sponsored site" and thus given a priority placement in search results, Berretta Decl. ¶ 3; and (7) contracts, if any, with Washington-based businesses (such as Amazon.com) that sell the products at retail.

Although Kaspersky contends that its sales are relatively small, the percentage figure is less important that the actual volume.

> *Percentage of a company's sales in a given state are generally irrelevant.*
> Instead, our focus is on whether a defendant's activity in the forum state is

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 18
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

"continuous and systematic." Many companies conduct millions of dollars in sales worldwide yet only do a small percentage of their sales in any one state. *E.g., L.L. Bean, Inc.*, 341 F.3d at 1074 (sales in California for L.L. Bean, Inc. only accounted for six percent of its total sales). However, our relevant inquiry is not whether the percentage of a company's contacts is substantial for that company; rather, *our inquiry focuses on whether the company's contacts are substantial for the forum.*

*Lakin v. Prudential Secs.*, 348 F.3d 704, 709-11 (8th Cir. 2003) (emphasis added) (citations omitted). Kaspersky's motion does not reveal the *value* of its sales, but discovery would undoubtedly show it to be substantial. Further, each sale in Washington marks the beginning of *continuous* contacts with the forum as Kaspersky sends software updates to its customers here.

### 2.    Courts Recognize General Jurisdiction Over "E-tailers" Like Kaspersky

Several district courts have recognized that continuous and substantial sales by an "e-tailer" in the forum state justify the exercise of general jurisdiction. In *Expedia*, Judge Martinez of this Court denied a motion to dismiss for lack of personal jurisdiction, finding that general jurisdiction existed based on defendant's contacts with Washington that are less significant than are present here. Although Washington residents accounted for "less than one percent of Bookit's total bookings," 2006 U.S. Dist. Lexis 90848 at n.2, this Court held that this "doesn't change the fact that Bookit's sales through its website are intentional and entirely within Bookit's control, and sales do actually occur in this state." *Id*. at *8-9. The case for general jurisdiction is stronger here given: (1) the quantum of contacts here are greater (i.e., in excess of 2%); and (2) Kaspersky has contractual relationships with Washington resellers and, potentially, MSN.com and Washington retailers such as Amazon.com.

In another recent case, the court similarly found that general jurisdiction existed over an "e-tailer" like Kaspersky. *Coremetrics,* 370 F. Supp. 2d 1013. The plaintiff was a California

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO DISMISS - 19
No. 07-CV-0807

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

corporation suing for breach of contract. Defendant was on line retailer of software based in Wisconsin. The court denied defendant's motion to dismiss for lack of jurisdiction, reasoning:

> AtomicPark admits that it is an "e-tailer, which essentially means [it is] a retailer on line." In other words, AtomicPark basically runs a "virtual store." A virtual store is largely designed so as to approximate physical presence in a forum; for example, consumers may window shop by browsing the website and actual sales are made directly to consumers online. . . . In short, AtomicPark provides virtually all the same services that would be provided by a "bricks and mortar" software dealer. . . .

> AtomicPark has actually made sales to California consumers through its virtual store, and, even more important, the volume of sales made to California consumers -- both in absolute numbers and as a percentage of total sales -- is substantial. Over a ten-month period, from April 2003 to February 2004, California consumers bought more than $3.3 million worth of products from AtomicPark, or 14.71 percent of AtomicPark's total sales.

*Id.* at 1021-22 (citations omitted).[5]  Although Kaspersky's percentage of sales in Washington is not as great as that of AtomicPark in California, it is still substantial. Also, as noted above, Kaspersky has additional contacts with the forum through its contractual relationships with Washington-based resellers, and possible contracts for marketing (MSN.com) and resale (Amazon.com). Berretta Decl. ¶ 3.

Kaspersky claims this Court once declined to exercise general jurisdiction "on similar facts," citing *Earth Prods., Inc. v. Meynard Designs, Inc.*, 2006 U.S. Dist. LEXIS 56232 (W.D.

---

[5]Similarly, in *Nutraceutical Corp. v. Vita-Cost.com, Inc.*, 2006 U.S. Dist. Lexis 33762 (D. Utah May 25, 2006), the court held general jurisdiction existed, notwithstanding the defendant's lack of employees or other physical presence in the state, where defendant's interactive web site allowed Utah residents to purchase defendant's products directly.

