1  Honorable John C. Coughenour

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZANGO, INC.,

        Plaintiff,

   v.

KASPERSKY LAB, INC.,

        Defendant.

No. C-07-0807-JCC

**DEFENDANT KASPERSKY'S REPLY BRIEF FURTHER SUPPORTING ITS MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR: July 6, 2007**

Erik Paul Belt (appearing *pro hac vice*)
Lisa M. Fleming (appearing *pro hac vice*)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 443-9292
Fax: (617) 443-0004
E-mail: ebelt@bromsun.com

Bruce E. H. Johnson, WSBA # 7667
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200.
Seattle, WA 98101
Telephone: (206) 757-8069
Fax: (206) 757-7079
E-mail: brucejohnson@dwt.com

*Attorneys for Defendant Kaspersky Lab, Inc.*

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 0

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

**INTRODUCTION**

After charging Zango with engaging in deceptive practices by foisting on unsuspecting customers adware or spyware, the Federal Trade Commission fined Zango $3 million and ordered that Zango "shall not require consumers to: . . . close or deactivate third-party firewalls, operating system firewalls, anti-spyware or anti-adware software, or virus protection software . . ." FTC's Decision and Order at p. 7, § VII (attached as an exhibit to Shane Coursen's declaration, Docket # 15). Zango, however, is attempting to circumvent this order by seeking to compel Kaspersky USA, in effect, to deactivate the anti-virus/anti-adware software it sells to consumers (rather than asking the consumers directly to do so).

The FTC has forced Zango to change its business model. Under the FTC order, Zango must now warn its patrons that they are about to install adware and that such adware has potentially harmful effects. Desperate to shed the notoriety of the FTC action, and hoping to portray itself as a victim of some far-fetched conspiracy by anti-adware zealots, Zango has taken the offensive against beneficial anti-virus companies like Kaspersky and PC Tools.

This case, however, belongs not in a court of law but rather in the court of public opinion. If a customer is dissatisfied with the performance of Kaspersky's software (*e.g.*, because it allegedly blocks content from Zango's websites), the customer has the option to (a) remove or deactivate Kaspersky's software; (b) buy another company's security product, (c) complain to Kaspersky, or (d) forego anti-virus protection altogether. Indeed, as Zango itself points out, Kaspersky gives the user a free 30-day trial for this purpose. Kaspersky has not heard any complaints.

And that lack of complaint is key: it demonstrates a lack of causation, damages, and jurisdiction. Zango has not alleged--and could not possibly prove--that any users of the Kaspersky security software product have actually tried but failed to download Zango. Zango merely offers its own lab tests that the Kaspersky software allegedly blocks Zango pop-up ads or downloads. But that claim is not equivalent to an allegation that Zango's present or future

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 1

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

customers in Washington--or anywhere else, for that matter--also employ Kaspersky security software and have been thwarted in their efforts to download Zango.

Again, this case does not belong in court. If Zango wants to change the way that the Kaspersky security software treats Zango's programs, Zango should try to persuade Kaspersky's security analysts in Moscow that the downloads from Zango's websites have no potential for harm. Kaspersky USA has no control over Kaspersky Moscow's decision, but it will certainly facilitate communications between Zango and Moscow--as it has in the past. If Zango cannot convince Moscow, however, that does not mean that Zango may instead go to court to force Kaspersky Moscow to change its opinion.

## ARGUMENT

### I.  KASPERSKY'S ALLEGED CONDUCT IS IMMUNE FROM LIABILITY

Kaspersky is certainly an "interactive computer service" within the meaning of the safe harbor provision of the Communications Decency Act, 47 U.S.C. §230(c)(2). Contrary to Zango's narrow reading of the statute, the term "interactive computer service" is not limited to a traditional Internet service provider, like America Online. *Batzel v. Smith*, 333 F.3d 1018, 1030 and n.15 (9th Cir. 2003) (safe harbor provision is applied broadly and is not limited to services that provide access to the Internet as a whole). In Kaspersky's opening brief, it explained that the term "interactive computer service" includes an "access software provider that provides or enables computer access by multiple users to a computer service." 47 U.S.C. § 230(f)(2) (emphasis added). In turn, an "access software provider" includes a provider of software that allows users to "filter, screen, allow, or disallow content" or to "pick choose, analyze, or digest content." *Id*. at § 230(f)(4). Kaspersky's security software certainly enables multiple users to filter, screen, analyze, etc., content from the Internet.