> Vitacost's website allows an internet user to purchase Vitacost's products online. Consumers can search for specific products; place items in virtual shopping carts; view product descriptions, price and pictures; sign up for EZShip, Vitacost's automatic shipment program to reorder products; and purchase products through "Check-Out" by providing credit card and shipping information. The court concludes that Vitacost purposefully and deliberately set up and operated a website with a high level of interactivity, which encourages customers accessing its website to order its products from which Vitacost receives economic benefits from the product sales.

*Id.* at *14-15. As in that case, Kaspersky's web site allows Washington consumers to place items in a virtual "shopping cart" and to make purchases via credit card.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO DISMISS - 20
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Wash. July 31, 2006).  Motion at 20: 16.  The facts of that case, however, are hardly "similar."

The defendant therein had sales worth $300,000 in Washington between 2001 and December

2004, but the court stated that such "cannot be said to be continuous given that Meynard *has not*

*sold or advertised any products since January 1, 2005." Id*. at *4 (emphasis added).  Kaspersky

also relies on another easily distinguished case, *Emery v. BioPort Corp*. 2006 U.S. Dist. LEXIS

79230 at *9 (E.D. Wash. Oct. 31, 2006).  In *Emery*, the court observed that the defendant

"has not sold AVA to *any* Washington consumers." *Id*. at *9.  Here, in contrast, Kaspersky

admits it sells to Washington residents.

     Finally, Zango notes the persuasive authority of the Ninth Circuit's holding that retailer

L.L. Bean is subject to personal jurisdiction in California given that the company "maintains a

highly interactive, as opposed to 'passive,' web-site from which very large numbers of California

consumers regularly make purchases and interact with L.L. Bean sales representatives."

*Gator.com Corp. v. L.L. Bean, Inc*., 341 F.3d 1072, 1078 (9th Cir. 2003).  This opinion was

vacated when it was noted for rehearing en banc and the case settled before an en banc ruling

issued.  In a subsequent ruling in the same case, one Ninth Circuit judge noted "[t]hat decision

no longer has the force of law, but it is a clear statement by three judges of this court that, in their

view, there is general jurisdiction over L.L. Bean in California." *Gator.com Corp. v. L.L. Bean,*

*Inc*., 398 F.3d 1125, 1142 (9th Cir. 2005) (Fletcher, W., J., dissenting).  Zango notes that the

Ninth Circuit itself continues to cite the opinion favorably.  *See, e.g., Oja v. United States Army*

*Corps of Eng'rs*, 440 F.3d 1122, 1128 n.3 (9th Cir. 2006).

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 21
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

I.    **Given That Zango's Claims Arise from Kaspersky's Sales in Washington, Specific Personal Jurisdiction Exists**

This Court could also exercise specific jurisdiction over defendant.  Specific personal

jurisdiction requires that:

> (1) the non-resident defendant must purposefully direct his activity or
> consummate a transaction with the forum or a resident thereof; or purposefully
> avail himself of the privilege of conducting activities in the forum; (2) the claim
> must arise out of or relate to the defendant's forum-related activities; and (3) the
> exercise of jurisdiction must be reasonable.  Plaintiff bears the burden of proving
> the first two prongs of the test, and if it can do so, the burden shifts to Defendant
> to present a "compelling case" that jurisdiction would be unreasonable.

*Qwest Comms. Int'l, Inc. v. Sonny Corp.*, 2006 U.S. Dist. Lexis 29832, at *3-4 (W.D. Wash.

May 15, 2006) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir.

2004)); *see also Gordon v. Virtumundo, Inc.*, 2006 U.S. Dist. Lexis 34095, at *9 (May 24, 2006).

Kaspersky has not addressed, much less met, its burden of showing a "compelling case" that

jurisdiction is unreasonable.  Hence, Zango focuses solely on the first two prongs set out above.

1.    **Kaspersky Purposefully Avails Itself of Washington Because It Sells Software to Washington Residents Over its Interactive Website**

When a defendant operates an interactive website through which it consummates

transactions with Washington residents, the plaintiff has met the purposeful availment prong.

*Qwest*, 2006 U.S. Dist. Lexis 29832, at *4-7 (applying the *Zippo* "sliding scale" test for

active/passive websites announced in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119

(W.D. Pa. 1997)).  In *Qwest*, defendant's contacts with Washington were far fewer than here—

just three (3) sales—yet Judge Pechman found that defendant purposefully availed itself of the

privilege of doing business in Washington:

> Defendant used its website to advertise, sell, and ship its product into customers'
> Washington homes. . . . Not only did Defendant operate an interactive--not
> passive--website, it engaged in the "something more" that is required to support

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 22
No. 07-CV-0807

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

jurisdiction: it intentionally made sales to Washington residents and shipped its product here. Defendant therefore purposefully availed itself of Washington.