The legislative history of this safe harbor further clarifies that Kaspersky's activities are immunized. The focus in the congressional debate was on the ability of the marketplace to provide technology for filtering content, rather than, for example, leaving it to the FCC to

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 2

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

police content. For example, one backer of the legislation emphasized that this safe harbor "encourages the online services industry to develop new technology, <u>such as blocking software</u>, to empower parents to monitor and control the information their kids can access." 141 Cong. Rec. H8472 (daily ed. Aug. 4, 1995) (statement of Rep. Goodlatte) (emphasis added). The co-sponsor of the House bill, Representative Wyden, reported that "[u]nder our approach and the speed at which these technologies are advancing, the marketplace is going to give parents the tools they need . . . ." *Id*. at H8471. Indeed, Rep. Wyden even displayed on the House floor examples of blocking software to make clear that technology--as opposed to government censorship--was the preferred method of filtering unwanted content. *Id*. at H8470. Security software allows parents or any computer users to determine what content they allow into their homes. Kaspersky, therefore, is providing the blocking or filtering software that the safe harbor provision endorses and immunizes from liability.

Moreover, Zango cannot seriously claim that its programs are harmless. Zango admits that it provides access to sexually explicit and otherwise objectionable content. In particular, Kaspersky USA's president, Steve Orenberg, discovered when he downloaded a program from Zango's website that Zango itself warns, albeit in fine print, that its adware may supply "Adult-oriented ads" to Zango patrons. Zango further admits that such "Adult-oriented ads" may contain, for example, sexually explicit images or content concerning drugs, violence, gore, on-line gambling, and the like. *See* Declaration of Stephen Orenberg Supporting Kaspersky Lab's Motion to Dismiss for Summary Judgment ("Orenberg Decl.") at ¶ 14 and attached Exhibit A (Zango's End User License Agreement). The Kaspersky software is designed to detect and filter such threats to children's sensibilities.[1]

---

[1] Zango characterization of its product as unobjectionable is irrelevant. Under the plain wording of the safe harbor, whether Zango's programs are objectionable is a subjective consideration to be made by the party claiming immunity. *See* 47 U.S.C. §230(c)(2)(A)-(B) (granting immunity when the access software provider or user restricts access to what it alone "considers to be . . . otherwise objectionable . . . material" or provides the means for others to do so). *See also Pallorium, Inc. v. Jared*, No. G036124, 2007 WL 80955 at * 7 (Cal. Ct. App., Jan. 11, 2007) (not reported) ("whether Jared's filter was over-inclusive is irrelevant so long as he himself deemed the material to be 'obscene . . . or otherwise objectionable'").

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 3

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

Futhermore, contrary to Zango's misreading of the safe harbor provision, Kaspersky USA is immune from liability even without proof of "good faith." Kaspersky claims immunity under 47 U.S.C. § 230(c)(2)(B), which protects those who provide "the technical means to restrict access" to objectionable content. This provision omits the "good faith" requirement found in § 230(c)(2)(A). This omission further demonstrates congressional intent to protect software companies that provide "the technical means to restrict access" to objectionable content such as Zango's adware.

In any event, as discussed further below, Kaspersky USA did not act in bad faith and thus is entitled to immunity under either subsections A or B.

## II.     KASPERSKY'S ALLEGED CONDUCT IS NOT TORTIOUS

Zango's opposition confirms that Zango has not, and cannot, allege the bad faith, intent, or improper purpose necessary to support its business tort claims (intentional interference, unfair business practices, and trade libel). In its opposition brief, Zango points to only two allegations of bad faith, neither of which proves tortious conduct or intent.

First, Zango relies on its allegation in ¶ 12 of its complaint that Kaspersky ignored Zango's May 8th e-mail concerning alleged damaged caused by the KIS software. *See* Opposition Brief [Docket # 41] at 10. But Zango fails to point out that it filed this suit a mere two weeks later, on May 22, 2007. Two weeks is hardly evidence of bad faith or intent. In any event, delay alone in responding to Zango's request to fix the Kaspersky software (or indifference to that request) could not be considered evidence of bad intent. *See, e.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1160 (9th Cir. 2005) (City's delay in approving license application did not show discriminatory intent, especially because applicant had no right to timely approval of the application); *Insurance. Co. of State of Penn. v. Highlands Ins. Co.*, 59 Wash. App. 782, 786-87, 801 P.2d 284, 287 (1990) (delay in processing insurance claims did not show bad faith that would support an unfair or deceptive trades practices claim under Washington law).