*Qwest*, at *6. Kaspersky's own submissions show it does the same thing as the defendant in Qwest, but on a larger scale.

To the extent the purposeful availment prong depends on satisfying the "effects test," the test is met here. In relevant language from *Qwest*, this Court stated that the defendant's conduct also "satisfies the 'effects doctrine' because it (1) was intentional, (2) was expressly aimed at Washington in that the website lists Washington as an available shipping location and Defendant intentionally shipped its product into this state, and (3) allegedly caused harm here." *Qwest*, at *6, citing *Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019-20 (9th Cir 2002) .

That the first two prongs of the effects test are satisfied is obvious. In selling software to Washington residents, Kaspersky (1) performed intentional acts that were (2) aimed at the forum. As to the third prong (harm), defendant's knowledge that Zango would suffer harm is borne out by the undisputed pre-suit communications between the parties, in which Zango's Gregg Berretta notified Kaspersky's Shane Coursen of the harm being done to Zango by KIS. Dkt. # 5 ¶¶ 4, 8; Dkt. # 15, ¶ 19. Moreover, upon such notice, Kaspersky knew it was interfering with Zango's customer relationships in Washington and other states, as well as causing harm to Zango in the state in which it is headquartered. "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).

## 2. Zango's Claims Arise Out Of or Relate To Kaspersky's Washington-Related Activities

Zango has had more than 53,000 customers in Washington during the last 30 days, and Zango claims that Kaspersky is causing harm to its customer base. Declaration of Tom Allan,

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO DISMISS - 23
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Declaration of Michael Rosenberger, Ex. 1.  Additionally, of course, Zango is a Washington

resident and it is suffering harm in the forum.

Zango need only show that "but for Defendant's utilization of its website to pass its

product into Washington, Plaintiff would not have allegedly suffered harm *in Washington*."

*Qwest*, at *7 (emphasis added) (applying *Ziegler v. Indian River Country*, 64 F.3d 470, 474 (9th

Cir. 1995)).  As stated in *Yahoo!*, Zango need not demonstrate that all or even most harm

occurred in Washington.  Kaspersky's interference with Zango's relationship with its

Washington customers would not have occurred but for its use of its web site to sell software to

Washington residents.

**J.      At Minimum, This Court Should Deny the Personal Jurisdiction Motion and Allow Discovery**

If the Court is not yet convinced that it may exercise personal jurisdiction over the

defendant, Zango requests that defendant's motion be denied to permit discovery on jurisdiction

issues.  The Ninth Circuit has held that discovery "should ordinarily be granted where 'pertinent

facts bearing on the question of jurisdiction are controverted or where a more satisfactory

showing of the facts is necessary.'"  *Butcher's Union Local No. 498 v. SDC Inv., Inc*, 788 F.2d

535, 540 (9th Cir. 1986); *see also Siderman de Blake v. Republic of Argentina*, 965 F.2d 699,

713 (9th Cir. 1992).

## IV.      CONCLUSION

For the reasons stated above, Zango respectfully requests that this Court deny the motion,

whether it is considered as a motion to dismiss or motion for summary judgment.  As to the

jurisdictional issue, Zango believes the evidence supports the exercise of personal jurisdiction

but, at minimum, the motion should be denied to permit discovery.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 24
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this 2nd day of July, 2007.

GORDON TILDEN THOMAS & CORDELL LLP


s/ Michael Rosenberger
Jeffrey I. Tilden, WSBA #12219
Michael Rosenberger, WSBA #17730
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone: 206-467-6477
Facsimile: 206-467-6292
jtilden@gordontilden.com
mrosenberger@gordontilden.com
Attorneys for Plaintiff Zango, Inc.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 25
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

### CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2007, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the following

persons:

Bruce EH Johnson
brucejohnson@dwt.com

Erik Paul Belt
ebelt@bromsun.com,

Lisa M Fleming
lfleming@bromsun.com

s/ Michael Rosenberger
Michael Rosenberger, WSBA #17730
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Telephone:  206-467-6477
Facsimile:  206-467-6292
mrosenberger@gordontilden.com
Attorneys for Plaintiff Zango, Inc.

ZANGO'S OPPOSITION TO KASPERSKY'S MOTION TO
DISMISS - 26
No. 07-CV-0807

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292