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 4

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

Second, Zango claims that KIS does not treat some unnamed competitor's program in the same manner as Zango's program and that Kaspersky does not treat Zango as do the market leaders in the security software field. *See* Opposition Brief at 10 and 16. But merely because the Kaspersky software treats Zango differently--if true--does not mean that Kaspersky specifically targets Zango or has an intent to harm Zango. At worst, it merely shows that the Kaspersky software--which has won numerous awards for performance--is more sensitive to potential security threats than are the competitors' products. The Kaspersky software does not target or even recognize Zango *per se*. Rather, the software analyzes potential threats by examining the program to be downloaded, no matter the source. *See* Orenberg Decl. at ¶¶ 2, 9-10.

Zango's complaint, which is devoid of factual specifics, alleges at most that the Kaspersky security software is incompatible with Zango's programs (because it allegedly blocks the downloads or pop-up ads) and that maintaining this incompatibility is somehow tortious.[2] Courts have rejected that theory, however. For example, in *Logic Process Corp. v. Bell & Howell Publ'ns Sys. Co.*, 162 F. Supp.2d 533 (N.D. Tex. 2001), the court dismissed a computer equipment seller's tortious interference claims against a software company that changed the format of certain software so that it could no longer be read by the plaintiff's computers. The plaintiff alleged that the defendant's decision to change the format interfered with the plaintiff's existing computer upgrade and maintenance contracts and prevented the plaintiff from obtaining future business. *Id.* at 535-36. The court rejected such claims, reasoning that the defendant had no duty under law, contract, or otherwise to keep its software

---

[2] Given the First Amendment implications of the alleged conduct, Zango was required to plead more specific facts than would otherwise be required. *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002). Here, Kaspersky's allegedly tortious threat warnings--*e.g.*, allegedly rating Zango as "malware" or the like--must be treated as opinion protected under the First Amendment and thus cannot be seen as tortious. *See, e.g., Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 871 (8th Cir. 2005) (publisher of air charter safety ratings was not libel for giving company an unfavorable rating); *Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 855-56 (10th Cir. 1999) (bond rating agency's "negative outlook" rating of school district's general obligation bonds was protected opinion).

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 5

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

1 compatible with the plaintiff's computer equipment. The defendant was simply exercising its
2 right to improve its own product. *Id*. at 541. *See also, e.g.*, *California Computer Prods., Inc.*
3 *v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 744 (9th Cir. 1979) (holding in the anti-trust context
4 that IBM, which had redesigned certain products so that they became incompatible with other
5 companies' products, "was under no duty to help [the plaintiff] or other peripheral equipment
6 manufacturers survive or expand").

7 In this case, Zango has failed to allege that Kaspersky USA (or Kaspersky Moscow for
8 that matter) had any duty to Zango to make its security software compatible with Zango's
9 programs. Kaspersky has no duty to designate Zango's downloads as harmless. Kaspersky
10 had no duty to respond to Zango's complaints, reconfigure its security software, or change its
11 threat designations. If the Kaspersky software is truly incompatible with Zango (it is not),
12 Kaspersky customers who wish to download Zango always have the option of temporarily
13 disabling the Kaspersky security software to allow the download. *See* Orenberg Decl. at ¶ 12.

14 Therein lies the illogic of Zango's position. Zango seems to allege a simple Hegelian
15 universe in which a user of Kaspersky software is necessarily at odds with Zango, forever
16 locked in Hobbesian combat such that the user can never enjoy Zango. Zango fails to account
17 for another possibility, which is that a Kaspersky user wishing to enjoy Zango can simply
18 temporarily disable the anti-virus/adware protection of the Kaspersky software.

19 **III.    ZANGO HAS FAILED TO ALLEGE CAUSATION AND DAMAGES**

20 For purposes of a motion to dismiss, a court need not accept as true conclusory
21 allegations or unwarranted inferences. *See Vasquez v. Los Angeles County*, __ F.3d __, No.
22 04-56973, 2007 WL 1412671 at * 2 (9th Cir., May 15, 2007) (affirming dismissal). Other
23 than conclusory allegations and illogical inferences, Zango has failed to allege, and cannot
24 possibly prove, either causation or damages.

25 For example, Zango has failed to identify what specific agreements or business
26 expectancies were actually damaged by Kaspersky USA's alleged conduct. Moreover, Zango
27

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 6

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

has failed to allege that any actual users of Kaspersky software wanted to download Zango but were prevented from doing so. Zango has failed to allege, for example, a noticeable drop in business proximately resulting from Kaspersky's conduct.

Zango's allegations are speculative, at best. Indeed, given the miniscule amount of sales that Kaspersky has made in Washington, and given Kaspersky's small market share (1.7% of the U.S. retail security software market, as detailed in the next section), it would be virtually impossible for Zango to show any significant losses resulting from the Kaspersky software. As such, Zango's claims must be dismissed. *See, e.g., Fidelity Mortgage Corp. v. Seattle Times Co.,* 131 Wash. App. 462, 470-71, 128 P.3d 621, 625-26 (2005) (mortgage company could not name a single borrower who used a different lender after the defendant published allegedly misleading rate quotes); *Hazelquist v. Guchi Moochie Tackle Co.*, No. C04-316FDB, 2004 WL 1599378 at *1-2 (W.D. Wash., May 12, 2004) (dismissing tortious interference and Washington Consumer Protection Act counterclaims because defendant-counterclaimant failed to allege specific injury, such as what specific business relationships were harmed). *See also New.Net, Inc. v. Lavasoft*, 356 F. Supp.2d 1090, 1113-14 (C.D. Cal. 2004) (dismissing adware purveyor's trade libel and tortious interference claims against anti-adware software distributor because plaintiff could not show that it lost sales or that such sales resulted from the anti-adware software); *Bradley v. Google, Inc.*, No. C 06-05289 WHA, 2006 WL 3798134 at * 4 (N.D. Cal., Dec. 22, 2006) ("Generic allegations that there was an interference with an unnamed third party are insufficient as a matter of law"). [3]

---

[3] The *Lavasoft* case cited above is particularly instructive because it involves a similar scenario: a purveyor of adware, like Zango, suing a distributor of anti-adware software, like Kaspersky USA. The *Lavasoft* court recognized that the adware purveyor's relationship with consumers could "hardly rise to the level of 'economic relationships' as there is no business dealing between the unsuspecting users and Plaintiff." *Lavasoft,* 356 F. Supp.2d. at 1114. Here, Zango has no business relationships with Zango patrons, who download the Zango programs free of charge.

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 7

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

## IV.   ZANGO FAILS TO SHOW JURISDICTION OVER KASPERSKY USA

### A.   Kaspersky USA Lacks Minimum Contacts with Washington

Zango has presented no evidence showing that Kaspersky USA's contacts with Washington are so pervasive, continuous, and systematic that Kaspersky USA could reasonably anticipate being "haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) To the contrary, the evidence shows that only a tiny fraction of Kaspersky's revenues derive from Washington residents. Moreover, Kaspersky has no direct business contacts in Washington, despite Zango's contention that Kaspersky software is distributed in Fry's stores. But Fry's has only one store in Washington (out of 34 nationwide), and that store, at best, has resulted in the sale of only about 58 units of Kaspersky software since the alleged wrongful conduct began. Orenberg Decl. at ¶ 6.

As detailed in Kaspersky USA's opening brief [Docket # 28], Kaspersky USA has no employees, offices, or property in Washington. Kaspersky USA does not target ads to Washington consumers. And Kaspersky USA derives only about 1% of all revenues--whether from online sales or sales through resellers--from Washington customers. *See* Gentile Supplemental Declaration [Docket # 28-3] at ¶¶ 6-10.

Contrary to Zango's argument, this Court has held that such *de minimus* sales and contacts do not confer general jurisdiction. *See*, *e.g*., *Stairmaster Sports/Medical Prods., Inc. v. Pacific Fitness Corp*., 916 F. Supp. 1049, 1052-53 (W.D. Wash. 1994)(Dimmick, C.J.) (dismissing case for lack of jurisdiction and finding no general jurisdiction, even though defendant derived 3% of its revenues from sales in Washington). *See also, e.g*., *Injen Tech. Co. v. Advanced Engine Mgmt., Inc.*, 270 F. Supp.2d 1189, 1194 (S.D.Cal. 2003) (holding that defendant's sales in forum state, which "account [ed] for only 2% of its total business, are not the kind of 'systematic and continuous'contacts that would warrant the exercise of general jurisdiction"); *Molnlycke Health Care AB v. Dumex Med. Surgical Prods., Ltd*., 64 F. Supp.2d 448, 452 (E.D. Pa. 1999) (because sales in forum were not meaningful, accounting for less

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 8

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

than 1% of revenues, "it is impossible for the court to find that the small percentage of sales constitute 'continuous and systematic business within the forum state' ") (citation omitted).[4] Here, without anything more than *de minimus* sales, it is not reasonable to anticipate being "haled into court" in Washington.

### B.  Kaspersky USA's Alleged Conduct Did Not Occur in Washington

Zango also cannot establish specific jurisdiction. The key question for purposes of deciding specific jurisdiction is whether the alleged misconduct occurred in or was directed to the forum. Zango fails to point to any such misconduct in Washington. If any alleged misconduct occurred (and there was none), it occurred in Moscow, where Kaspersky Moscow develops, writes and controls the Kaspersky anti-virus software product. It is not the sale of Kaspersky software that is allegedly wrongful; rather it is the operation or configuration of the software and Kaspersky Moscow's communications with Zango.

Zango's allegations go to alleged defects in the Kaspersky software--an issue over which Kaspersky USA has no control.[5] Zango alleges that the Kaspersky software misidentifies Zango's adware as "malicous" or as an "infection" and that Kaspersky researchers (based in Moscow) knew those labels are false. Complaint at ¶ 14.

Zango further alleges that Kaspersky failed to respond promptly to Zango's May 8th e-mail regarding alleged damage caused by KIS. *Id.* at ¶ 9. Moscow, however, is where the

---

[4] Zango relies primarily on *Coremetrics* to support general jurisdiction. But in that case, the defendant's sales in the forum state were over 14% of its total sales and by far the largest portion of sales out of any state. *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp.2d 1013, 1022-23 (N.D. Cal. 2005). That is far more substantial than Kaspersky USA's contacts in this case. Moreover, that Kaspersky operates an interactive website is of no import. The mere operation of an interactive website, without more, does not confer general jurisdiction. *Molnlycke Health Care*, 64 F. Supp.2d at 451-52 and n.3 (noting that most cases basing jurisdiction on internet activity rely on specific jurisdiction and distinguishing *Zippo Mfg*. [on which Zango relies] on that basis).

[5] Mr. Orenberg reiterates what Kaspersky USA's CFO, Mr. Gentile, explained in his two declarations: Kaspersky USA and Kaspersky Moscow are separate companies, and Kaspersky USA has no control over the operation or configuration of the software. Neither Natalya Kaspersky (Kaspersky Moscow's CEO) nor anyone else representing Kaspersky Moscow is an officer, director, or owner of Kaspersky USA. *See* Orenberg Decl. at ¶ 5.

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 9

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

Kaspersky security analysts determine the threats, determine the labels, and upgrade the security software accordingly. *See* Orenberg Decl. at ¶ 4.

All communications to and from Zango were ultimately with Kaspersky Moscow, not with Kaspersky USA. Kaspersky USA was merely the conduit for the communications. Orenberg Decl. at ¶ 4; Coursen Decl. [Docket # 15] at ¶ 19. In any event, the mere e-mail correspondence with Zango alone cannot establish specific jurisdiction. *See Stairmaster Sports/Medical Prods., Inc.*, 916 F. Supp. at 1053-54 (series of letters sent into the forum did not give rise to specific jurisdiction).

## CONCLUSION

For the reasons stated above and in Kaspersky's opening brief, Kaspersky USA respectfully asks this Court to dismiss this case under Rules 12(b)(2) or 12(b)(6) or, alternatively, to grant to summary judgment against Zango on all of its claims.

DATED this 6th day of July, 2007.

Attorneys for DEFENDANT KASPERSKY LAB, INC.

By /s/ *Erik P. Belt*
Erik Paul Belt (appearing *pro hac vice*)
Lisa M. Fleming (appearing *pro hac vice*)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 443-9292
Fax: (617) 443-0004
E-mail: ebelt@bromsun.com

Bruce E. H. Johnson, WSBA # 7667
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200.
Seattle, WA 98101
Telephone: (206) 757-8069
Fax: (206) 757-7079
E-mail: brucejohnson@dwt.com

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 10

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069

## CERTIFICATE OF SERVICE

I certify that on July 6, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

**Attorneys for Plaintiff**
Jeffrey I. Tilden, WSBA No. 12219
Michael Rosenberger, WSBA No. 17730
Gordon Tilden Thomas & Cordell LLP
1001 Fourth Avenue
Suite 4000
Seattle, WA 98154-1051

In addition, paper copies of the foregoing document will be mailed by United States Postal Service to non CM/ECF participants, if any.

/s/ *Bruce E.H. Johnson*
Bruce E.H. Johnson, WSBA No. 7667

DEFENDANT KASPERSKY'S REPLY SUPPORTING
ITS MOTION TO DISMISS/SUMMARY JUDGMENT
(C-07-0807-JCC) -- 11

Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069